**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| **SONDRA BEATTIE** and **FRANCIS HOUSTON, JR.**, individually and on behalf of all other similarly situated individuals, <br><br> Plaintiffs, <br><br> v. <br><br> **TTEC HEALTHCARE SOLUTIONS, INC.** and **TTEC HOLDINGS, INC.**, <br><br> Defendants. | Case No.: <br><br> **COLLECTIVE AND CLASS ACTION COMPLAINT** <br><br> **JURY DEMAND** |

PLAINTIFFS, SONDRA BEATTIE and FRANCIS HOUSTON, JR. ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, hereby bring this Collective and Class Action Complaint against DEFENDANTS, TTEC HEALTHCARE SOLUTIONS, INC. and TTEC HOLDINGS, INC. (hereinafter collectively referred to as "Defendants"), and state as follows:

## INTRODUCTION

1.      This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiffs, individually and on behalf of all similarly situated persons employed by Defendants, arising from Defendants' willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, among other laws.

2.      Defendants are in the business of call center services and taking inbound calls to answer queries from customers of Defendants' clients.

3.      In order to field these calls, Defendants employ call center employees, referred to herein as "Call Agents." Defendants employ these Call Agents, including Plaintiffs, in multiple call center facilities (commonly referred to as customer care contact centers) located throughout

1

the United States, including Arizona, Arkansas, Colorado, Florida, Georgia, Kentucky, Missouri, Montana, Nevada, North Carolina, Ohio, Pennsylvania, Texas, Virginia and West Virginia.

4.      The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendants' Call Agents, are homogenous; in July 2008, it issued Fact Sheet #64 (attached hereto as **Exhibit 1**) to alert call center employees to some of the abuses that are prevalent in the industry.

5.      One of those abuses, which is occurring in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id.*

6.      More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id.*

7.      Defendants require Call Agents to work a full-time schedule, plus overtime. However, Defendants do not compensate Call Agents for all work performed; instead, Defendants require their Call Agents to perform compensable work tasks before and after their scheduled shifts and during their unpaid meal periods, when they are not logged into Defendants' timekeeping system. This policy results in Call Agents not being paid for all time worked, including overtime.

8.      In the course of performing their job responsibilities, Defendants' Call Agents use multiple computer networks, software programs, applications, and phone systems. The time Call Agents spend booting up and logging into these programs and applications before and after their

shifts is compensable because the programs and applications are an integral, indispensable, and important part of the Call Agents' work, and they cannot perform their jobs effectively without them.

9.      Defendants' Call Agents perform the same basic job duties and are required to use the same or similar computer programs, software programs, applications and phone systems.

10.     The individuals Plaintiffs seek to represent in this action are current and former Call Agents who are similarly situated to each other in terms of their positions, job duties, pay structure, and Defendants' violations of federal and state law.

11.     Defendants knew or could have easily determined how long it takes Call Agents to complete their off-the-clock work, and Defendants could have properly compensated Plaintiffs and the putative Collective and Class for this work, but did not.

12.     Plaintiffs seek a declaration that their rights, and the rights of the putative Collective and Class were violated, an award of unpaid wages, an award of liquidated damages, injunctive and declaratory relief, attendant penalties, and an award of attorneys' fees and costs to make them whole for damages they suffered, and to ensure that they and future workers will not be subjected by Defendants to such illegal conduct in the future.

## JURISDICTION

13.     This Court has subject matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under 29 U.S.C. § 201, *et seq.*

14.     Additionally, this Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

15.     Moreover, this Court has original jurisdiction over this action pursuant to the Class

Action Fairness Act of 2005, 28 U.S.C. § 1332(d). This is a class action in which the aggregate claims of the individual Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and at least some members of the proposed class have a different citizenship than Defendants.

16.     Defendants' annual sales exceed $500,000, and Defendants have more than two employees; thus, the FLSA applies in this case on an enterprise basis. Defendants' employees, including Plaintiffs, engage in interstate commerce or in the production of goods for commerce; therefore, they are also covered by the FLSA on an individual basis.

17.     The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because the state law claims and the federal claims are so closely related that they form part of the same case or controversy under Article III of the United States Constitution.

18.     The Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

19.     The Court has personal jurisdiction over Defendants because Defendants conduct business within the state of Colorado, employ individuals within the state of Colorado, are registered with the Colorado Secretary of State, and maintain their principal place of business in the state of Colorado.

20.     Personal jurisdiction also applies to Defendants because Defendants have purposefully availed themselves of the privilege of conducting activities in the state of Colorado and have established minimum contacts sufficient to confer jurisdiction over them; and the assumption of jurisdiction over Defendants will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process.

## VENUE

21.     Venue is proper in the District of Colorado because Defendants employ Call Agents in this District, and a substantial portion of the events forming the basis of this suit (including implementation of the illegal pay practices alleged in this litigation) occurred in this District.

## PARTIES

22.     PLAINTIFF, SONDRA BEATTIE ("Plaintiff Beattie"), is a Florida resident who has worked for Defendants as a Call Agent in Daytona Beach, Florida since July 2017. Defendants compensate Plaintiff Beattie through the payment of an hourly wage, most recently at the rate of $16.00 per hour. Plaintiff Beattie signed a consent form to join this collective action lawsuit, attached hereto as **Exhibit 2**.

23.     PLAINTIFF, FRANCIS HOUSTON, JR. ("Plaintiff Houston"), is a Florida resident who worked for Defendants as a Call Agent in Daytona Beach, Florida from September 2017 until April 2018. Defendants compensated Plaintiff Houston through the payment of an hourly wage, most recently at the rate of $15.00 per hour. Plaintiff Houston signed a consent form to join this collective action lawsuit, which is attached hereto as **Exhibit 3**.

24.     DEFENDANT TTEC HEALTHCARE SOLUTIONS, INC. is a Delaware Corporation (File Number: 5353458) with a Principal Office at 9197 South Peoria Street, Englewood, Colorado 80112. DEFENDANT TTEC HEALTHCARE SOLUTIONS, INC. is licensed to do business in the state of Colorado (ID number 20131372435), and its registered agent for service of process in Colorado is The Corporation Trust Company, 7700 East Arapahoe Road, Suite 220, Centennial, Colorado 80112-1268.

25.     DEFENDANT TTEC HOLDINGS, INC. is a Delaware Corporation (File Number: 2464275) with a Principal Office at 9197 South Peoria Street, Englewood, Colorado 80112-4514.

DEFENDANT TTEC HOLDINGS, INC. is licensed to do business in the state of Colorado (ID number 19981006907), and its registered agent for service of process in Colorado is The Corporation Trust Company, 7700 East Arapahoe Road, Suite 220, Centennial, Colorado 80112-1268. Upon information and belief, DEFENDANT TTEC HEALTHCARE SOLUTIONS, INC. is a wholly owned subsidiary of DEFENDANT TTEC HOLDINGS, INC.

26.     Upon information and belief, Defendants have employed hundreds, if not thousands, of Call Agents—including Plaintiffs—throughout the United States in the last three years to perform services which include taking inbound calls to answer queries from customers of Defendants' clients.

## GENERAL ALLEGATIONS

27.     Plaintiffs were employed by Defendants as Call Agents in Daytona Beach, Florida within the last three years. In that position, they were compensated pursuant to an hourly wage and typically worked five days each week and up to 40 or more hours per week.

28.     Throughout their employment with Defendants, Plaintiffs were required to work a substantial amount of unpaid time, including overtime, as part of their jobs as Call Agents.

29.     Defendants' Call Agents are responsible for, among other things: (a) booting up their computers and logging into several software programs and applications before fielding phone calls; (b) taking inbound calls to answer queries from customers; (c) remaining on the phones during scheduled meal/rest breaks if there are not enough Call Agents to cover the phones or if the call center experiences high call volume; (d) ensuring that every inbound call is accounted for in Defendants' computer systems; and (e) logging out of the computer programs/applications and shutting down their computers.

30.     Defendants require their Call Agents to work rigid schedules, usually consisting of

at least eight hours per day and five days per week, resulting in overtime hours on a weekly basis.

31.     Defendants have strict expectations that their Call Agents will remain on the phone during scheduled meal/rest breaks if there are not enough Call Agents to cover the phones or if the call center experiences high call volume, and Defendants threaten discipline if a Call Agent fails to do so.

32.     Defendants require their Call Agents to clock in/out for their shifts but do not accurately record their Call Agents' compensable work time as required by law. Failing to accurately account and pay for all of the time actually worked by employees is a clear violation of the FLSA's record keeping requirements. *See* 29 U.S.C. § 211(c).

33.     Defendants use a number of titles to refer to Call Agents, including but not limited to: Bilingual Customer Service Associate, Customer Care Representative, Customer Service Associate, Customer Service Insurance Representative, Customer Service Professional, Customer Service Representative, Customer Service Representative – Insurance, Customer Service Representative – Insurance Agent Trainee, Healthcare Customer Service and Insurance Trainee, Healthcare Customer Service Representative, Healthcare Licensed Insurance Agent, Inbound Customer Service & Sales Representative – Insurance, Inbound Customer Service Representative, Inbound Customer Service Representative – Insurance Agent, Inbound Sales Representative, Inbound Sales Representative – Property & Casualty Licensed Agent, Licensed Health Agent, Licensed Healthcare Insurance Agent, Licensed Healthcare Insurance Sales Agent, Licensed Property & Casualty Agent, Property & Casualty Licensed Agent, Property & Casualty Licensed Agent – Inbound Customer Service, Spanish Bilingual Customer Service Associate, Spanish Bilingual Customer Service Representative, Spanish Bilingual Healthcare Customer Service and Insurance Trainee, Spanish Bilingual Healthcare Customer Service and Inbound Sales, Spanish

Bilingual Healthcare Customer Service Representative, and Spanish Bilingual Licensed Health Agent.

34.  No matter the job title, Call Agents' job responsibilities and duties are substantially similar, namely, taking inbound calls to answer queries from customers of Defendants' clients.

35.  Upon information and belief, all Call Agents are and were hourly, non-exempt employees.

36.  Defendants' Call Agents use similar computer networks, software programs, and applications in the course of performing their job responsibilities. These programs and applications are integral and an important part of the Call Agents' work, and they cannot perform their jobs without them.

37.  Defendants' Call Agents receive substantially the same training, are subject to the same disciplinary policies, and are subject to quality assurance reviews based on the same or similar criteria.

38.  Defendants expressly instruct and train Call Agents to have all their computer networks, software programs, and applications open and ready at the start of their scheduled shifts and before they change their status to "Ready" to receive incoming calls.

39.  Defendants enforce this policy through their quality assurance grading system, commonly referred to as the Key Performance Indicator.

40.  The Key Performance Indicator is comprised of various performance metrics, including reliability (clocking in and out for your shift on time) and adherence (logging into the phone system and being ready to take calls promptly at the start of your scheduled shift and at the end of your scheduled meal/rest break).

41.  Call Agents must achieve a satisfactory score for each indicator, otherwise they are

ineligible for bonuses (commonly referred to as performance pay, or "P for P") or promotions.

42.     If Call Agents are not logged into the phone system and ready to take calls promptly at the start of their scheduled shifts or at the end of their scheduled meal or rest breaks, they are considered "out of adherence," meaning that this time is charged to their accumulated and earned vacation or PTO time (and is thus not included in the sum of hours worked during the workweek and not considered in determining if overtime was worked). If no PTO or vacation time is available, the time is unpaid.

43.     Call Agents who are "out of adherence" are ineligible for bonuses and promotions, are docked vacation or PTO time, and are subject to other penalties and disciplinary action, including but not limited to: written and verbal reprimands, suspension, demotion or termination.

44.     These policies reinforce that Call Agents are required to have all computer networks, software programs, and applications open and ready at the start of their scheduled shifts and before they change their status to "Ready" to receive incoming calls.

45.     Defendants used the computer software program "Kronos" to track Call Agents' hours worked for purposes of compensation.

46.     However, because Defendants fail to accurately record their Call Agents' work time, Defendants' compensation system fails to properly account for and compensate Call Agents for all time worked, including their overtime hours, during each day and during each workweek.

47.     The hours reflected on the Call Agents' paystubs are not accurate, are contrived by Defendants, and have no relation to the hours the Call Agents actually worked for Defendants. This is because Defendants require their Call Agents to perform compensable work tasks before and after their shifts and during their unpaid meal periods, when they are not clocked into Defendants' timekeeping system.

48.     As a result of Defendants' compensation policy, Plaintiffs and all other Call Agents are deprived of pay for compensable time worked, including overtime.

A.     **Pre- and Post-Shift Off-the-Clock Work**

49.     Pursuant to Defendants' policies, training, and direction, Call Agents are required to start up and log in to various secure computer programs, software programs, and applications in order to access information and before fielding phone calls. The start-up and log-in process takes substantial time on a daily basis with said time ranging from 10 to 15 minutes per shift, or even longer when technical issues arise. Before each shift and before fielding phone calls, Call Agents must undertake the following essential work tasks:

- Locate their workstation and turn-on/warm-up their computer;

- Log in to Microsoft Windows using a username and password;

- Log in to the third party client's Remote Access Portal (using a username and password) or Virtual Private Network ("VPN") (Call Agents must key in their credentials and password, hit connect, wait for the automated phone system to call their cell phone, enter their four digit passcode, and wait for their sign-on to be successfully verified);

- After establishing a connection with the third party client's Remote Access Portal or VPN, launch and log in to the remote desktop using a username and password;

- Start-up and log in to various software programs/applications that are utilized during their shifts, such as Internet Explorer, Outlook, Mosaic, HealthNet, Workforce, Salesforce, Kronos, VCC, Avaya, Empower and Zoom Chat; and

- Search for, read and respond to work-related emails or message board posts, including important notices, work instructions or training updates.

50.     Defendants' Call Agents must complete this process before the start of their scheduled shifts and before fielding phone calls. Consequently, Call Agents must arrive to work approximately 10 to 15 minutes before their scheduled shifts to complete their above-described start-up and log-in activities.

51.     Defendants' Call Agents are not compensated for all of this time because

Defendants prohibit Call Agents from clocking into the Kronos timekeeping software more than five minutes before the start of their scheduled shifts, meaning that Call Agents perform off-the-clock work in the range of 5 to 10 minutes per shift without compensation.

52.     Upon information and belief, Defendants have recently installed at each of their call centers a wall-mounted Kronos advanced biometric time clock with a touchscreen interface, enabling Call Agents to clock in and out using a fingerprint scan and a badge swipe. Defendants now encourage (and at some call centers require) Call Agents to clock in using the Kronos advanced biometric time clock.

53.     Like the Kronos timekeeping software, Defendants prohibit Call Agents from clocking into the Kronos advanced biometric time clock more than five minutes before the start of their scheduled shifts.

54.     Call Agents' pre-shift routine now typically consists of the following: Call Agents arrive to work approximately 10 to 15 minutes before the start of their scheduled shifts and immediately proceed to locate their workstations and begin performing their pre-shift start-up and log-in activities until five minutes before the start of their scheduled shifts. Then, they hustle over to the Kronos advanced biometric time clock, scan their fingerprint, swipe their badge, and then hustle back to their workstations to complete their pre-shift log-in activities.

55.     From the time that Call Agents arrive to work and locate their workstations until the time that they clock into Defendants' Kronos advanced biometric time clock takes substantial time on a daily basis with said time ranging from 5 to 10 minutes per shift, or even longer depending upon how many other Call Agents are waiting in line to clock in; meaning that Call Agents perform off-the-clock work in the range of 5 to 10 minutes per shift without compensation.

56.     Thus, regardless of whether Call Agents clock in on their computers using

Defendants' Kronos timekeeping software or whether they clock in using the wall-mounted Kronos advanced biometric time clock, they are required to perform no less than 5 to 10 minutes of work each shift before clocking in.

57.     Call Agents are subject to additional compensation deficiencies when they experience pre-shift technical difficulties or connectivity issues with Defendants' computer networks, software programs, applications, or phone systems (hereinafter referred to as "downtime").

58.     During these periods of downtime, Call Agents are unable to get their systems up and running, meaning that they are unavailable to field phone calls at the start of their scheduled shifts.

59.     Consequently, Call Agents are considered "out of adherence," meaning that the downtime is charged to their accumulated and earned vacation or PTO time (and is thus not included in the sum of hours worked during the workweek and not considered in determining if overtime was worked). If no PTO or vacation time is available, the time is unpaid. This policy results in Call Agents not being properly paid for all time worked, including overtime.

60.     The work performed by Call Agents during periods of downtime is compensable, directly benefits Defendants, and is integral and indispensable to their job duties and responsibilities as Call Agents.

61.     Additionally, Defendant's Call Agents are required to log out of and close down various computer software programs and applications at the end of each shift and subsequent to clocking out of Defendants' timekeeping system. The log-out process occurs each shift with said time ranging from 1 to 2 minutes per day.

62.     The unpaid off-the-clock work performed before and after each shift by Call Agents

directly benefits Defendants, and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as Call Agents.

      **B.**    <u>**Meal-Period Off-the-Clock Work**</u>

63.    Defendants promise each Call Agent a 30-45 minute unpaid meal period during each shift. However, in reality, Defendants routinely require Call Agents to work through unpaid meal periods if there are not enough Call Agents to cover the phones or if the call center experiences high call volume.

64.    Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire lunch break. 29 C.F.R. 785.19(a) states:

> Bona fide meal periods. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be *<u>completely relieved</u>* from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

65.    Defendants do not provide their Call Agents with a legitimate bona fide meal period because they require their Call Agents to return to their computer stations prior to the end of their meal periods and then to spend off-the-clock time logging back into the necessary computer/software programs and applications needed to begin taking customer calls promptly at the end of their scheduled meal periods.

66.    If Call Agents are not logged back into the phone system and ready to take calls promptly at the conclusion of their scheduled meal breaks, they are considered "out of adherence."

67.    The work performed by Call Agents during their unpaid meal periods takes

substantial time on a daily basis with said time ranging from 1 to 5 minutes per shift, or more, depending on whether they were kicked out of their computer programs while on lunch.

### C.      **Rest-Period Off-the-Clock Work**

68.     Defendants provide Call Agents with two 15-minute paid rest breaks each shift.

69.     Pursuant to Defendants' policies, training, and direction, Call Agents who take unscheduled breaks over and above their two scheduled breaks are required to change their status in Avaya to "admin," "personal," "unavailable" or "unscheduled break."

70.     When Call Agents take unscheduled breaks over and above their two scheduled breaks, they are considered "out of adherence," meaning that this time is charged to their accumulated and earned vacation or PTO time (and is thus not included in the sum of hours worked during the workweek and not considered in determining if overtime was worked). If no PTO or vacation time is available, the time is unpaid.

71.     Under federal regulations, if the employer provides breaks between 5 and 20 minutes, it must pay employees for those breaks as "hours worked." C.F.R. 785.18. The rationale is that those breaks primarily benefit the employer by increasing the efficiency of the employee: "Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry. They promote the efficiency of the employee and are customarily paid for as working time. **They must be counted as hours worked**." *Id*. (emphasis added).

72.     According to a recent decision in a call center case by the Third Circuit Court of Appeals, employers must pay employees for breaks lasting 20 minutes or less, even when they are logged off their computers and not doing any work. *Sec. U.S. Dept. of Lab. v. Am. Future Sys., Inc.*, 873 F.3d 420, 423 (3d Cir. 2017) ("[W]e conclude that the Fair Labor Standards Act does require employers to compensate employees for all rest breaks of twenty minutes or less.").

73.     "[W]here the employee is taking multiple, unscheduled … breaks over and above his or her scheduled breaks for example, the employer's recourse is to discipline or terminate the employee—not to withhold compensation." *Id*. at 423 (quoting *Hawkins v. Alorica, Inc.*, 287 F.R.D. 431, 442 (S.D. Ind. 2012)).

74.     "Even where a company has provided for scheduled breaks, and the employee takes an unscheduled break in addition to those scheduled breaks, the employer must compensate for the additional, unscheduled break if it is less than twenty minutes." *Hawkins*, 287 F.R.D. at 442 (citing U.S. Department of Labor Opinion, 1996 DOLWH LEXIS 39, *1–3 (1996)) (employer requested that Department of Labor advise whether short smoking breaks of 3 to 4 minutes were compensable when taken in addition to other breaks allowed to employees, and Department of Labor stated "[t]he FLSA does not require an employer to provide its employees with rest periods or breaks. If the employer decides to permit short breaks, however, the time is compensable hours worked").[1]

75.     Here, too, Defendants employ an unlawful rest break policy wherein they refuse to properly pay Call Agents for compensable work time (i.e., unscheduled breaks lasting 20 minutes or less). Because Plaintiffs and other Call Agents took unscheduled breaks lasting 20 minutes or less during weeks where they worked 40 or more hours, this unlawful policy also deprived them

---

[1] *See also DeKeyser v. Thussenkrupp Waupaca, Inc.*, 747 F. Supp. 2d 1043, 1056-1057 (E.D. Wisc. 2010) (citing 29 C.F.R. §§ 785.18 and 778.223 to support the conclusion that rest breaks of five to twenty minutes "taken outside of [the employer's] provided rest breaks should be considered work time under the FLSA."); *Martin v. Waldbaum, Inc.*, CV 86-0861 (DRH), 1992 WL 314898, at *1-2 (E.D.N.Y. Oct. 16, 1992) (citing 29 C.F.R. § 785.18 and concluding as a matter of law that "breaks of less than twenty minutes are compensable" and short employee breaks for personal telephone calls and cigarettes "are commonplace and sensible in any working environment"); *Petrone v. Werner Enterprises, Inc.*, 8:11CV401, 2012 WL 4848900, at *3 (D. Neb. Oct. 11, 2012) (citing 29 C.F.R. § 785.18 as a bright-line rule in support of the conclusion that breaks of less than 20 minutes must be counted under the FLSA as hours worked).

of overtime pay.

     **E.**    **Exemplary Pay-Periods to Illustrate Pre-Shift, Meal-Period and Post-Shift Compensation Deficiencies**

     76.    An example of specific workweeks where Defendants failed to pay Plaintiffs all overtime due for hours worked in excess of 40 hours (as mandated by the FLSA) includes the following:

**Pay Period of 06/11/2018 to 06/24/2018**

- Plaintiff Beattie was paid at a rate of $14.00 per hour for her 79.99 regular hours and $21.00 per hour for 1.35 overtime hours.

- With unpaid pre-shift, meal-period, and post-shift time, in a range of 7 to 17 minutes per shift, at five shifts per week, Plaintiff Beattie should have been paid an additional 35-85 minutes at her overtime rate of $21.00 during the pay period.

**Exhibit 4**, Beattie Pay Stub.

**Pay Period of 03/19/2018 to 04/01/2018**

- Plaintiff Houston was paid at a rate of $15.00 per hour for his 80.01 regular hours and $22.50 per hour for 2.35 overtime hours.

- With unpaid pre-shift, meal period, and post-shift time, in a range of 7 to 17 minutes per shift, at five shifts per week, Plaintiff Houston should have been paid an additional 35-85 minutes at his overtime rate of $22.50 during the pay period.

**Exhibit 5**, Houston Pay Stub.

     **F.**    **Defendants Benefitted from the Uncompensated Off-the-Clock Work**

     77.    At all relevant times, Defendants directed and directly benefited from the work performed by Plaintiffs and similarly situated employees in connection with the above-described pre-shift, mid-shift, and post-shift activities performed by Call Agents.

     78.    At all relevant times, Defendants controlled the work schedules, duties, protocols, applications, assignments and employment conditions of Call Agents.

     79.    At all relevant times, Defendants were able to track the amount of time Call Agents

spent in connection with the pre-shift, mid-shift, and post-shift activities. However, Defendants failed to do so and failed to compensate Call Agents for the off-the-clock work they performed.

80.     At all relevant times, Call Agents were non-exempt hourly employees, subject to the requirements of the FLSA.

81.     At all relevant times, Defendants used their attendance and adherence policies against Call Agents in order to pressure them into performing the pre-shift, mid-shift, and post-shift off-the-clock work.

82.     Defendants expressly trained and instructed Call Agents to perform the above-described pre-shift activities *before* the start of their scheduled shifts, to ensure they were prepared to take calls (i.e., were "phone ready") at the moment their shifts began.

83.     At all relevant times, Defendants' policies and practices deprived Call Agents of wages owed for the pre-shift, mid-shift, and post-shift activities they performed. Because Defendants' Call Agents typically worked 40 hours or more in a workweek, Defendants' policies and practices also deprived them of overtime pay.

84.     Defendants knew or should have known that the time spent by Call Agents in connection with the pre-shift, mid-shift, and post-shift activities was compensable under the law. Indeed, in light of the explicit DOL guidance cited above, as well as Defendants' prior experience defending themselves in a similar FLSA collective action, *Atkinson v. TeleTech Holdings, Inc.*, 3:14-CV-253, 2015 WL 853234 (S.D. Ohio Feb. 26, 2015), there is no conceivable way for Defendants to establish that they acted in good faith.

85.     Despite knowing Call Agents performed work before and after their scheduled shifts and during their meal periods, Defendants failed to make any effort to stop or disallow the off-the-clock work and instead suffered and permitted it to happen.

86.     Unpaid wages related to the off-the-clock work described herein is owed to Call Agents at the FLSA mandated overtime premium of one and one-half their regular hourly rate because Call Agents regularly worked in excess of 40 hours in a workweek.

## FLSA COLLECTIVE ACTION ALLEGATIONS

87.     Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

> *All current and former Call Agents who worked for Defendants at any time during the three years preceding the filing of this Complaint up through and including judgment.*

(hereinafter referred to as the "FLSA Collective"). Plaintiffs reserve the right to amend this definition if necessary.

88.     Defendants are liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and other similarly situated Call Agents.

89.     Excluded from the proposed FLSA Collective are Defendants' executives, administrative and professional employees, including computer professionals and outside salespersons.

90.     Consistent with Defendants' policy and pattern or practice, Plaintiffs and the members of the FLSA Collective were not paid premium overtime compensation when they worked beyond 40 hours in a workweek.

91.     Defendants assigned and/or were aware of all of the work that Plaintiffs and the members of the FLSA Collective performed.

92.     As part of their regular business practices, Defendants intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiffs and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

a. Willfully failing to pay their employees, including Plaintiffs and the members of the FLSA Collective, premium overtime wages for hours worked in excess of 40 hours per workweek; and

b. Willfully failing to record all of the time that their employees, including Plaintiffs and the members of the FLSA Collective, worked for the benefit of Defendants.

93. Defendants are aware or should have been aware that federal law required them to pay Plaintiffs and the members of the FLSA Collective overtime premiums for hours worked in excess of 40 per workweek.

94. Defendants' unlawful conduct has been widespread, repeated, and consistent.

95. A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiffs bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

96. The employment relationships between Defendants and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues - the amount of uncompensated pre-shift start-up/log-in time, unpaid meal/rest period time, and the amount of post-shift shut-down/log-out time owed to each employee - do not vary substantially among the proposed FLSA Collective members.

97. Many similarly situated current and former Call Agents have been underpaid in violation of the FLSA and would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

98. This notice should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

99. Those similarly situated employees are known to Defendants, are readily

identifiable, and can be located through Defendants' records.

100.     Plaintiffs estimate the proposed FLSA Collective, including both current and former employees over the relevant period, will include several hundred, if not thousands, of workers. The precise number of FLSA Collective members should be readily available from a review of Defendants' personnel and payroll records.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

101.     Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23(b)(3) on their own behalf and on behalf of:

> *All current and former Call Agents who worked for Defendants at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Class"). Plaintiffs reserve the right to amend the putative class definition if necessary.

102.     The members of the Rule 23 Class are so numerous that joinder of all Rule 23 Class members in this case would be impractical. Plaintiffs reasonably estimate there are hundreds, if not thousands, of Rule 23 Class members. Rule 23 Class members should be easy to identify from Defendants' computer systems and electronic payroll and personnel records.

103.     There is a well-defined community of interest among Rule 23 Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Class. These common legal and factual questions include, but are not limited to, the following:

   a.     Whether the time Rule 23 Class members spent on pre-shift activities prior to clocking in for each shift is compensable time;

   b.     Whether the time Rule 23 Class members spent on post-shift activities subsequent to clocking out for each shift is compensable time;

   c.     Whether Rule 23 Class members are owed wages for time spent performing off-the-clock work activities, and if so, the appropriate amount thereof; and

       d.      Whether Defendants' non-payment of wages for all compensable time amounted to a breach of contract and/or unjust enrichment.

104.    Plaintiffs' claims are typical of those of the Rule 23 Class in that they and all other Rule 23 Class members suffered damages as a direct and proximate result of Defendants' common and systemic payroll policies and practices. Plaintiffs' claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 Class members' claims, and their legal theories are based on the same legal theories as all other Rule 23 Class members.

105.    Plaintiffs will fully and adequately protect the interests of the Rule 23 Class and have retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Class.

106.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because, *inter alia*, it is economically infeasible for Rule 23 Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

107.    This case will be manageable as a Rule 23 Class action. Plaintiffs and their counsel know of no unusual difficulties in this case, and Defendants have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

108.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose

suit meets the specified criteria to pursue his claim as a class action").

109.   Because Defendants acted and refused to act on grounds that apply generally to the Rule 23 Class and declaratory relief is appropriate in this case with respect to the Rule 23 Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**(29 U.S.C. § 216(b) Collective Action)**
**VIOLATION OF FLSA, 29 U.S.C. § 201, *et seq*.**
**FAILURE TO PAY OVERTIME WAGES**

110.   Plaintiffs re-allege and incorporate all previous paragraphs herein.

111.   At all times relevant to this action, Defendants were engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

112.   At all times relevant to this action, Plaintiffs and the FLSA Collective were "employees" of Defendants within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

113.   Plaintiffs and the FLSA Collective, by virtue of their job duties and activities actually performed, are all non-exempt employees.

114.   Plaintiffs and the FLSA Collective either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

115.   At all times relevant to this action, Defendants "suffered or permitted" Plaintiffs and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

116.   At all times relevant to this action, Defendants required Plaintiffs and the FLSA Collective to perform no less than 7 minutes and as much as 17 minutes of off-the-clock work per shift, but failed to pay these employees the federally mandated overtime compensation for the off-the-clock work.

117.    The off-the-clock work performed every shift by Plaintiffs and the FLSA Collective is an essential part of their jobs, and these activities and the time associated with these activities are not *de minimis*.

118.    In workweeks where Plaintiffs and other FLSA Collective members worked 40 hours or more, the uncompensated off-the-clock work time, and all other overtime should have been paid at the federally mandated rate of 1.5 times each employee's regularly hourly wage, including the shift differential where applicable. 29 U.S.C. § 207.

119.    Defendants' violations of the FLSA were knowing and willful. Defendants knew or could have determined how long it takes for their Call Agents to perform their off-the-clock work. Further, Defendants could have easily accounted for and properly compensated Plaintiffs and the FLSA Collective for these work activities, but did not.

120.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

**COUNT II**
**(Rule 23 Nationwide Class Action)**
**BREACH OF CONTRACT**

121.    Plaintiffs re-allege and incorporate all previous paragraphs herein.

122.    At all times relevant to this action, Defendants had a contract with Plaintiffs and every other Rule 23 Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate.

123.    Each Rule 23 Class member's contractual hourly rate is identified in paystubs and other records that Defendants prepare as part of their regular business activities.

124.    Plaintiffs and every other Rule 23 Class member performed under the contracts by doing their jobs and carrying out the off-the-clock activities that Defendants required or accepted.

125.     By not paying Plaintiffs and every other Rule 23 Class member the agreed upon hourly wage for all of the work they performed each shift, Defendants systematically breached their contracts with Plaintiffs and each member of the Rule 23 Class.

126.     Plaintiffs' and the Rule 23 Class members' remedies under the FLSA are inadequate in this case to the extent Defendants paid them more than the federally mandated minimum wage of $7.25 per hour but less than 40 hours per week (i.e., pure gap time claims).

127.     Defendants also breached their duty of good faith and fair dealing by failing to keep track of the time Plaintiffs and other Rule 23 Class members spent performing off-the-clock activities, which is a fundamental part of an employer's job.

128.     As a direct and proximate result of Defendants' breaches of the contracts alleged herein, Plaintiffs and every other member of the Rule 23 Class have been damaged, in an amount to be determined at trial.

**COUNT III**
**(Rule 23 Nationwide Class Action)**
**UNJUST ENRICHMENT**

129.     Plaintiffs re-allege and incorporate all previous paragraphs herein.

130.     This Count is pled in the alternative to Count II, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

131.     At all times relevant to this action, Defendants promised Plaintiffs and every other Rule 23 Class member a pre-established regular hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Class members performed for the benefit of Defendants.

132.     Plaintiffs and every other Rule 23 Class member relied upon Defendants' promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

133.     By not paying Plaintiffs and every other Rule 23 Class member the agreed upon

hourly wage for the pre-shift, mid-shift, and post-shift off-the-clock work they performed each shift, Defendants were unjustly enriched.

134.    Plaintiffs and the Rule 23 Class members performed off-the-clock work tasks at the request of and without objection by Defendants.

135.    Defendants received and accepted the above-referenced off-the-clock work services from Plaintiffs and every other Rule 23 Class member and enjoyed the benefits derived therefrom.

136.    Upon information and belief, Defendants used the monies owed to Plaintiffs and every other Rule 23 Class member to finance their various business ventures or pay their equity owners.

137.    Defendants have been unjustly enriched by the retention of monies received pursuant to the services Plaintiffs and the Rule 23 Class performed for Defendants' benefit, without having compensated Plaintiffs and the Rule 23 Class for the same.

138.    Plaintiffs and the Rule 23 Class suffered detriment as a result of Defendants' failure to compensate them for the off-the-clock work described herein, in that Plaintiffs and the Rule 23 Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

139.    As a direct and proximate result of Defendants' actions, Plaintiffs and every other Rule 23 Class member suffered damages, including but not limited to, loss of wages.

<u>**PRAYER FOR RELIEF**</u>

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the putative Collective and Rule 23 Class, request judgment as follows:

a.    Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.    Certifying this action as a class action (for the Rule 23 Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' state law claims (Counts II and III);

c.  Ordering Defendants to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all collective action Class members and Rule 23 Class members, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

d.  Designating Plaintiffs as the representative of the FLSA collective action Class and the Rule 23 Class, and undersigned counsel as Class counsel for the same;

e.  Declaring Defendants violated the FLSA and the Department of Labor's attendant regulations as cited herein;

f.  Declaring Defendants' violation of the FLSA was willful;

g.  Declaring Defendants breached their contracts with Plaintiffs and the members of the Rule 23 Class (or, in the alternative, that Defendants were unjustly enriched) by failing to pay them for each hour they worked at a pre-established (contractual) regularly hourly rate;

h.  Granting judgment in favor of Plaintiffs and against Defendants and awarding Plaintiffs and the collective action Class and the Rule 23 Class, the full amount of damages and liquidated damages available by law;

i.  Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute;

j.  Awarding pre- and post-judgment interest to Plaintiffs on these damages; and

k.  Awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiffs, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above entitled cause.

/

/

/

Respectfully Submitted,

Dated: December 3, 2018

/s Kevin J. Stoops
Kevin J. Stoops
Matthew L. Turner (*admission forthcoming*)
Rod M. Johnston (*admission forthcoming*)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Phone: (248) 355-0300
kstoops@sommerspc.com
mturner@sommerspc.com
rjohnston@sommerspc.com

*Attorneys for Plaintiffs and the Putative*
*Collective/Class Members*