IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-03098-RM-NRN

SONDRA BEATTIE and FRANCIS HOUSTON, JR., individually and on behalf of all
other similarly situated individuals,

Plaintiffs,

v.

TTEC HEALTHCARE SOLUTIONS, INC. and TTEC HOLDINGS, INC.,

Defendants.

---

## REPORT AND RECOMMENDATION ON
## DEFENDANTS' MOTION TO COMPEL INDIVIDUAL ARBITRATION (DKT. #18)

---

**N. Reid Neureiter**
**United States Magistrate Judge**

This matter is before the Court on Defendants TTEC Healthcare Solutions, Inc.

and TTEC Holding, Inc.'s (together, "TTEC") Motion to Compel Individual Arbitration

(Dkt. #18), which was referred to me by Judge Raymond P. Moore (Dkt. #23). The

Court has reviewed and carefully considered the motion, Plaintiffs' Response and

supplement thereto (Dkt. ## 30 & 36), Defendants' Reply (Dkt. #37), and the exhibits

attached to these briefs. The Court also heard oral argument at a hearing held on

February 14, 2019 (Dkt. #35), has taken judicial notice of the Court's case file and

considered the applicable Federal Rules of Civil Procedure, statutes, and case law.

Being fully informed, and for the reasons discussed below, I RECOMMEND that

Defendants' Motion to Compel Individual Arbitration (Dkt. #18) be DENIED without

prejudice, and I further RECOMMEND that a jury trial be held on the existence of the alleged arbitration agreement.

## I.    Background

Plaintiffs Sondra Beattie and Francis Houston, Jr. filed this lawsuit as a collective and nationwide class action pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23, alleging, among other things, willful violations by TTEC of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-209. Plaintiff Ms. Beattie is a current employee and Plaintiff Mr. Houston a former employee of TTEC,[1] for whom they work/worked as call agents in Daytona Beach, Florida and were paid hourly wages. According to Plaintiffs, they are/were "required to work a substantial amount of unpaid time, including overtime, as part of their jobs as Call Agents." (Dkt. #1 ¶ 28.) Plaintiffs have brought this action on behalf of themselves as well as "[a]ll current and former Call Agents who worked for Defendants at any time during the three years preceding the filing of this Complaint up through and including Judgment" (referred to as the "FLSA Collective"). (*Id.* ¶ 87.) Since filing suit, Plaintiffs have filed eighteen Notices of Consents to Join Collective Action, in which other current and former employees of TTEC have joined this case as Plaintiffs. (*See* Dkt. ##5, 25, 32, 33, 34, 38-50.)

TTEC filed a motion to compel individual arbitration on January 30, 2019 (Dkt. #18), pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16 (the "FAA"). According to TTEC, each Plaintiff, when hired, and "[a]s part of the on-boarding process[,] . . .

---

[1] Defendants clarified in their motion that they "do not concede . . . that Plaintiffs worked for both entities or that they have sufficiently alleged a theory of joint employer liability," but this point has no bearing on my ruling. (*Id.* at 2 n.1.)

voluntarily entered into a valid and enforceable arbitration agreement and agreed to individually arbitrate the claims they asserted in this action." (*Id.* at 2.)

As evidence of the existence of an enforceable arbitration agreement, TTEC provided a Declaration by Anna Haugen, TTEC's Director of Human Capital, who is "responsible for the overall HR functions at TTEC." (Dkt. #18-1, ¶ 2.) In her Declaration, Ms. Haugen generally describes "the onboarding process at TTEC," including how TTEC employees "receive online training and acknowledge documents and policies through our tool called TTEC University" ("TTU"). (*Id.* ¶ 3.) She explains in her Declaration that, "[a]s part of TTU, new employees are provided an electronic copy of TTEC's Arbitration Agreement," that "[e]mployees confirm their acceptance or rejection of the Arbitration Agreement by clicking 'Accept' or 'Decline,'" and that "TTU explains that clicking the 'Accept' button is the electronic equivalent of a hand-written signature." (*Id.* ¶ 4.) Ms. Haugen's Declaration does not state that TTEC employees are required to click the "Accept" button—or assent to the TTEC arbitration agreement—as a condition of employment.

With respect to Ms. Beattie and Mr. Houston, Ms. Haugen states they each confirmed "acceptance of the Arbitration Agreement," and that such acceptance is reflected by their training transcripts. (*Id.* ¶¶ 4-5.) The training transcripts are purportedly business records comprising spreadsheets labeled "All Training," at the top of the first page of which is the "current date" (i.e., the date the chart was printed), the employee's name, and what appears to be the employee's identification number. (*See*, *e.g.*, Dkt. #18-3.) The chart lists, on the left-hand side, the title of each document, policy, or training material/assignment purportedly reviewed or completed by the employee, and

then lists the "Type" (e.g., Online, Document, Curriculum, etc.), the "Status" (e.g.,

completed versus started), as well as the "Start Date" and "Completion Date." (*Id.*)

Both Ms. Beattie's and Mr. Houston's training transcripts list a "USA eSignature:

Arbitration Agreement Non-exempt," which indicates the Type as being Online, the

Status as being Completed, and provide a Start and Completion Date to indicate when

the arbitration agreement was allegedly accepted and signed. (Dkt. #18-3 at 21, and

Dkt. #18-4 at 19-20.)[2]

Attached to Ms. Haugen's Declaration is a blank, unsigned, and undated copy of

TTEC's arbitration agreement. (Dkt. #18-2.) Also attached to her Declaration is a screen

shot of what an employee allegedly sees when presented with the option of accepting or

declining the TTEC arbitration agreement. (Dkt. #30-7.) On the screen shot, under the

heading "Arbitration Agreement Non-Exempt," is the instruction to "Click the link to

launch the Arbitration Agreement Non-Exempt document and activate the Accept button

below." (*Id.*) Below the link is the following explanation: "By clicking the **Accept** button,

you are confirming that you have already read, fully understand and accept all terms

and conditions of the Arbitration Agreement Non-Exempt document. Please note that

clicking the **Accept** button is the electronic equivalent of a hand-written signature." (*Id.*)

Other than her explanation of the training transcripts, Ms. Haugen does not state

that she was involved with or monitored either Ms. Beattie's or Mr. Houston's orientation

or training, or that she has personal knowledge that either Ms. Beattie or Mr. Houston

signed or assented to the arbitration agreement. She also does not identify who at

---

[2] Mr. Houston's Training Transcript indicates he "Completed" the USA eSignature:
Arbitration Agreement Non-exempt two times: October 20, 2017 and January 10, 2018.

TTEC conducted or monitored either Plaintiff's orientation or training, who entered the data on Plaintiffs' training transcripts, whether the data could be modified by anyone other than Ms. Beattie or Mr. Houston, or how TTEC verified that Plaintiffs did, in fact, click the "Accept" button.

In addition, and as Plaintiffs point out, Ms. Haugen's Declaration does not address, nor has TTEC provided: (1) a signature certificate indicating Plaintiffs signed or assented to the TTEC arbitration agreement; (2) the Internet Protocol ("IP") address of the computer that Plaintiffs used to sign or asset to the TTEC arbitration agreement; (3) Plaintiffs' electronic signature or initials indicating they signed or assented to the TTEC arbitration agreement; or (4) a time stamp indicating the specific date and time that Plaintiffs read, signed, and assented to the TTEC arbitration agreement. (Dkt. #30 at 11.) Further, Ms. Haugen does not address what, if any, security measures are taken by TTEC to ensure that each of its employees has secure and sole access to his or her on-line employee or TTU account (for example, by virtue of each employee establishing a personal password, or using a unique employee identification number to which no one else has access).

Plaintiffs object to TTEC's motion to compel arbitration, arguing that TTEC has not established the existence of an enforceable arbitration agreement. Ms. Beattie and Mr. Houston both assert they "do not recall signing or assenting to" the arbitration agreement, that they "would very likely remember" being presented with a document waiving their right to a jury trial, and that they "strongly believe that [they] did not sign or assent to such a document with TTEC." (Dkt. ##30-1 and 30-2 ¶¶ 5, 7.) They argue TTEC has provided only unsigned arbitration agreements "and a screen shot purporting

5

to show how Plaintiffs and newly hired employees can electronically accept or decline to enter into the arbitration agreement." (Dkt. #30 at 4.) In addition, Plaintiffs argue that the training transcripts that TTEC relies on fail to establish that they assented to arbitration, and that despite asking Defendants to provide "better evidence such as an electronic signature, electronic initials or any other evidence that [Plaintiffs] actually consented to be bound by the arbitration agreement," TTEC has failed to do so. (*Id.* at 5-6.) And, as noted above, they point out that the training transcripts do not contain any signature certificate, electronic signature or initials, time stamp, IP address of the computers allegedly used, or other reliable indicia or evidence of Plaintiffs' consent.

## II.     Standard of Review

As a threshold matter, I address my authority to rule on a motion to compel arbitration under 28 U.S.C. § 636, which sets forth matters a U.S. Magistrate Judge has the statutory authority to resolve by order versus in a report and recommendation. Courts addressing this issue "are divided on whether motions to compel arbitration are dispositive for purposes of 28 U.S.C. § 636(b)(1)." *Vernon v. Qwest Commc'n Int'l, Inc.*, 857 F. Supp. 2d 1135, 1140 (D. Colo. 2012) ("*Qwest I*"). To date the Tenth Circuit has not decided the issue. *Santich v. VCG Holding Corp.*, No. 17-CV-00631-RM-MEH, 2018 WL 3968879, at *3 (D. Colo. Aug. 20, 2018).

The difference determines the standard of review applied by the Article III District Court Judge: if I view the motion to compel as non-dispositive, and thus rule on it in a written order, that order is reviewed under a clearly erroneous or contrary to law standard under Federal Rule of Civil Procedure 72(a); whereas, if I view the motion as

dispositive, I will issue a report and recommendation which, if any party objects to it, will result in *de novo* review under Federal Rule of Civil Procedure 72(b)(3).

In *Qwest I*, after engaging in a very detailed analysis of whether a motion to compel arbitration should be deemed dispositive versus non-dispositive, Magistrate Judge Craig B. Shaffer concluded such motions are non-dispositive. 857 F. Supp. 2d at 1141. Judge R. Brooke Jackson nonetheless "elect[ed] to assume that the motion [to compel arbitration] was dispositive," and thus he reviewed Magistrate Judge Shaffer's order *de novo. Vernon v. Qwest Commc'ns Int'l, Inc.*, 925 F. Supp. 2d 1185, 1189 (D. Colo. 2013) ("*Qwest II*"). Based on Judge Jackson's assumption, and out of an abundance of caution, I also elect to view the motion as dispositive, and therefore am issuing a report and recommendation as opposed to an order.

Having resolved this threshold issue, I now turn to the existence, validity, and scope of the alleged arbitration agreement.

### III.    Analysis

Under the FAA, agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Supreme Court has "long recognized and enforced a liberal federal policy favoring arbitration agreements," and under this policy, any "doubts concerning the **scope** of arbitrable issues should be resolved in favor of arbitration." *Nat'l Am. Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004) (quoting *Howsam v. Dean Witter Reynalds, Inc.*, 537 U.S. 79, 83 (2002) and *Spahr v. Secco*, 330 F.3d 1266, 1269-70 (10th Cir. 2003) (emphasis added)).

The analysis required of me under the FAA is two-fold. First, I must determine

whether a valid agreement to arbitrate exists.[3] This "is a threshold issue which must be

established before the FFA can be invoked." *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d

1279, 1287 (10th Cir. 1997). When, as here, the parties dispute the existence of a valid

arbitration agreement, there is no presumption in favor of arbitration. *Dumais v. Am.*

*Golf. Corp.*, 299 F.3d 1216, 1220 (10th Cir. 2002). *See also Riley Mfg. Co. v. Anchor*

*Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998) ("Unlike the general

presumption that a particular issue is arbitrable when the existence of an arbitration

agreement is not in dispute. . . when the dispute is whether there is a valid and

enforceable arbitration agreement in the first place, the presumption of arbitrability falls

away.") (internal citation omitted). As a result, "[a] court may compel arbitration of a

particular dispute . . . only when satisfied that the 'making' of the agreement to

arbitration is not at issue." *SCOR Reinsurance Co.*, 362 F.3d at 1290 (quoting *Spahr*,

330 F.3d at 1270).

Second, if I find a valid arbitration agreement exists, I then must determine

whether the specific dispute between the parties falls within the scope of that

agreement. *Mitsubishi Motors Corp. v. Soler Chrylser-Plymouth, Inc.*, 473 U.S. 614, 626

(1985); *Pikes Peak Nephrology Assocs., P.C. v. Total Renal Case, Inc.*, No. 09-cv-

---

[3] Disputes concerning the existence of an arbitration agreement "are to be resolved by
the courts unless the parties have agreed, in 'clear and unmistakable' terms, to submit
them to arbitration." *Commc'n Workers of Am. v. Avaya, Inc.*, 693 F.3d 1295, 1303 (10th
Cir. 2012) (citing *Rent–A–Center, W., Inc. v. Jackson,* ——U.S. ——, 130 S. Ct. 2772,
2783 (2010)). Indeed, there is a "presumption that questions about the arbitrability of an
arbitration dispute will be resolved by the courts." *Id*. No party here has argued that the
Parties agreed, much less agreed in "clear and unmistakable terms," to submit this
issue to an arbitrator.

00928-CMA-MEH, 2010 WL 1348326, at *5 (D. Colo. Mar. 30, 2010). Once a court concludes a valid arbitration agreement exists, the FFA mandates a stay of a judicial proceeding "upon any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3. *See also Am. Family Mut. Ins. Co. v. TAMKO Bldg. Prods.*, 178 F. Supp. 3d 1121, 1129 (D. Colo. 2016).

Concerning the first prong of the analysis, "[t]he existence of an agreement to arbitrate 'is simply a matter of contract between the parties; [arbitration] is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration.'" *Avedon Eng'g, Inc.*, 126 F.3d at 1283 (quoting *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943–45 (1995)). "[I]n deciding whether there is an enforceable agreement to arbitrate, 'courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.'" *Qwest I*, 857 F. Supp. 2d at 1142 (quoting *First Options of Chicago,* 514 U.S. at 944 (1995)).

Here, although the purported arbitration agreement states that Colorado law governs issues arising under it, if Plaintiffs did not consent to the agreement, then the choice of law provision is not binding. *See, e.g. Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir. 2014) ("[W]hether the choice of law provision [in a contract] applies depends on whether the parties agreed to be bound by [the contract] in the first place."). In the motion, TTEC assumes Colorado law applies. (Dkt. #18 at 5.) Plaintiffs, in both their response and supplemental brief, do not argue choice of law, and rely on decisions from the Tenth as well as other Circuits. (Dkt. #30 at 12-17; Dkt. #36 at 1-4.) Because Plaintiffs do not argue that Colorado law does *not* apply, I conclude they have waived this issue, and I will apply Colorado law. *See, e.g., McCammond v. Schwan's*

*Home Serv., Inc.*, 791 F. Supp. 2d 1010, 1012 (D. Colo. 2011) (citing *Air Liquide America Corp. v. Continental Cas. Co.,* 217 F.3d 1272, 1275 n.2 (10th Cir.2000) (collecting cases addressing waiver of choice of law provisions when parties fail to raise issue before district court).)

"Contract formation in Colorado requires evidence 'that the parties agreed upon all essential terms.'" *Ragab v. Howard*, 841 F.3d 1134, 1137 (10th Cir. 2016) (quoting *I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882, 888 (Colo. 1986))). *See also PayoutOne v. Coral Mortg. Bankers*, 602 F. Supp. 2d 1219, 1224 (D. Colo. 2009) ("Contract formation requires mutual assent to an exchange between competent parties—where an offer is made and accepted—regarding a subject matter which is certain, and for which there is legal consideration."). "A meeting of the minds is essential." *Ragab*, 841 F.3d at 1137 (citing *Agritrack, Inc. v. DeJohn Housemoving, Inc.*, 25 P.3d 1187, 1192 (Colo. 2001)). Indeed, the touchstone of any "agreement" is a "manifestation of mutual assent on the part of two or more persons as to the substance of a contract." *Agreement*, Black's Law Dictionary (6th ed. 1990) (citing Restatement, Second, Contracts §3). "This can be demonstrated by the parties' 'conduct, their oral statements and their writings, and other evidence illuminating the circumstances surrounding the making of an agreement.'" *Ragab*, 841 F.3d at 1137 (quoting *I.M.A.*, 713 P.2d at 888)). "Courts cannot create or enforce contracts between parties when the contract itself does not clearly demonstrate the parties' intent." *Id.* (citing *Newton Oil Co. v. Bockhold*, 115 Colo. 510, 176 P.2d 904, 908 (1946)).

Because TTEC is the party claiming an obligation to arbitrate, it has the burden of "present[ing] evidence sufficient to demonstrate an enforceable arbitration

agreement." *Stein v. Burt-Kuni One, LLC*, 396 F. Supp. 2d 1211, 1213 (D. Colo. 2005).

The appropriate standard is "similar to that governing motions for summary judgment."

*Id*. Thus, once TTEC makes this showing, the burden shifts to Plaintiffs to raise a

genuine issue of material fact concerning the making of the agreement using evidence

comparable to that required by Federal Rule of Civil Procedure 56. *Id*. If Plaintiffs fail to

do so, arbitration is appropriate for all disputes covered by the arbitration agreement. If,

on the other hand, Plaintiffs demonstrate a genuine issue of material fact, a trial must be

held concerning the existence of an arbitration agreement. *See, e.g., Avedon*, 126 F.3d

at 1283 ("When parties dispute the making of an agreement to arbitrate, a jury trial on

the existence of the agreement is warranted unless there are no genuine issues of

material fact regarding the parties' agreement.")[4]

Here, TTEC has presented *some* evidence that Ms. Beattie and Mr. Houston

"completed" the TTEC arbitration agreement: an internally created spreadsheet,

referred to by TTEC as a "training transcript," that purportedly reflects Ms. Beattie's and

Mr. Houston's online training and review of employment documents, and indicates they

each completed, online and by USA eSignature, the Arbitration Agreement Non-exempt

on a certain date. TTEC also has provided an affidavit by its Director of Human Capital

stating that these training transcripts "confirm" that both Ms. Beattie and Mr. Houston

accepted and executed the arbitration agreement.

However, TTEC has not provided any further evidence of an actual electronic

signature or initials by either Ms. Beattie or Mr. Houston, such as a signature certificate

---

[4] My read of the relevant case law indicates that if either party presents sufficient evidence to create a genuine issue of material fact as to the existence of an agreement to arbitrate, a trial on this issue is warranted.

indicating Ms. Beattie and Mr. Houston assented to and signed the agreement, a time stamp indicating the specific date and time that Plaintiffs read, signed, and assented to it, or the IP address of the computer that Plaintiffs used to sign or assent to the agreement. Nor has TTEC presented *any* evidence indicating what, if any, security measures or protocol it employs to protect the integrity of information provided by its employees when using or accessing their personal/TTU online accounts. It is unclear, for example, whether someone other than a specific TTEC employee could access that employee's online records so as to falsely indicate that the employee "completed" the TTEC arbitration agreement. Did TTEC employees create unique passwords to access the TTEC University online training and document review process and, if so, did anyone else (e.g. supervisors or managers) have the ability or authority to use or reset those passwords? These unresolved questions cast doubt on the authenticity of both Ms. Beattie's and Mr. Houston's alleged electronic signatures.

And while it is perhaps true that many courts have found valid arbitration agreements to exist between employers and employees where an employee completes online training requiring him or her to electronically sign forms, including an agreement to arbitrate, a common and important component to virtually all of these cases is the employer's presentation of sufficient evidence to authenticate the employee's electronic signature, typically via evidence that the employer had adequate procedures in place to maintain the security of and restrict access to the employee's online account. *See, e.g.*, *Gonzales v. J.C. Penney Corp.*, No. 13-CV-86-GKF-TLW, 2013 WL 1798684 (N.D. Okla. Apr. 29, 2013); *Kietzman v. Macy's Retail Holdings, Inc.*, No. 09-4100-SAC, 2010 WL 11628463 (D. Kan. Feb. 2, 2010).

In *Gonzales*, for example, the court granted the defendant employer's motion to compel arbitration, despite the plaintiff employee's assertion that she did not remember electronically signing the arbitration agreement, where the employer presented evidence of the employee's actual e-signature. Unlike here, where the arbitration agreement provided is blank and there is no signature for either TTEC or Ms. Beattie or Mr. Houston, the arbitration agreement presented in *Gonzales* bore the electronic signatures of both the employee and employer. 2013 WL 1798684, at *2-3. The employer in *Gonzales* also presented evidence of the security measures it had taken to ensure that only the plaintiff employee could access her personal electronic employee account. *Id.* To complete her new hire package, for example, the plaintiff was required to enter her Social Security Number, a unique Employee Identification Number assigned to her, and a personal password created by and known only to the plaintiff. *Id.*

Similarly, in *Kietzman*, the employer refuted the employee's denial that she electronically signed an arbitration agreement by presenting an affidavit by the individual who personally administered the new hire training to the plaintiff, and also presenting evidence establishing the security measures employed to ensure the authenticity of the employee's electronic signature[5] (including entering the employee's

---

[5] Under Kansas law, which applied in *Kietzman*, an electronic signature may be authenticated by "showing [] the efficacy of any security procedure applied to determine the person to which the . . . electronic signature was attributable." 2010 WL 11628463, at *4. Colorado law similarly provides that an electronic signature may be authenticated by "showing [] the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." Colo. Rev. Stat. § 24-71.3-109(1). *See also* Colo. Rev. Stat. § 24-71.3-102, Official Comment 11 (stating "[a] security procedure may be applied to verify an electronic signature, verify the identity of the sender, or assure the informational integrity of an electronic record."). Although proof of security measures or procedures is not the only way to authenticate an electronic signature, it is an effective and, indeed, recommended means for doing

13

social security number), as well as general safeguards taken to secure all employee records. 2010 WL 11628463, at *4-5.

In contrast, the court in *Kerr v. Dillard Store Servs., Inc.*, No. CIV A 07-2604-KHV, 2009 WL 385863 (D. Kan. Feb. 17, 2009) denied an employer's motion to compel arbitration where the employer "did not have adequate procedures to maintain the security of intranet passwords, to restrict authorized access to the screen which permitted electronic execution of the arbitration agreement, [or] to determine whether electronic signatures were genuine or to determine who opened individual emails," and it was "not inconceivable" that "a supervisor logged on to plaintiff's account and executed the agreement." *Id.* at *5.

Even in the cases relied on by TTEC for the premise that "many courts" have enforced electronic agreements to arbitrate in the employment context (*see* Dkt. #37 at 7), either the employee did not dispute having electronically signed the arbitration agreement, or the employer presented evidence to authenticate the plaintiff employee's electronic signature or that the employee received the arbitration agreement. In *Armstrong v. Michaels Stores, Inc.*, No. 17-CV-06540-LHK, 2018 WL 6505997, at *5 (N.D. Cal. Dec. 11, 2018) (Dkt. #37-1), for example, the "Plaintiff d[id] not challenge whether the parties agreed to arbitrate, [or] whether the scope of the Arbitration Agreement encompasses all of her claims except her PAGA claim in this lawsuit," and instead argued forfeiture and waiver. And the plaintiff in *Urbanic v. Travelers Ins. Co.*,

---

so, particularly in the employment context. *See*, *e.g.*, Maureen Minehan, *Are your e-signatures enforceable?*, 311 Employment Law Counselor NL 1 (July 2016) (recommending security precautions be taken "regarding transmission and use of an applicant's unique user name and password").

14

No. 10-cv-02368-WYD-MJW, 2011 WL 1743412, at *1 (D. Colo. May 6, 2011)

"repeatedly agreed as part of his ongoing employment . . . [to] arbitrate any disputes,"

*both* via an on-line training certification of his receipt, review, and acceptance of the

agreement, and also his acknowledged receipt and review of the agreement by email.

The employer in *Mitchell v. Craftworks Rests. & Breweries, Inc.*, No. CV 18-879

(RC), 2018 WL 5297815 (D.D.C. Oct. 25, 2018) similarly provided a sworn declaration

attached to which was a copy of the employee's arbitration agreement reflecting her

digital signature and the precise date and time of the signature. The *Mitchell* employer

also presented other onboarding documents "kept electronically on a secure server"

which reflected the employee's digital signatures on other agreements and documents,

as well as a declaration stating that the employee's personnel records could only be

accessed through use of her "unique password." *Id.* at *5

Finally, in *Moise v. Family Dollar Stores of New York, Inc.*, No. 16-CV-6314

(RA), 2017 WL 2378193, at *2 (S.D.N.Y. June 1, 2017), the employer submitted records

showing the date and time the employee "received, reviewed, and acknowledged" the

arbitration agreement through on-line training, as well as additional records confirming

his receipt and review of the agreement. These "include[d] a note in his "'Learning

History' . . . and a record that [he] used his unique employee identification number to

mark the task of reviewing the Open Door and Arbitration training program as

complete." *Id.* at *3.

TTEC also relies on two consumer cases, *Petrie v. GoSmith, Inc.*, 360 F. Supp.

3d 1159, 2019 WL 423064 (D. Colo. Jan. 31 2019) and *Qwest I*, to support its argument

that "courts routinely grant motions to compel arbitration where there is evidence of

assent retrieved from the defendant's own records rather than by a signed agreement."

(Dkt. #37 at 4.) Not only do I find that the electronic "signing" or "acceptance" of an

arbitration agreement in the consumer context is not completely analogous to that in an

employment context, the facts in both of these cases are dissimilar to those in this case,

and therefore I do not find either persuasive.

In *Petrie*, for example, the defendant employer's records reflected the plaintiff's

access to its website through a specific link, and the defendant's system recorded not

only the specific date and time of such access, but also the IP address from which the

plaintiff completed his registration, and the version of the terms of use he accepted.

2019 WL 423064 at *3-4. And in *Qwest I*, in addition to sending letters to all internet

subscribers advising they would be subject to the new Subscriber Agreement,

customers enrolling in service via the internet could not complete the enrollment or

upgrading process without clicking "I agree" to a box of terms and conditions, and could

not complete the actual software installation process without accepting the terms of the

Subscriber Agreement. 857 F. Supp. 2d at 1143-47.

In the employment case TTEC relies on in relation to this argument, *Martinez v.

TCF Nat'l Bank*, No. 13-CV-03504-PAB-MJW, 2015 WL 854442, at *3 (D. Colo. Feb.

25, 2015), the defendants presented evidence that the arbitration agreement had been

mailed to plaintiff, thus "creating a presumption of delivery" that the plaintiff did not

rebut. The employer in *Martinez* also presented evidence that the arbitration policy was

posted on the front page of the company intranet.

The facts in these cases, the primary ones relied on by TTEC to argue that a valid and enforceable arbitration agreement exists between TTEC and Plaintiffs Ms. Beattie and Mr. Houston, are not analogous to those before me.

## IV.    Conclusion

I conclude that, based on the evidence and information TTEC *has* presented— Ms. Haugen's Declaration, a blank, unsigned, and undated copy of some version of the TTEC arbitration agreement, the TTEC-created "training transcripts," and the sample screen shot—and in the face of the statements made by Plaintiffs in which they state they do not recall having electronically signed an arbitration agreement waiving their right to a jury trial, and that if they *had* been presented with such an agreement they would not have signed it, TTEC has not met its burden of "present[ing] evidence sufficient to demonstrate an enforceable arbitration agreement" between TTEC and either Plaintiff Sondra Beattie or Plaintiff Francis Houston, Jr., i.e. of showing that there is no genuine issue of material fact as to the existence of an arbitration agreement. *Stein*, 396 F. Supp. 2d at 1211.

I reach this conclusion based on the lack of any evidence presented by TTEC concerning security measures or procedures it employed to ensure that employees have secure and individual access to their online or TTU employee accounts, and the absence of any signed and dated arbitration agreement, or other indicia of such a signed agreement (e.g., a signature certificate or appropriately authenticated time stamp). I simply am not persuaded that the meager evidence TTEC has presented suffices to satisfy its burden of proof at this stage of the case.

Accordingly, I hereby RECOMMEND that TTEC's Motion to Compel Individual Arbitration (Dkt. #18) with respect to Plaintiffs Ms. Beattie and Mr. Houston be DENIED without prejudice, and I further RECOMMEND that a jury trial be held on the existence of an arbitration agreement.

**IT IS ORDERED that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).**

Date: April 15, 2019

_____
N. Reid Neureiter
United State Magistrate Judge