**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:18-cv-03098-NRN

SONDRA BEATTIE and FRANCIS HOUSTON, JR., individually and on behalf of all other similarly situated individuals,

      Plaintiffs

v.

TTEC HEALTHCARE SOLUTIONS, INC. and TTEC HOLDINGS, INC.,

      Defendants.

---

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION OF OPT-IN PLAINTIFFS**

---

## I.   INTRODUCTION

Defendants' Motion to Compel Arbitration of Opt-In Plaintiffs (Doc. 71) ("Motion to Compel") must be denied. By Defendants' own admission, they cannot show that 23 of the opt-in plaintiffs executed arbitration agreements. This alone is dispositive of their motion.

Defendants claim that of the 78 individuals[1] who have opted into this action, 55 of them have executed the arbitration agreement, but they cannot find evidence that the remaining 23 opt-in plaintiffs worked for Defendants and, if so, whether they agreed to the arbitration agreement. Yet, at least eight of the remaining 23 opt-in plaintiffs *indisputably* worked for Defendants within

---

[1] Defendants argue that "[b]ecause Plaintiffs' counsel has publicized the claims in this lawsuit on its website since June 2018, 78 individuals have joined this action on a rolling basis." Doc. 71, Motion to Compel at 2. It is naïve to suggest that a blog post on Plaintiffs' counsel's website, which generates modest internet traffic, is the sole or primary source of the 78 opt-in plaintiffs. In fact, many of the opt-in plaintiffs have contacted Plaintiffs' counsel on the referral of other plaintiffs who have opted into this action, while other opt-in plaintiffs learned about the lawsuit at work by speaking with coworkers. Simply put, Defendants have no personal knowledge regarding the source of the opt-in plaintiffs, how they learned about the lawsuit, or why they elected to join.

the last three years. Since Defendants cannot show that these opt-in plaintiffs assented to an arbitration agreement, they cannot be compelled to arbitrate their claims.

Defendants—not Plaintiffs—bear the initial burden of showing the existence of an enforceable agreement, yet they cannot even ascertain whether they *employed* the remaining 23 opt-in plaintiffs, let alone whether they entered into binding arbitration agreements with them. There is simply no precedent for compelling arbitration under these circumstances.

Against this backdrop, Defendants seek to compel the opt-in plaintiffs to arbitration, including the 23 opt-in plaintiffs for whom they lack employment records, and *stay* the briefing on conditional certification while they continue searching for evidence confirming whether they employed the remaining 23 opt-in plaintiffs and whether they signed arbitration agreements.[2]

In other words, Defendants filed a motion to compel arbitration in which they bear the initial burden of proof, *admit* they cannot presently satisfy their burden with respect to 23 of the opt-in plaintiffs, but ask the Court to grant their motion anyway and stay the litigation while they search for evidence necessary to satisfy their burden. This is unprecedented.

Since Defendants admit they cannot ascertain whether they employed 23 of the opt-in plaintiffs, and, by extension, whether these plaintiffs assented to an arbitration agreement, these plaintiffs cannot be compelled to arbitrate their claims. Hence, Defendants' motion must be denied.

## II.    LEGAL ARGUMENT

### A.    STANDARD OF REVIEW

"[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582

---

[2] *See* Defendants' Motion to Stay Briefing on Plaintiffs' Motion for Conditional Collective Certification and Court-Authorized Notice to Potential Opt-In Plaintiffs (Doc. 68) ("Motion to Stay").

(1960). A court therefore may only order parties to arbitration when it is "satisfied that the making of the agreement for arbitration … is not in issue." 9 U.S.C. § 4. As the Tenth Circuit recently explained, **the party seeking to compel arbitration bears the burden of showing the existence of an enforceable agreement**:

> In ascertaining whether questions of material fact remain, we give the nonmoving party – here, Plaintiffs – "the benefit of all reasonable doubts and inferences that may arise." *Hancock,* 701 F.3d at 1261 (quoting *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co.,* 636 F.2d 51, 54 (3d Cir.1980)) (internal quotation marks omitted). We have previously explained that the framework for analyzing this issue "is similar to summary judgment practice": the party moving to compel arbitration bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement; if it does so, the burden shifts to the nonmoving party to raise a genuine dispute of material fact regarding the existence of an agreement. *Id.* As noted above, if a genuine dispute of material fact exists, the Federal Arbitration Act ("FAA") calls for a summary trial.

*Bellman v. i3Carbon, LLC*, No. 12-1275, 2014 WL 2210739, at *4 (10th Cir. May 29, 2014).

**B.    DEFENDANTS INDIPUTABLY CANNOT SHOW THAT 23 OF THE OPT-IN PLAINTIFFS AGREED TO BE BOUND BY AN ARBITRATION AGREEMENT**

**1.    At least eight of the 23 opt-in plaintiffs for whom Defendants lack employment records indisputably worked for Defendants during the relevant time period**

While Defendants have had over six months[3] to ascertain whether they employed the opt-in plaintiffs, and, if so, whether they signed arbitration agreements, Defendants are unable to locate *any* employment records for 23 of the opt-in plaintiffs. *See* Doc. 71, Motion to Compel at 4.

The evidence shows that at least eight of the 23 opt-in plaintiffs for whom Defendants lack employment records *indisputably* worked for Defendants during the relevant time period.[4]

---

[3] The first set of opt-in plaintiffs filed their consent forms on December 11, 2018. *See* Doc. 5-1.

[4] In Plaintiffs' Reply to Defendants' Memorandum in Opposition to Plaintiffs' Motion for Conditional Collective Certification and Court-Authorized Notice to Potential Opt-In Plaintiffs (Doc. 77), Plaintiffs represented that at least nine of the 23 opt-in plaintiffs for whom Defendants lack employment records indisputably worked for Defendants during the relevant time period. *Id.* at 3 n. 1. While Plaintiffs still believe that to be the case, Plaintiffs were unable to secure supporting

Kimberly Dotson is one of the 23 opt-in plaintiffs for whom Defendants lack employment records. Ms. Dotson, who opted into this action on February 12, 2019 (Doc. 32-1), worked as a Call Agent at Defendants' Daytona Beach, Florida call center from September 2017 to November 2017 and March 2018 to August 2018. **Exhibit A**, Declaration of Kimberly Dotson ¶ 1. Ms. Dotson has produced a copy of her 2018 W-2 Wage and Tax Statement, showing that Defendants employed her. *See* **Exhibit I**, Declaration of Rod M. Johnston ("Johnston Decl.") at **Exhibit 1**.

Travis Dotson is one of the 23 opt-in plaintiffs for whom Defendants lack employment records. Mr. Dotson, who opted into this action on February 12, 2019 (Doc. 32-1), worked as a Call Agent at Defendants' Daytona Beach, Florida call center from May 2018 to October 2018. **Exhibit B**, Declaration of Travis Dotson ¶ 1. Mr. Dotson has produced a copy of his 2018 W-2 Wage and Tax Statement, showing that Defendants employed him. *See* **Exhibit I**, Johnston Decl. at **Exhibit 2**.

Jasmine Holmes is one of the 23 opt-in plaintiffs for whom Defendants lack employment records. Ms. Holmes, who opted into this action on March 7, 2019 (Doc. 40-1), worked as a Call Agent at Defendants' North Little Rock, Arkansas call center from January 2018 to July 2018 and September 2018 to April 2019. **Exhibit C**, Declaration of Jasmine Holmes ("Holmes Decl.") ¶ 1. Attached to Ms. Holmes' declaration is a copy of her April 5, 2019 pay stub, showing that Defendants employed her. *Id*. at **Exhibit 1**.

Kurt Kramer is one of the 23 opt-in plaintiffs for whom Defendants lack employment records. Mr. Kramer, who opted into this action on March 26, 2019 (Doc. 46-1), worked as a Call Agent at Defendants' Tempe, Arizona call center from June 2016 to February 2017 and August

---

documents and a signed declaration from opt-in plaintiff Randi Swaim before filing this Opposition Brief.

2017 to the present. **Exhibit D**, Declaration of Kurt Kramer ¶ 1. Attached to Mr. Kramer's declaration is a copy of his Anthem BlueCross BlueShield insurance ID card, showing that Defendants employ him. *Id*. at **Exhibit 1**.

Latrice Peterson-Davis is one of the 23 opt-in plaintiffs for whom Defendants lack employment records. Ms. Peterson-Davis, who opted into this action on March 19, 2019 (Doc. 43-1), worked as a Call Agent at Defendants' Sherwood, Arkansas call center from January 2016 to October 2018. **Exhibit E**, Declaration of Latrice Peterson-Davis ¶ 1. Attached to Ms. Peterson-Davis' declaration is a copy of her 2017 W-2 Wage and Tax Statement, showing that Defendants employed her. *Id*. at **Exhibit 1**.

Angel Powell is one of the 23 opt-in plaintiffs for whom Defendants lack employment records. Ms. Powell, who opted into this action on April 30, 2019 (Doc. 58-1), worked as a Call Agent at Defendants' Sherwood, Arkansas call center from November 2018 to the present. **Exhibit F**, Declaration of Angel Powell ¶ 1. Attached to Ms. Powell's declaration is copy of her June 14, 2019 pay slip, showing that Defendants employ her. *Id*. at **Exhibit 1**.

Gregory Rambonga is one of the 23 opt-in plaintiffs for whom Defendants lack employment records. Mr. Rambonga, who opted into this action on April 4, 2019 (Doc. 50-1), worked as a Call Agent at Defendants' Tempe, Arizona call center from August 2018 to May 2019. **Exhibit G**, Declaration of Gregory Rambonga ¶ 1. Attached to Mr. Rambonga's declaration is a copy of his May 31, 2019 pay stub, showing that Defendants employed him. *Id*. at **Exhibit 1**.

Madison Schwartzmeyer is one of the 23 opt-in plaintiffs for whom Defendants lack employment records. Ms. Schwartzmeyer, who opted into this action on February 14, 2019 (Doc. 33-1), worked as a Call Agent at Defendants' Phoenix, Arizona call center from August 2018 to September 2018. **Exhibit H**, Declaration of Madison Schwartzmeyer ¶ 1. Attached to Ms.

Schwartzmeyer's declaration is a copy of her 2018 W-2 Wage and Tax Statement, showing that Defendants employed her. *Id*. at **Exhibit 1**.

Defendants *concede* they cannot show that these opt-in plaintiffs signed arbitration agreements; hence, they cannot be compelled to arbitrate. *See Marcus v. Collins*, No. 16-cv-4221, 2016 WL 8201629, at *7 (S.D.N.Y. Dec. 30, 2016) ("If the moving party fails to make an adequate initial showing, based on competent evidence, the motion to compel arbitration must be denied.").

2. **Defendants' Motion Constitutes A Request For An Advisory Opinion**

Notwithstanding the fact that Defendants *concededly* cannot show that 23 of the opt-in plaintiffs executed arbitration agreements, Defendants seek to *compel* these 23 plaintiffs to arbitration and to *stay* the briefing on Plaintiffs' Motion for Conditional Collective Certification (Doc. 54), which has been pending for over two months, while they search for evidence confirming whether they employed these 23 opt-in plaintiffs and whether they signed arbitration agreements. *See* Doc. 68, Motion to Stay at 3; Doc. 71, Motion to Compel at 4.

Defendants' motion constitutes a request for an advisory opinion because it is premised upon the notion that a court can compel arbitration *before* the moving party has produced the evidence necessary to meet its initial burden, and then *stay* the litigation until the moving party produces the evidence. There is no precedent for the relief Defendants seek. *See Whittington v. Taco Bell of Am., Inc.*, No. 10-cv-01884, 2011 WL 1772401, at *6 (D. Colo. May 10, 2011) (finding that a declaratory judgment regarding the enforceability of arbitration agreements not before the court would constitute an advisory opinion at the conditional class certification stage).

3. **Seven of the opt-in plaintiffs for whom Defendants lack employment records compellingly represent that they were never presented with, nor signed, an arbitration agreement**

Opt-in plaintiffs Kimberly Dotson, Travis Dotson, Jasmine Holmes, Kurt Kramer, Latrice Peterson-Davis, Angel Powell and Gregory Rambonga are current and former Call Agents who

worked for Defendants during the relevant time period. **Exhibits A-G ¶¶** 1. Each of these opt-in

plaintiffs compellingly, unambiguously, and unequivocally testifies that:

> My attorneys have advised me that TTEC alleges that all of its new hire employees are presented with and required to electronically assent to an arbitration agreement as part of the onboarding process, and, thus, I must have signed or assented to one as well. I understand that TTEC cannot locate any records verifying that they have ever employed me. I understand that TTEC cannot locate any records verifying that I was ever presented with, signed, or assented to an arbitration agreement. I understand that the arbitration agreement that TTEC alleges that I assented to would waive my right to a civil court action and my right to a trial before a judge and jury in the event that I had claims against TTEC or TTEC brought claims against me. The fact that TTEC cannot locate any records verifying that I was presented with or assented to an arbitration agreement does not surprise me. **I am certain that I was never presented with a physical or electronic copy of an arbitration agreement before or during my employment with TTEC. I am certain that I never physically or electronically signed or assented to an arbitration agreement before or during my employment with TTEC. I am certain that nobody at TTEC ever presented to me, or asked me to sign, an arbitration agreement. I am certain that nobody at TTEC ever told me that my employment or continued employment with TTEC was conditioned upon me signing an arbitration agreement. Any suggestion or allegation that I was presented with, read, signed, or assented to an arbitration agreement before or during my employment with TTEC is false**. If TTEC comes forward with evidence that in any way indicates that I was ever presented with, read, signed, or assented to an arbitration agreement before or during my employment with TTEC, I respectfully request the opportunity to contest the legitimacy of the evidence because I am certain, as stated above, that I never assented to arbitrate my claims against TTEC.

*Id*. ¶¶ 2-12 (emphasis added). Due to Defendants' inability to satisfy their initial burden of showing

the existence of an agreement as to the 23 opt-in plaintiff for whom they lack employment records,

the burden does not shift to Plaintiffs under the two-step analysis articulated in *Bellman, supra*.

If, however, this Court somehow finds that Defendants satisfied their initial burden, the

opt-in plaintiffs' unambiguous and compelling testimony that they are certain they never signed

or assented to an arbitration agreement before or during their employment, in combination with

Defendants' complete lack of evidence, is *more* than sufficient to raise a genuine dispute of

material fact regarding the existence of an agreement between Defendants and Kimberly Dotson,

Travis Dotson, Jasmine Holmes, Kurt Kramer, Latrice Peterson-Davis, Angel Powell, Gregory

Rambonga, Madison Schwartzmeyer and the other 15 opt-in plaintiffs for whom Defendants lack

employment records. Hence, Defendants' motion must be denied.

**C.      COMPELLING THE 23 OPT-IN PLAINTIFFS FOR WHOM DEFENDANTS LACK EMPLOYMENT RECORDS TO ARBITRATION IS SUPPORTED BY NO RELEVANT AUTHORITY**

**1.      District courts routinely reject motions to compel arbitration where, like here, the employer argues that all employees are required to sign arbitration agreements but cannot produce evidence that the parties agreed to arbitrate**

Defendants argue that the opt-in plaintiffs were provided an electronic version of the

arbitration agreement as part of the on-boarding process, that they had the opportunity to review

the arbitration agreement and accept or decline to sign it, and that they accepted the arbitration

agreement through their electronic acknowledgement of the agreement. Motion to Compel at 2, 7,

9 (citing Doc. 71-1, Declaration of Anna Haugen ("Haugen Decl.") ¶ 3). Thus, argue Defendants,

the opt-in plaintiffs must be compelled to arbitration. *See, generally,* Motion to Compel.

Compelling the 23 opt-in plaintiffs for whom Defendants lack employment records to

arbitration is supported by no relevant authority. Indeed, district courts routinely *reject* motions to

compel arbitration where the employer argues that employees are required to sign arbitration

agreements as a condition of employment but cannot produce any evidence that the party being

compelled to arbitrate assented to an arbitration agreement. In *Newman v. Hooters of Am., Inc.*,

No. 06-cv-364, 2006 WL 1793541 (M.D. Fla. June 28, 2006), the court decisively rejected a chain

restaurant employer's attempt to rely upon arbitration agreements it allegedly required all

employees to sign where it could not produce an agreement signed by the named plaintiff or any

other evidence that the named plaintiff assented to be bound. *Id*. at *1-2. The court explained:

> Defendants contend that all employees were required to complete an Employment
> Application and New Hire Packet containing the Arbitration Agreement, and,
> therefore, the Plaintiff must also have executed this Arbitration Agreement or her

8

employment would not have commenced. Under Defendant's reasoning, if Plaintiff began working, then she must have executed an Arbitration Agreement. **This Court will not rely on "if, then" scenarios and reverse factual inferences to establish the existence of a contract**. At the present time, Defendants have failed to conclusively establish that the Plaintiff executed a written Arbitration Agreement that falls within the scope of the FAA. This Court is not satisfied that the making of the Agreement is not an issue, and, therefore, cannot stay action and compel arbitration.

*Id*. at *2 (emphasis added). The facts of *Newman* are virtually indistinguishable from the present case, and *Newman* therefore weighs heavily in favor of denying Defendants' motion as to the 23 opt-in plaintiffs for whom they lack employment records.

*Barkley v. Pizza Hut of Am., Inc.*, No. 14-cv-376, 2014 WL 3908197 (M.D. Fla. Aug. 11, 2014), is another relevant case. In *Barkley*, Pizza Hut moved to compel arbitration as to all of the plaintiffs, even those for whom Pizza Hut could not locate signed arbitration agreements. *Id*. at *2. Nonetheless, Pizza Hut moved to compel arbitration based on a declaration by one of the plaintiff's hiring managers and a declaration by a Pizza Hut lawyer, which both generally averred "that it was Pizza Hut policy for Plaintiffs to sign the arbitration agreements and that they must have therefore done so." *Id.* at *3. The court denied Pizza Hut's motion to compel, stating in pertinent part:

Here, the Court need not proceed to the second step of the analysis because it is thoroughly unconvinced that Defendants have even demonstrated the existence of an agreement in order to shift the burden to Plaintiffs. Neither Burkhardt's nor McDonald's declaration persuades the Court otherwise. **Burkhardt's declaration merely states that it was Pizza Hut policy for employees to sign the agreement, but she has no personal knowledge that Plaintiffs Barkley, Phillips, or Walsh actually signed or ever even saw such an agreement**. McDonald's declaration is more concrete, as he was Plaintiff Barkley's manager, but even he does not have a specific recollection of Plaintiff Barkley signing the agreement. While McDonald also attests that Pizza Hut conducted audits of his employee's personnel files and submits that they "were always 100% compliant" and "complete", **this averment is severely undercut by the fact that Pizza Hut now cannot find Plaintiff Barkley's allegedly signed agreement**.

In short, Defendants have not made out a *prima facie* case that Plaintiffs Barkley, Phillips, and Walsh agreed to arbitrate, and the burden does not shift to Plaintiffs to substantiate their denial under *Chastain*. **The Court simply will not order Plaintiffs to arbitrate when there is essentially zero evidence that they ever**

**even saw, let alone assented to, an arbitration agreement**. The motion is therefore due to be denied. If Defendants do locate the alleged documents or if they have other sufficient evidence demonstrating that Plaintiffs actually signed or otherwise assented to such agreements, they may renew their motion.

*Id*. at *3-4 (emphasis added) (omitting footnote and internal citations).

Like *Pizza Hut, supra*, Defendants argue that all employees are required to sign an arbitration agreement; but this argument is severely undercut by the fact they cannot produce *any* employment records—let alone records demonstrating the execution of an arbitration agreement—for 23 of the opt-in plaintiffs, at least eight of whom *indisputably* worked for Defendants during the relevant time period. Further, Ms. Haugen's declaration, just like the declarations in *Pizza Hut*, merely states that it was Defendants' policy for new employees to sign arbitration agreements, but she has no personal knowledge that *any* of the 23 opt-in plaintiffs for whom Defendants lack employment records signed or ever even saw an arbitration agreement. This Court cannot order these 23 opt-in plaintiffs to arbitrate "when there is essentially zero evidence that they ever even saw, let alone assented to, an arbitration agreement." *Id.* at *4.

*Covillo v. Specialty's Cafe*, No. 11-cv-00594, 2012 WL 3537058 (N.D. Cal. Aug. 14, 2012), is also on point. In *Covillo*, the defendants moved to compel arbitration on the grounds that the parties entered into enforceable arbitration agreements. *Id*. at *2. Despite the fact that two of the plaintiffs did not recall signing the handbook acknowledgment forms or the Arbitration/Mediation Dispute Resolution Agreement, defendants offered evidence that the two plaintiffs signed the acknowledgment forms and agreements on August 9, 2006, and January 24, 2011, respectively. *Id*. at *4. The defendants conceded, however, that they did not have a similar written agreement signed by the third plaintiff, but argued that he must have signed the forms because it was defendants' practice to require employees to sign the forms as a condition of employment. *Id*. The defendants' argument, however, was severely undercut by their admission

10

that they had signed agreements from only 90 percent of their employees, casting serious doubt on their assertion that all employees were required to sign the forms as a condition of employment. *Id*. Therefore, with respect to the third plaintiff, "Defendants have failed to demonstrate that a valid arbitration agreement exists." *Id*.

Here, too, Defendants argue that to the extent they employed any of the 23 opt-in plaintiffs for whom they lack employment records, these opt-in plaintiffs must have signed the arbitration agreement because Defendants have a policy requiring new hires to sign an arbitration agreement. Doc. 68, Motion to Stay at 2 n. 1; Doc. 71-1, Haugen Decl. ¶ 3. Defendants, however, *concede* that they have no employment records, let alone evidence of signed arbitration agreements, for *any* of these 23 opt-in plaintiffs, including the eight opt-in plaintiffs who indisputably worked for Defendants during the relevant time period. Doc. 71, Motion to Compel at 3-4. This concession casts serious doubt on Defendants' assertion that all employees must sign arbitration agreements.

Accordingly, Defendants have failed to demonstrate that valid arbitration agreements exist as to the 23 opt-in plaintiffs for whom they lack employment records, including Kimberly Dotson, Travis Dotson, Jasmine Holmes, Kurt Kramer, Latrice Peterson-Davis, Angel Powell and Gregory Rambonga, who indisputably worked for Defendants during the last three years and who are certain that they never signed an arbitration agreement.

**2.   Case law supports that to compel arbitration based on a policy requiring employees to sign arbitration agreements, an employer must submit *some* further indicia of reliability, such as business records showing that the parties agreed to arbitrate their claims**

District courts have compelled employees to arbitration in the absence of a signed agreement so long as there is *some* evidence that the employee actually assented to an arbitration agreement. For example, in *Gregorius v. Npc Intl., Inc.*, No. 16-cv-593, 2016 WL 6996116 (M.D. Fla. Nov. 30, 2016), the court compelled arbitration because "the competent evidence offered by

[defendant] is sufficient to establish the existence of an arbitration agreement …, <u>including</u> <u>evidence that plaintiff at least electronically opened the Agreement and electronically signed it</u>." *Id*. at *4 (emphasis added). Here, no such evidence exists with respect to 23 of the opt-in plaintiffs because Defendants cannot even ascertain whether they *employed* these opt-in plaintiffs, let alone whether they electronically opened and signed the arbitration agreement. *See Barkley*, 2014 WL 3908197, at *4 n. 6 ("A signature is not necessarily required, but there must be some showing of assent.") (citing *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1369 (11th Cir. 2005)).

And while employers may point to routine-practice evidence to show that employees are required to sign arbitration agreements as a condition of employment, Defendants cite no case law where routine-practice evidence *alone* was sufficient to establish the making of an agreement. Critically, when Defendants compelled Named Plaintiffs Sondra Beattie ("Plaintiff Beattie") and Francis Houston, Jr. ("Plaintiff Houston") to arbitration, they relied upon routine-practice evidence *and* business records in the form of "training transcripts" allegedly showing that Plaintiffs Beattie and Houston signed the arbitration agreement. *See* Doc. 18-1, Declaration of Anna Haugen at Exh. A-B. In fact, Defendants' Director of Human Capital avowed personal knowledge that Plaintiffs Beattie and Houston accepted the arbitration agreement based upon her review of their training transcripts, "showing [they] executed the Arbitration Agreement." *Id*. ¶¶ 3-5.

Even Defendants' instant Motion to Compel relies almost *exclusively* on business records to show that the 55 opt-in plaintiffs for whom Defendants have employment records signed the arbitration agreement. Doc. 71-1, Haugen Decl. at Exh. B-C.

Defendants cannot have it both ways. They cannot rely on "training transcripts" to compel Plaintiffs Beattie, Houston, and the 55 opt-in plaintiffs for whom Defendants have employment records to arbitration, and then turn around and ask the Court to *also* compel the other 23 opt-in

plaintiffs to arbitration, even though Defendants do not have *any* employment records, including "training transcripts," indicating that these opt-in plaintiffs signed an arbitration agreement.

To be sure, such a request is entirely inconsistent with this Court's Order (Doc. 66) granting Defendants' Motion to Compel Individual Arbitration, where the Court specifically pointed to Defendants' *business records* as supporting their contention that Plaintiffs Beattie and Houston electronically assented to the arbitration agreement:

> Defendants' contention that Plaintiffs Beattie and Houston manifested their assent to the arbitration agreement by clicking the "Accept" button **is supported by employee data they routinely collect and maintain in the form of spreadsheets**. Defendants' position is further supported by the declaration of its director of human capital, who explained that **the spreadsheets reflect that Plaintiffs Beattie and Houston executed the arbitration agreement**.

*Id.* at 4 (emphasis added) (omitting internal citation).

Here, by Defendants' own admission, they do not possess *any* records indicating that they ever even *employed* 23 of the opt-in plaintiffs*,* let alone that they executed arbitration agreements. Compelling arbitration under these circumstances would be unprecedented. *See Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 977 (10th Cir. 2014) ("[E]ven under the FAA it remains a 'fundamental principle' that 'arbitration is a matter of contract,' not something to be foisted on the parties at all costs.") (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)).

Case law supports that to compel arbitration based upon a policy requiring employees to sign arbitration agreements, the employer must submit *some* further indicia of reliability, such as business records allegedly showing that the party being compelled to arbitration did, indeed, assent to an arbitration agreement. For example, in *Mitchell v. Craftworks Restaurants & Breweries, Inc.*, No. 18-cv-879, 2018 WL 5297815, at *6 (D.D.C. Oct. 25, 2018), the court held that the plaintiff electronically signed the Arbitration Agreement where defendant submitted a sworn declaration from its Director of Human Resources stating that new employees are provided an arbitration

agreement <u>and that the company's business records indicate that the plaintiff electronically signed</u> <u>the Arbitration Agreement on October 20, 2016, which was around the time her employment</u> <u>began</u>. And while the court acknowledged that the declaration failed to describe defendant's digital signing procedures, the declaration stated that the declarant "ha[s] personal knowledge of the matters contained in this declaration" and "<u>ha[s] knowledge based on [her] personal review of</u> <u>business records made at or near the time by someone with knowledge</u>." *Id*. (emphasis added).

Here, Defendants' Director of Human Capital does not avow personal knowledge based on her personal review of business records, nor can she, because *no such business records exist* as to the 23 opt-in plaintiffs for whom Defendants lack employment records, including Kimberly Dotson, Travis Dotson, Jasmine Holmes, Kurt Kramer, Latrice Peterson-Davis, Angel Powell, Gregory Rambonga and Madison Schwartzmeyer.

Likewise, in *Hose v. Washington Inventory Services, Inc.*, No. 14-cv-2869, 2016 WL 6427810 (S.D. Cal. Aug. 30, 2016), defendant argued that since November 11, 2013, its Dispute Resolution Agreement ("DRA") had been presented to employees via defendant's internal network site during the onboarding process, and that all employees who had completed their onboarding process prior to November 11, 2013 were also required to review and accept or opt out of the DRA using defendant's network site on or after that date. *Id*. at *2. The defendant also attached a true and correct copy of the DRA presented to each employee. *Id*.

The court found defendant's witnesses and declarations to be credible and persuasive evidence that the electronic signatures on the DRAs were an act attributable to the opt-in plaintiffs because the declarants testified in detail regarding the security of the intranet system, that the opt-in plaintiffs accessed the DRA by logging in to defendant's intranet with a unique username and password, that the employees had the option to bypass signing the DRA once, but after that the

employees were unable to access their schedule and payroll unless they signed the DRA, that an employee could only sign the DRA by inputting his or her unique password, that the DRAs were stored on a secure database, that the signed DRAs were stored in a PDF format that could not be modified, that defendant controlled access to the database in which the DRAs were stored, that only certain people had access to that database, and that those people had to log in with their unique username and passwords to access the database. *Id*. at *6.

Based on this evidence, the court found that the electronic signatures were placed on the DRA by the opt-in plaintiffs using unique logins and passwords, that the employees were required to sign the DRA in order to access their schedules and payroll, that the date and time printed next to the electronic signatures indicate the date and time the DRA was signed, that the DRAs were stored on a secure database in a format that could not be modified, and that none of the opt-in plaintiffs denied electronically signing the DRA. *Id*. Thus, the court found that there was evidence in the record that the opt-in plaintiffs signed the DRAs. *Id*.

Here, there is *no* evidence in the record that the 23 opt-in plaintiffs for whom Defendants lack employment records ever even *saw* an arbitration agreement, let alone signed or assented to be bound by one; nor do Defendants contend that these plaintiffs' employment would not have begun unless they completed the onboarding process or signed the arbitration agreement. And even if Defendants did so contend, Jasmine Holmes, who is one of the 23 opt-in plaintiffs for whom Defendants lack employment records, testified that she is *certain* she never participated in any onboarding process and never signed an arbitration agreement. **Exhibit C**, Holmes Decl. ¶¶ 8, 14.

**3.      Defendants fail to indicate whether—and if so, how—they were able to ascertain that the 23 opt-in plaintiffs for whom they lack employment records electronically acknowledged an arbitration agreement**

In support of their motion to compel the opt-in plaintiffs to arbitration, including the 23 opt-in plaintiffs for whom Defendants lack employment records, Defendants primarily rely on the

declaration of their Director of Human Capital, who testifies that as part of the onboarding process, "new employees are provided an electronic copy of TTEC's Arbitration Agreement" and are told that "clicking the 'Accept' button is the electronic equivalent of a handwritten signature." Doc. 71-1, Haugen Decl. ¶ 3. Attached to Ms. Haugen's declaration are "training transcripts" for the 55 opt-in plaintiffs for whom Defendants have employment records, "showing [they] executed the Arbitration Agreement." *Id.* ¶¶ 4-58, Exh. B-C. Notably, Ms. Haugen does not testify that the 23 opt-in plaintiffs for whom Defendants lack employment records signed the arbitration agreement, nor does she point to any "training transcripts" or other business records allegedly showing that they executed the arbitration agreement. In fact, she never even *mentions* these 23 opt-in plaintiffs.

While it is true that some courts have found the declaration of human resource employees sufficient to authenticate the electronic acknowledgement of an arbitration agreement, the *content* of such declarations, rather than their mere existence, is determinative.

For example, when authenticating its arbitration agreement, the defendant in *Tagliabue v. J.C. Penney Corp., Inc.*, No. 15-cv-01443, 2015 WL 8780577 (E.D. Cal. Dec. 15, 2015), submitted the declarations of two Senior Human Resources Managers, one attesting that the plaintiff had signed the agreement and the other "explaining the new hire onboarding and current employee processes for completing company policies." *Id.* at *3. Here, by contrast, Defendants' Director of Human Capital does not attest that the 23 opt-in plaintiffs for whom Defendants lack employment records signed the arbitration agreement.

As another example, in *Taft v. Henley Enterprises, Inc.*, No. 15-cv-1658, 2016 WL 9448485 (C.D. Cal. March 2, 2016), the declaration of defendant's Human Resources Manager:

> explain[ed] the new hire onboarding process, which consists of discrete steps that must be completed in order. An audit trail documents the steps that [the plaintiff] took in her onboarding process in reverse chronological order, and it demonstrates that she electronically reviewed and signed the arbitration agreement on September

4, 2014. A new hire can proceed to the next step only after completing all the previous steps of the process, and it is notable that [the plaintiff] appears to have executed other onboarding documents before *and after* she signed the arbitration agreement. Finally, [the d]efendant provides evidence that each new hire creates a unique username and password that must be entered to access and execute the onboarding materials.

*Id.* at *3 (omitting internal citations) (emphasis original).

By contrast, in *Ruiz v. Moss Brothers Auto Group*, 232 Cal. App. 4th 836 (2014), a California court of appeal found that the defendant had not authenticated sufficiently an arbitration agreement after submitting two declarations that "summarily asserted" the plaintiff electronically signed the agreement. *Id.* at 843-44. The defendant asserted that an arbitration agreement is presented to "all persons who seek or seek to maintain employment" with the defendant, and "[e]ach employee is required to log into the [defendant's] HR system—each with his or her unique login ID and password—to review and electronically execute" the agreement. *Id.* at 839-41.

Considering both declarations in *Ruiz*, as well as prior cases, the court found that the declarations "never explained how [the plaintiff's] printed electronic signature, or the date and time printed next to the signature, came to be placed on the [ ] agreement" or how the defendant "ascertained that the electronic signature . . . was the act of" the plaintiff. *Id.* at 839. The court noted that authentication "was not a difficult evidentiary burden to meet, but it was not met here." *Id.* at 844.

The same is true in the matter before this Court. Here, Defendants summarily assert that *all* of the opt-in plaintiffs, including the 23 opt-in plaintiffs for whom Defendants lack employment records, electronically acknowledged the arbitration agreement. Doc. 71, Motion to Compel at 2, 7, 9 (citing Doc. 71-1, Haugen Decl. ¶ 3).

Nowhere in Defendants' motion, nor in Ms. Haugen's declaration, do they explain how they inferred that the 23 opt-in plaintiffs for whom Defendants lack employment records

completed the onboarding process, how they ascertained that the 23 opt-in plaintiffs electronically saw or assented to an arbitration agreement, or how they determined that the arbitration agreement was electronically signed by the 23 opt-in plaintiffs during the onboarding process on or near the date they were hired. No steps are detailed; no audit trail discussed. It is, in fact, entirely unclear at what point the 23 opt-in plaintiffs allegedly completed the onboarding process and assented to the arbitration agreement, and whether signing the arbitration agreement was just one of several steps in their onboarding or the only onboarding step they were asked to complete.

The assertion from Defendants is deficient; it states a conclusion without providing any steps to illuminate how they arrived at that conclusion. Ms. Haugen's assertion that new employees are provided an electronic copy of an arbitration agreement is the only substance offered to authenticate that the 23 opt-in plaintiffs for whom Defendants lack employment records electronically signed the arbitration agreement. Because of the critical gap in evidence supporting Defendants' theory that the 23 opt-in plaintiffs electronically acknowledged the arbitration agreement, the Court should find that the 23 opt-in plaintiffs' alleged electronic assent is not sufficiently authenticated. That is, Defendants have not met their burden of demonstrating that the 23 opt-in plaintiffs for whom they lack employment records assented to an arbitration agreement.

The absurdity of Defendants' motion cannot be understated. Defendants argue that the opt-in plaintiffs, including the 23 opt-in plaintiffs for whom they lack employment records, electronically signed the arbitration agreement. Doc. 71, Motion to Compel at 2, 7, 9 (citing Doc. 71-1, Haugen Decl. ¶ 3). But Defendants cannot even establish whether they *employed* these 23 opt-in plaintiffs. *Id.* at 4. How, then, do Defendants know they entered into binding arbitration agreements with them? Defendants themselves state that, "TTEC is still searching for evidence that these [23 opt-in plaintiffs] worked for TTEC and, if so, whether they agreed to the Arbitration

Agreement." *Id*. (emphasis added). Yet, in the very next paragraph, Defendants argue that,

> Despite being bound by valid Arbitration Agreements covering the claims arising out of their relationship with TTEC, the Opt-In Plaintiffs have joined the instant lawsuit…. Because these claims are covered by the parties' valid Arbitration Agreements, the Opt-In Plaintiffs should be compelled to arbitrate their claims on an individual basis.

*Id*. So, on the one hand, Defendants concede they have no idea whether they employed 23 of the opt-in plaintiffs or whether they signed arbitration agreements. *Id. In the very next paragraph*, Defendants argue that *all* of the opt-in plaintiffs, including the 23 opt-in plaintiffs for whom they lack employment records, are bound by valid arbitration agreements and must therefore be compelled to arbitrate on an individual basis. *Id*. Defendants do not even *attempt* to reconcile the absurdity of these conflicting statements.

For these reasons, and those raised above, Defendants have failed to meet their initial burden of establishing the making of an enforceable arbitration agreement with respect to the 23 opt-in plaintiffs for whom they lack employment records, including Kimberly Dotson, Travis Dotson, Jasmine Holmes, Kurt Kramer, Latrice Peterson-Davis, Angel Powell, Gregory Rambonga and Madison Schwartzmeyer. Defendants' Motion to Compel must therefore be denied.[5]

### III.   CONCLUSION

For the reasons stated herein, this Court should find that Defendants failed to satisfy their

---

[5] For the reasons stated in Plaintiffs' briefing (*see* Doc. 30, 36 and 64) in response to Defendants' Motion to Compel Individual Arbitration (Doc. 18) and Defendants' Objections to Magistrate's Report & Recommendation (Doc. 57), Plaintiffs submit that Defendants' evidence is insufficient to compel the 55 opt-in plaintiffs for whom they do have employment records to arbitration. That being said, Plaintiffs concede that Defendants' proffered evidence—namely, Ms. Haugen's declaration and the 55 opt-in plaintiffs' "training transcripts"—is substantially similar to the evidence relied upon to compel Plaintiffs Beattie and Houston to arbitration. Therefore, rather than repeat the arguments made in Plaintiffs' prior briefing, Plaintiffs' primary focus in this Opposition Brief is the 23 opt-in plaintiffs for whom Defendants lack employment records.

initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable

arbitration agreement between Defendants and the 23 opt-in plaintiffs for whom they lack

employment records, and, therefore, Defendants' request to compel these 23 plaintiffs to

arbitration must be denied. Alternatively, should this Court find that Defendants satisfied their

initial burden, this Court should find that the opt-in plaintiffs' rebuttal evidence is sufficient to

raise a genuine dispute of material fact regarding the existence of an enforceable arbitration

agreement between Defendants and the 23 opt-in plaintiffs for whom they lack employment

records, and should order that this matter proceed to a jury trial on the existence of the agreement.[6]

Dated: June 25, 2019                                Respectfully submitted,

                                                    /s/ Rod M. Johnston
                                                    Matthew L. Turner
                                                    Kevin J. Stoops
                                                    Rod M. Johnston
                                                    SOMMERS SCHWARTZ, P.C.
                                                    One Towne Square, 17th Floor
                                                    Southfield, MI  48076
                                                    (248) 355-0300
                                                    Fax: (248) 936-1973
                                                    mturner@sommerspc.com
                                                    kstoops@sommerspc.com
                                                    rjohnston@sommerspc.com

                                                    Attorneys for Plaintiffs and the Putative
                                                    Collective/Class Members

### CERTIFICATE OF SERVICE

I certify that on June 25, 2019, I electronically filed the forgoing paper with the Clerk of

the Court using the ECF system, which will send notification of such filing to all counsel of record.

                                                    /s/ Janice Koehler

---

[6] Section 4 of the FAA provides in part that "[i]f the making of the arbitration agreement ... be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. Section 4 permits the Court to decide the issue if plaintiff does not demand a jury trial. *Id.* ("If no jury trial be demanded by the party alleged to be in default, ... the court shall hear and determine such issue.").