IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:18-cv-03098-NRN

SONDRA BEATTIE and FRANCIS HOUSTON, JR., individually and on behalf of all other similarly situated individuals,

    Plaintiffs

v.

TTEC HEALTHCARE SOLUTIONS, INC. and TTEC HOLDINGS, INC.,

    Defendants.

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' THIRD MOTION TO COMPEL ARBITRATION OF OPT-IN PLAINTIFFS

### I. INTRODUCTION

Defendants TTEC Healthcare Solutions, Inc. and TTEC Holdings, Inc. ("Defendants" or "TTEC") aver that the 14 opt-in plaintiffs[1] subject to Defendants' Third Motion to Compel Arbitration of Opt-In Plaintiffs (ECF No. 96) ("Motion") entered into binding agreements to arbitrate the claims brought in this matter. (Motion at 2 (citing Declaration of Anna Haugen (ECF No. 96-1) ("Haugen Decl.") ¶¶ 4-20).) However, Defendants fail to cite their burden of proof in succeeding on their Motion. Using the proper standard, it is clear that Defendants' proffered evidence fails to meet that burden.

At the outset, the Opt-In Plaintiffs do not contest Defendants' position that if the Opt-In Plaintiffs had signed the Arbitration Agreements and accepted their terms, under the relevant

---

[1] Tecolia Byrd, Christopher Clark, Doris Clay, Kimberly Dotson, Travis Dotson, Dallas Foster, Jasmine Holmes, Gary Jones, Kurt Kramer, Latrice Peterson-Davis, Gregory Rambonga, Madison Schwartzmeyer, Sheryl White and Chrisha Williams (collectively referred to herein as the "Opt-In Plaintiffs").

1

(Colorado) law, it would constitute a binding contract, and the arbitration provision would cover the Opt-In Plaintiffs' claims. The Opt-In Plaintiffs' argument is that there is no binding arbitration agreement between the parties because the Opt-In Plaintiffs never agreed to, nor signed, the Arbitration Agreements.

## II. LEGAL ARGUMENT

### A. Legal Standard

Although the Federal Arbitration Act ("FAA") applies to this matter, its presumption of arbitrability is not applicable to the question before this Court. It is true that the FAA reflects "a liberal federal policy favoring arbitration," but it also reflects the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citations omitted). The FAA reversed a "longstanding judicial hostility to arbitration agreements," favoring a presumption of arbitrability if an agreement requires arbitration. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). However, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Bellman v. i3Carbon, LLC*, 563 F. App'x 608, 613 (10th Cir. 2014) (quoting *Spahr v. Secco*, 330 F.3d 1266, 1269 (10th Cir. 2003)).

Thus, the presumption in favor of arbitration disappears when a party disputes that he entered into a valid and enforceable arbitration agreement. *Id.* (citing *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1220 (10th Cir. 2002)). "[A] court may compel arbitration of a particular dispute … only when satisfied that the making of the agreement to arbitrate is not at issue." *National American Ins. Co. v. SCOR Reinsurance Co.*, 362 F.3d 1288, 1290 (10th Cir. 2004) (citations and quotations omitted).

Where, as here, the validity of the underlying agreement to arbitrate is at issue, the court

2

uses a burden-shifting framework similar to that used in deciding summary judgment motions.

> In ascertaining whether questions of material fact remain, we give the nonmoving party – here, Plaintiffs – "the benefit of all reasonable doubts and inferences that may arise." *Hancock,* 701 F.3d at 1261 (quoting *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co.,* 636 F.2d 51, 54 (3d Cir.1980)) (internal quotation marks omitted). We have previously explained that the framework for analyzing this issue "is similar to summary judgment practice": the party moving to compel arbitration bears the initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement; if it does so, the burden shifts to the nonmoving party to raise a genuine dispute of material fact regarding the existence of an agreement. *Id.* As noted above, if a genuine dispute of material fact exists, the Federal Arbitration Act ("FAA") calls for a summary trial.

*Bellman*, 563 F. App'x at 612.

For the purposes of a motion to arbitrate (or a summary judgment motion), a fact is "material" if it is "essential to the proper disposition of the claim." *Wright ex rel. Trust Co. of Kan. v. Abbott Labs*, Inc., 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)). There is a "genuine issue" as to a fact where "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

> **B.  Defendants failed to present evidence sufficient to demonstrate the existence of an enforceable agreement to arbitrate**

In support of their claim that the Opt-In Plaintiffs signed the Arbitration Agreements, Defendants rely primarily on testimony from Director of Human Capital Anna Haugen, who works in Tempe, Arizona and is responsible for the overall HR functions at TTEC Healthcare Solutions, Inc. (Haugen Decl. (ECF No. 96-1) ¶ 2.) According to Ms. Haugen,

> As part of the onboarding process at TTEC and Revana, employees receive online training and acknowledge documents and policies through our tool called TTEC University ("TTU"). As part of TTU, new employees are provided an electronic copy of TTEC's or Revana's Arbitration Agreement. A true and correct copy of the TTEC Arbitration Agreement is attached as Exhibit B. Employees confirm their acceptance or rejection of the Arbitration Agreement by clicking "Accept" or

3

"Decline." TTU explains that clicking the "Accept" button is the electronic equivalent of a handwritten signature.

*Id*. ¶ 4.

Ms. Haugen's declaration merely states that it is Defendants' policy to provide newly hired employees with an electronic copy of the Arbitration Agreement as part of Defendants' onboarding process; but she has no personal knowledge that the Opt-In Plaintiffs actually signed or ever even saw the Arbitration Agreements. *Id*. Indeed, Ms. Haugen works in Arizona, *id*. at ¶ 2, whereas the Opt-In Plaintiffs work for Defendants in brick-and-mortar call center facilities located in numerous states throughout the country. Ms. Haugen did not testify that she conducted the Opt-In Plaintiffs' orientation, or that she was present when the Opt-In Plaintiffs allegedly reviewed and electronically assented to the Arbitration Agreements.

Thus, Ms. Haugen lacks personal knowledge of whether the Opt-In Plaintiffs viewed or electronically assented to the arbitration agreement. *See Barkley v. Pizza Hut of Am., Inc.*, No. 14-cv-376, 2014 WL 3908197, at *3 (M.D. Fla. Aug. 11, 2014) (denying motion to compel arbitration because, *inter alia*, "Burkhardt's declaration merely states that it was Pizza Hut policy for employees to sign the [arbitration] agreement, but she has no personal knowledge that [the plaintiffs] actually signed or ever even saw such an agreement.").

Nor did Ms. Haugen testify that new employees are *required* to electronically assent to the Arbitration Agreements as a condition of employment. Rather, she simply testified that "new employees are provided an electronic copy of TTEC's or Revana's Arbitration Agreement" and "confirm their acceptance or rejection of the Arbitration Agreement by clicking 'Accept' or 'Decline.'" (Haugen Decl. (ECF No. 96-1) ¶ 5.) Perhaps it is no surprise then that the Arbitration Agreements attached to Ms. Haugen's declaration are <u>unsigned</u>. (*See id*. at **Exhibits A-B**.) Nevertheless, Ms. Haugen directs the Court's attention to the Opt-In Plaintiffs' Certificates of

4

Completion and training transcripts attached to her declaration and testifies that the Certificates of Completion and training transcripts "confirm" that the Opt-In Plaintiffs electronically assented to the Arbitration Agreements. (*See id.* ¶¶ 5-20 and **Exhibits C-D**.) A closer look at the Opt-In Plaintiffs' Certificates of Completion reveal what appears to be nothing more than Microsoft PowerPoint slides purporting to reflect the employees' names and the dates that the employees electronically assented to the Arbitration Agreements; whereas the training transcripts appear to be nothing more than internal spreadsheets with rows upon rows of various curricula, training classes, and documents that newly hired employees purportedly review and complete during orientation, with manual entries reflecting the dates that the Opt-In Plaintiffs allegedly completed various tasks. (*Id.*)

Notably absent from Ms. Haugen's testimony is any sort of explanation regarding (a) the identity of the individual(s), if any, who monitored or conducted the Opt-In Plaintiffs' orientation; (b) the identity of the individual(s), if any, who saw the Opt-In Plaintiffs electronically assent to the Arbitration Agreement; (c) the identity of the individual(s) who entered the data into the Opt-In Plaintiffs' training transcripts, how such data was entered, and the date that such data was entered; or (d) how Defendants were able to verify or confirm that the Opt-In Plaintiffs electronically assented to the Arbitration Agreements. For all anybody knows, Defendants could have prepared the Certificates of Completion and training transcripts specifically for the purposes of this Motion.

In any event, the Opt-In Plaintiffs' Certificates of Completion and training transcripts do not "confirm" their acceptance of the Arbitration Agreements, nor do they establish that the Opt-In Plaintiffs read, reviewed or assented to be bound by an agreement to arbitrate. For instance, the Certificates of Completion and training transcripts do not contain (a) a signature certificate

5

indicating that the Arbitration Agreements were electronically signed or assented to by the Opt-In Plaintiffs, (b) the Internet Protocol (IP) address of the computer that the Opt-In Plaintiffs used to electronically sign or assent to the Arbitration Agreements, (c) the electronic signature or initials of the Opt-In Plaintiffs indicating that they electronically signed or assented to the Arbitration Agreements, (d) a time stamp indicating the date and time that the Opt-In Plaintiffs read and electronically assented to the Arbitration Agreements, or (e) any other competent evidence establishing that the Opt-In Plaintiffs read, let alone electronically assented to, the Arbitration Agreements.

Defendants' proffered evidence is woefully insufficient to satisfy their initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable arbitration agreement, particularly in light of Defendants' comically inept recordkeeping system and befuddling inability to ascertain which of the opt-in plaintiffs they actually employ, let alone demonstrate which opt-in plaintiffs electronically signed an arbitration agreement. (*See* Defendants' Memorandum in Opposition to Plaintiffs' Motion for Conditional Certification and Court-Authorized Notice to Potential Opt-In Plaintiffs (ECF No. 72) at 2 n.1 ("TTEC is still searching for evidence that the remaining 23 opt-in plaintiffs worked for TTEC and, if so, whether they agreed to the Arbitration Agreement."); Defendants' Motion to Compel Arbitration of Opt-In Plaintiffs (ECF No. 71) at 4 (same).)

    **C.    Six of the opt-in plaintiffs compellingly represent that they were never presented with, nor signed, an arbitration agreement. Thus, there is a genuine issue of material fact as to whether these six opt-in plaintiffs electronically assented to the Arbitration Agreements.**

Opt-in plaintiffs Kimberly Dotson, Travis Dotson, Jasmine Holmes, Kurt Kramer, Latrice Peterson-Davis and Gregory Rambonga are current and former Call Agents who worked for Defendants during the relevant time period. (Plaintiffs' Response in Opposition to Defendants'

6

Motion to Compel Arbitration of Opt-In Plaintiffs (ECF No. 79) at **Exhibits A-E** and **G**, Declarations of Kimberly Dotson, Travis Dotson, Jasmine Holmes, Kurt Kramer, Latrice Peterson-Davis and Gregory Rambonga ("Declarations") ¶¶ 1.) Each of these opt-in plaintiffs compellingly, unambiguously, and unequivocally testified that:

> My attorneys have advised me that TTEC alleges that all of its new hire employees are presented with and required to electronically assent to an arbitration agreement as part of the onboarding process, and, thus, I must have signed or assented to one as well. I understand that TTEC cannot locate any records verifying that they have ever employed me. I understand that TTEC cannot locate any records verifying that I was ever presented with, signed, or assented to an arbitration agreement. I understand that the arbitration agreement that TTEC alleges that I assented to would waive my right to a civil court action and my right to a trial before a judge and jury in the event that I had claims against TTEC or TTEC brought claims against me. The fact that TTEC cannot locate any records verifying that I was presented with or assented to an arbitration agreement does not surprise me. **I am certain that I was never presented with a physical or electronic copy of an arbitration agreement before or during my employment with TTEC. I am certain that I never physically or electronically signed or assented to an arbitration agreement before or during my employment with TTEC. I am certain that nobody at TTEC ever presented to me, or asked me to sign, an arbitration agreement. I am certain that nobody at TTEC ever told me that my employment or continued employment with TTEC was conditioned upon me signing an arbitration agreement. Any suggestion or allegation that I was presented with, read, signed, or assented to an arbitration agreement before or during my employment with TTEC is false**. If TTEC comes forward with evidence that in any way indicates that I was ever presented with, read, signed, or assented to an arbitration agreement before or during my employment with TTEC, I respectfully request the opportunity to contest the legitimacy of the evidence because I am certain, as stated above, that I never assented to arbitrate my claims against TTEC.

(*Id*. ¶¶ 2-12 (emphasis added).)[2]

---

[2] Defendants inexplicably allege that Kimberly Dotson, Travis Dotson, Jasmine Holmes, Kurt Kramer, Latrice Peterson-Davis and Gregory Rambonga testified that that they "do not recall" (1) being presented with a physical or electronic copy of an arbitration agreement before or during their employment with TTEC; or (2) physically or electronically signing or assenting to an arbitration agreement before or during their employment with TTEC. (Motion at 10.) Even a cursory reading of these opt-in plaintiffs declarations reveals that they **<u>unequivocally denied</u>** physically or electronically signing or assenting to an arbitration agreement. (Declarations (ECF No. 79 at **Exhibits A-E** and **G**) ¶¶ 2-12.)

Should this Court find that Defendants satisfied their initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable agreement, the six opt-in plaintiffs' unambiguous and compelling testimony that they are certain they never signed or assented to an arbitration agreement before or during their employment is *more* than sufficient to raise a genuine issue of material fact regarding the existence of an enforceable agreement between Defendants and Kimberly Dotson, Travis Dotson, Jasmine Holmes, Kurt Kramer, Latrice Peterson-Davis and Gregory Rambonga. Hence, Defendants' Motion must be denied as to these six opt-in plaintiffs.

Numerous courts have held that where—like here—a party submits affidavit testimony unequivocally denying that he or she executed the arbitration agreement at issue, such testimony is sufficient to create a genuine issue of material fact as to whether the parties entered into an enforceable agreement to arbitrate.

In *Rosales v. Coca-Cola S.W. Beverages LLC*, No. 18-cv-361, 2019 WL 1493359 (W.D. Tex. Apr. 3, 2019), the defendant produced an admissible record depicting that the plaintiff electronically agreed to the Dispute Resolution Agreement. *Id*. at *6. However, the fact that the defendant produced evidence of an agreement did not eliminate the factual disagreement between the parties. *Id*. The defendant averred that the plaintiff electronically acknowledged an arbitration agreement and had a business record to support its version of the facts. *Id*. The plaintiff, on the other hand, **_testified under oath that he never saw, acknowledged, or signed any arbitration agreement_**. *Id*. Thus, a fact issue existed, and the evidence proffered by each party went to the weight and credibility of that party's version of the facts. *Id*. Accordingly, the issue of whether the parties agreed to arbitrate the dispute was submitted to a jury. *Id*. at *9. *See also Cannon v. SFM, LLC*, No. 18-cv-2364, 2019 WL 568581, at *3 (D. Kan. Feb. 12, 2019) ("Indeed, when a party contends that it has not signed an agreement to arbitrate or that the signature is a forgery, the court

must resolve that issue before sending the dispute to arbitration.") (citing cases); *Chester v. DirecTV, L.L.C.*, 607 Fed. Appx. 362, 364 (5th Cir. 2015) (finding making of arbitration agreement to be in issue where party "unequivocally denied signing an arbitration agreement [and] provided some evidence that he did not sign an arbitration agreement—his affidavit"); *Carral v. Avant, Inc.*, No. 16-cv-00393, 2017 WL 11380118, at *1 (S.D. Miss. Mar. 20, 2017) ("Carral's affidavit testimony unequivocally denies that he signed the arbitration agreements and, therefore, places the making of the agreements in issue."); *Rosales*, 2019 WL 1493359, at *6 n. 6 ("Because an affidavit unequivocally denying having signed an agreement is sufficient to create a fact issue, the Court believes that Plaintiff's affidavit suffices to show that the making of an agreement to arbitrate is in issue.").

Notably, Defendants *concede* that an unequivocal denial triggers a plaintiff's right to a jury trial on the issue of arbitrability. (*See* Defendants' Objections to Magistrate's Report and Recommendation (ECF No. 57) at 14 ("Plaintiffs are not entitled to [a] jury trial on the existence of an arbitration agreement. Plaintiffs' professed 'lack of recall' regarding the arbitration agreement falls far short of the required unequivocal denial of an arbitration requirement.").) *See also Intl. Asset Mgt., Inc. v. Holt*, 487 F. Supp. 2d 1274, 1287 (N.D. Okla. 2007) ("In order to meet the burden of establishing a right to a jury trial under Section 4 of the FAA, a party must unequivocally deny that an agreement to arbitrate has been made and must produce evidence to substantiate the denial.").

Case law further supports that an employer may refute an employee's denial by presenting an affidavit by the individual who ***personally administered*** the new hire training to the plaintiff, and also presenting evidence establishing the security measures employed to ensure the authenticity of the employee's electronic signature (including entering the employee's social

9

security number), as well as general safeguards taken to secure all employee records.[3] *Kietzman v. Macy's Retail Holdings, Inc.*, No. 09-cv-4100, 2010 WL 11628463, at *4-5 (D. Kan. Feb. 2, 2010). Such is not the case in the instant action, where Defendants merely offered the affidavit of their Director of Human Capital, who did not personally administer the new hire training to the Opt-In Plaintiffs. Nor did Defendants present evidence establishing the security measures employed to ensure the authenticity of the Opt-In Plaintiffs' electronic signatures. Indeed, Defendants cannot even *produce* the Opt-In Plaintiffs' electronic signatures, let alone authenticate them, and instead rely on <u>unsigned</u> and <u>undated</u> Arbitration Agreements. (Haugen Decl. (ECF No. 96-1) at **Exhibits A-B**.) Hence, Defendants have failed to satisfactorily refute the six opt-in plaintiffs' unequivocal denials that they assented to the Arbitration Agreements.

### III. <u>CONCLUSION</u>

For the reasons stated herein, this Court should find that Defendants failed to satisfy their initial burden of presenting evidence sufficient to demonstrate the existence of an enforceable arbitration agreement between Defendants and the 14 opt-in plaintiffs who are subject to this Motion, and, therefore, Defendants' request to compel these 14 opt-in plaintiffs to arbitration must

---

[3] Under Kansas law, which applied in *Kietzman*, an electronic signature may be authenticated by "showing [ ] the efficacy of any security procedure applied to determine the person to which the... electronic signature was attributable." 2010 WL11628463, at *4. Colorado law similarly provides that an electronic signature may be authenticated by "showing [ ] the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." Colo. Rev. Stat. § 24-71.3-109(1). *See also* Colo. Rev. Stat. § 24-71.3-102, Official Comment 11 (stating "[a] security procedure may be applied to verify an electronic signature, verify the identity of the sender, or assure the informational integrity of an electronic record."). Although proof of security measures or procedures is not the only way to authenticate an electronic signature, it is an effective and, indeed, recommended means for doing so, particularly in the employment context. *See*, *e.g.*, Maureen Minehan, *Are your e-signatures enforceable?*, 311 Employment Law Counselor NL 1 (July 2016) (recommending security precautions be taken "regarding transmission and use of an applicant's unique user name and password").

be denied. Alternatively, should this Court find that Defendants satisfied their initial burden, this Court should find that the six opt-in plaintiffs' affidavit testimony unequivocally denying that they signed an arbitration agreement is sufficient to raise a genuine issue of material fact regarding the existence of an enforceable arbitration agreement, and should order that this matter proceed to a jury trial[4] on the existence of an agreement between Defendants and Kimberly Dotson, Travis Dotson, Jasmine Holmes, Kurt Kramer, Latrice Peterson-Davis and Gregory Rambonga.

Dated: September 12, 2019

Respectfully submitted,

/s/ *Rod M. Johnston*
Matthew L. Turner
Kevin J. Stoops
Rod M. Johnston
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, MI 48076
(248) 355-0300
Fax: (248) 936-1973
mturner@sommerspc.com
kstoops@sommerspc.com
rjohnston@sommerspc.com

Attorneys for Plaintiffs and the Putative Collective/Class Members

## CERTIFICATE OF SERVICE

I certify that on September 12, 2019, I electronically filed the forgoing paper with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record.

/s/ *Rod M. Johnston*

---

[4] Section 4 of the FAA provides in part that "[i]f the making of the arbitration agreement ... be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. Section 4 permits the Court to decide the issue if plaintiff does not demand a jury trial. *Id*. ("If no jury trial be demanded by the party alleged to be in default, ... the court shall hear and determine such issue.").