# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:18-cv-03098-NRN

SONDRA BEATTIE and FRANCIS HOUSTON, JR., individually and on behalf of all other similarly situated individuals,

    Plaintiffs,

v.

TTEC HEALTHCARE SOLUTIONS, INC. and TTEC HOLDINGS, INC.,

    Defendants.

## DEFENDANTS' THIRD MOTION TO COMPEL ARBITRATION
## OF OPT-IN PLAINTIFFS

Defendants TTEC Healthcare Solutions, Inc. and TTEC Holdings, Inc. (collectively, "TTEC" or "Defendants"), for their Reply in support of their Third Motion to Compel Arbitration of 14 Opt-In Plaintiffs ("Motion"), state as follows:

## INTRODUCTION

It is baffling that the Opt-In Plaintiffs[1] still oppose the enforceability of the arbitration agreements despite the fact that this Court has compelled 55 opt-in Plaintiffs and named Plaintiffs Sondra Beattie and Francis Houston, Jr. to arbitration. (ECF Nos. 66, 82.) Plaintiffs' response effectively accuses Defendants of fraud and forgery, contesting the validity of the *very same documents* this Court has previously found enforceable and valid.

---

[1] "Opt-In Plaintiffs" refers to the 14 individuals named in Defendants' Motion.

What is equally absurd is that the Opt-In Plaintiffs' opposition is virtually identical to that submitted by named Plaintiffs Sondra Beattie and Francis Houston, Jr. in response to TTEC's first motion to compel individual arbitration. (*Compare* ECF No. 30 *with* ECF No. 101.) Again, this Court disagreed with Plaintiffs Beattie's and Houston's arguments – the same ones Opt-In Plaintiffs raise here – and compelled them to arbitration. (ECF No. 66.) Now, several months later, Opt-In Plaintiffs have filed the same opposition, hoping the Court will somehow ignore its previous ruling.

Opt-In Plaintiffs are wasting this Court's time and forcing TTEC to unnecessarily expend effort and resources in filing these motions to compel when the very arguments they now raise have already been overruled. Because the Court has already decided this issue, TTEC's Motion should be granted.

**ARGUMENT**

**I. THIS COURT HAS ALREADY RULED THAT THE ARBITRATION AGREEMENT IS ENFORCEABLE AND MUST DO SO AGAIN HERE.**

As Plaintiffs Beattie and Houston unsuccessfully tried to do earlier in this litigation, the Opt-In Plaintiffs resort to attacking Anna Haugen's declaration in an attempt to avoid their contractual obligations. The Opt-In Plaintiffs raise three arguments regarding Ms. Haugen's declaration and corresponding exhibits. First, Opt-In Plaintiffs contend that Ms. Haugen lacks personal knowledge of whether the Opt-In Plaintiffs viewed or electronically assented to the arbitration. (Resp., p. 4.) This, they argue, somehow lessens the effect of Ms. Haugen's testimony. Notably, Opt-In Plaintiffs only cite to one case: *Barkley v. Pizza Hut of Am., Inc.* Not only is *Barkley* a non-binding opinion from the Middle District of Florida, but it is also wholly distinguishable from the situation here. In *Barkley*, Pizza Hut had *no* evidence that the plaintiffs

agreed to arbitrate and relied *only* on declarations. Case No. 14-376, 2014 U.S. Dist. LEXIS 110640, *10-11 (M.D. Fla. Aug. 8, 2014). The declarations themselves were scant and even admitted that Pizza Hut "has been unable to locate the personnel files" for the plaintiffs it sought to compel to arbitration. (*See* Case No. 14-376, ECF No. 29-1, ¶ 14.) Pizza Hut never produced *any* evidence – besides the declarations – in support of its argument that the plaintiffs were subject to arbitration. *Barkley*, 2014 U.S. Dist. LEXIS 110640, at *10-12. TTEC, by contrast, has produced much more evidence, in addition to a valid declaration that explains the effect of the submitted evidence. Indeed, this Court *previously accepted* TTEC's evidence and had no issue with it. (ECF Nos. 66, 82.) The Court must do so again now.

Second, the Opt-In Plaintiffs take issue with the fact that the Arbitration Agreements attached to Ms. Haugen's declaration are unsigned. As an initial matter, Ms. Haugen's declaration makes clear that the attached agreement are *examples*. (ECF No. 96-1 at ¶¶ 3-4.) In any event, basic principles of contract law make clear that an actual signature is not required to manifest consent or enter into a binding contract. *See, e.g., Christie v. Loomis Armored US, Inc.*, No. 10-2011, 2011 U.S. Dist. LEXIS 142003, at *9 (D. Colo. Mar. 21, 2011), *quoting Med. Dev. Corp. v. Indus. Molding Corp.*, 479 F.2d 345, 348 (10th Cir. 1973) ("[I]t is well-established that a party may be bound to an agreement to arbitrate even absent a signature."), *rev'd on other grounds*, 2011 U.S. Dist. LEXIS 141994 (D. Colo. Dec. 9, 2011*); E-21 Eng'g, Inc. v. Steve Stock & Assocs.*, 252 P.3d 36, 39 (Colo. App. 2010) ("Court decisions under the Federal Arbitration Act, 9 U.S.C. § 2, have held that no signature is required to satisfy the Act's requirements for a binding arbitration agreement."). The Opt-In Plaintiffs' response does nothing to change the fact that they agreed to arbitrate any employment-related disputes against TTEC. The Opt-In Plaintiffs do not argue that

their claims are not subject to arbitration under the FAA or that the Arbitration Agreement is procedurally or substantively unconscionable. Where, as here, a defendant provides sufficient evidence that the plaintiffs agreed to be bound by arbitration, this emphasis on a signed agreement is misplaced. The Opt-In Plaintiffs received and agreed to be bound by the Arbitration Agreement, manifested by their acceptance of the Agreement and their continued employment. The Opt-In Plaintiffs are merely attempting to avoid the application of their binding agreement now that they have already obtained the benefit of the bargain.

Despite Plaintiffs' claims to the contrary, TTEC has repeatedly presented sufficient and credible evidence of an enforceable agreement. To support its Motion, TTEC may rely on its records that show the Plaintiffs received, opened, and accepted the Arbitration Agreement during employee orientation. Indeed, courts routinely grant motions to compel arbitration where there is evidence of assent retrieved from the defendant's own records rather than by a signed agreement. *See, e.g., Petrie v. GoSmith, Inc.*, No. 18-01528, 2019 U.S. Dist. LEXIS 15237, at *4-6 (D. Colo. Jan. 31, 2019) (granting motion to compel where "[d]efendant's position is supported by data it routinely collects"); *Martinez v. TCF Nat'l Bank*, No. 13-3504, 2015 U.S. Dist. LEXIS 23326, at *8-10 (D. Colo. Feb. 25, 2015) (granting motion to compel arbitration where defendant-employer's records showed that the arbitration agreement was available to the plaintiff via mail and on the company intranet); *Vernon v. Qwest Communs. Int'l, Inc.*, 857 F. Supp. 2d 1135, 1148-1152 (D. Colo. 2012) (holding that defendants presented sufficient evidence by describing their routine practice of mailing welcome letters and providing records showing that the plaintiffs "affirmatively accepted the [agreement] by clicking 'accept'"); *Urbanic v. Travelers Ins. Co.,* No. 10-2368, 2011 U.S. Dist. LEXIS 50629, at *9 (D. Colo. May 6, 2011) (granting motion to compel

arbitration and stay proceedings where defendant's records indicated that "[p]laintiff completed the on-line training course and certified his receipt, review and agreement with the Code."). In line with these well-established opinions from the District of Colorado, TTEC's evidence is enough to compel the Opt-In Plaintiffs to arbitration.

Finally, the Opt-In Plaintiffs accuse TTEC of manufacturing the very evidence this Court has found sufficient. They claim "[f]or all anybody knows, Defendants could have prepared the Certificates of Completion and training transcripts specifically for the purposes of this Motion." (Resp., p. 5.) Setting aside this blatantly inflammatory statement, the Opt-In Plaintiffs' argument is nonsensical. If TTEC truly forged documents in order to compel the Opt-In Plaintiffs to arbitration, *wouldn't it do the same for every opt-in plaintiff*?

Here, the Opt-In Plaintiffs agreed to the Arbitration Agreement during the course of the onboarding process as part of TTEC's online training known as TTEC University. (ECF No. 96-1 at ¶ 4.) According to their respective training records, Opt-In Plaintiffs reviewed and accepted the Arbitration Agreements. (ECF Nos. 96-1 at ¶¶ 5-20, 96-4, 96-5.) This District's precedent supports finding an enforceable agreement.

TTEC's onboarding and recordkeeping process provides sufficient evidence of an enforceable agreement between TTEC and Plaintiffs. For example, in *Urbanic v. Travelers Ins.*, this court enforced an arbitration agreement where employees received online training and electronically assented to a company code that referenced an arbitration agreement. *Urbanic*, 2011 U.S. Dist. LEXIS 50629, at *19. Plaintiff was required to review and agree to the company code, which incorporated the company's arbitration policy by reference. *Id*. at *5-6. Plaintiff, however, never signed the arbitration agreement or otherwise made an affirmative showing of consent.

5

Nevertheless, the court determined the employer "submitted ample evidence in the form of sworn declarations, emails, relevant company documents including the Arbitration Policy itself, and records verifying Plaintiff's on-line compliance and certifications." *Id*. at *19.

Other recent decisions from this court have focused on whether the evidence shows a plaintiff received notice and their assent. In *Martinez v. TCF National Bank*, the court found that the plaintiff "had reasonable notice and access to the terms and conditions of the arbitration clause" where the notice of the arbitration agreement was posted on the company intranet and the defendant provided records that the agreement was mailed to the employee. 2015 U.S. Dist. LEXIS 23326, at *9-10; *see also Vernon v. Qwest Commc'ns Int'l, Inc.*, 857 F. Supp. 2d 1135, 1152 (D. Colo. 2012), *citing Pennington v. Northrop Grumman Space & Mission Sys. Corp.*, 269 F. Appx. 812, 815 (10th Cir. 2008) ("[T]he Tenth Circuit . . . has approved a finding that an employee was placed on notice of and accepted a company's arbitration agreement where notice of the agreement was provided via a single email and the employer introduced evidence that the employee habitually opened emails from management.")

In addition, in the employment context, assent to an agreement can be shown by merely continuing the employment relationship. *Martinez*, 2015 U.S. Dist. LEXIS 22326, at *8-9. Here, Plaintiffs were required to open the Arbitration Agreement and given an opportunity to read the Arbitration Agreement during employee orientation. They also accepted the terms of the arbitration program electronically and by continuing their employment with TTEC. This conduct alone is sufficient to establish the existence of a binding agreement. Simply put, a "signature" is not required.

## II. THE SIX OPT-IN PLAINTIFFS' GENERAL DENIALS OF SIGNING THE ARBITRATION AGREEMENT DO NOT CREATE A MATERIAL ISSUE OF FACT

Six of the fourteen Opt-In Plaintiffs conveniently deny executing the Arbitration Agreement. (Resp. pp. 6-7; *see also* ECF Nos. 79-1–79-5, 79-7.) But this does not preclude the Court from compelling them to arbitration. Perhaps recognizing the weakness of their argument, Opt-In Plaintiffs cite to non-binding opinions from outside this District. (Resp., pp. 8-9.) The District of Colorado has already rejected this argument, holding that even a plaintiff's denial of having accepted arbitration is not enough to preclude compelling arbitration. *See Petrie v. GoSmith, Inc.*, 360 F. Supp. 3d 1159, 1162 (D. Colo. Jan. 31, 2019). In *Petrie*, defendant moved to compel plaintiff to arbitration, claiming plaintiff consented to arbitrate his claims against defendant when he consented to defendant's Terms of Use. *Id.* at 1162. Plaintiff claimed he never signed or agreed to arbitration his claims and (like the 6 Opt-In Plaintiffs here) submitted a declaration in which he stated: "I *absolutely did not* accept [defendant's] terms and conditions." (*See* Case No. 18-1528, ECF No. 38, ¶ 38) (emphasis added). This Court found this "unequivocal denial" *insufficient* to create a genuine issue of material fact. *Petrie*, 360 F. Supp. 3d at 1162. The same outcome is warranted here.

Opt-In Plaintiffs regurgitate the very same arguments this Court previously found unconvincing. They repeatedly argue that they are "certain" they never signed an arbitration agreement, relying on conveniently phrased declarations. But what Opt-In Plaintiffs forget is that Plaintiffs Beattie and Houston *also* submitted declarations claiming they did not sign or assent to such a document. (*See* ECF Nos. 64-1 and 64-2 at ¶¶ 5-6 ("I *do not recall* signing or assenting to

the document…I *am certain* that no one at TTEC ever told me that I had waived my right to a civil court action.") (emphasis added). ***This Court overruled these contentions***.

The six Opt-In Plaintiffs' belief that they never signed the Arbitration Agreement does not create an issue of fact. The Court should reject this argument and grant TTEC's Motion.

## **CONCLUSION**

Defendants respectfully request that the Court compel arbitration of these fourteen Opt-In Plaintiffs' claims, and dismiss their Complaints, and grant such other and further relief in their favor that this Court deems appropriate under the circumstances.

Dated: September 25, 2019.

BAKER & McKENZIE LLP

/s/ Arthur J. Rooney
Arthur J. Rooney
Baker & McKenzie LLP
300 E Randolph Street
Suite 5000
Chicago, IL 60601
Tel.: (312) 861-8000
Fax: (312) 698-2960
arthur.rooney@bakermckenzie.com

Attorney for Defendants TTEC Healthcare Solutions, Inc. and TTEC Holdings, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of September, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following counsel of record:

>Rod M. Johnson
>Kevin Jay Stoops
>Matthew L. Turner
>**Sommers Schwartz, PC**
>One Town Center, Suite 1700
>Southfield, MI 48076
>rjohnston@sommerspc.com
>kstoops@sommerspc.com
>mturner@sommerspc.com
>
>*Attorneys for Plaintiffs*

>*/s/ Arthur J. Rooney*