**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:18-cv-03098-NRN

SONDRA BEATTIE and FRANCIS HOUSTON, JR., individually and on behalf of all other similarly situated individuals,

    Plaintiffs,

v.

TTEC HEALTHCARE SOLUTIONS, INC. and TTEC HOLDINGS, INC.,

    Defendants.

**DEFENDANTS' FOURTH MOTION TO COMPEL ARBITRATION
OF CERTAIN OPT-IN PLAINTIFFS**

Defendants TTEC Healthcare Solutions, Inc. and TTEC Holdings, Inc. (collectively, "TTEC" or "Defendants"), by and through their undersigned counsel, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, hereby move for the entry of an order dismissing this action or, alternatively, compelling the 2,487 Opt-In Plaintiffs identified herein (collectively, "Opt-In Plaintiffs") to fulfill their contractual obligations to arbitrate the claims asserted in this lawsuit on an individual basis.

**CERTIFICATE OF COMPLIANCE WITH D.C. COLO. L.CivR. 7.1(A)**

The counsel for Defendants conferred with Plaintiffs' counsel regarding the subject of the motion. Plaintiffs oppose the relief sought herein.

### I.     INTRODUCTION

On July 3, 2019, this Court granted Plaintiffs' motion for conditional certification, allowing Plaintiffs to issue notices to the conditional class, which included thousands of current and former TTEC employees who were bound by valid and enforceable arbitration agreements. (ECF Nos. 82, 86, 98.) Thereafter, thousands of individuals who received the notice opted into this lawsuit. (ECF Nos. 87, 93-94, 99-100, 107-180, 182-186.) Of those that opted into this lawsuit, 2,487 are subject to arbitration.

This Court previously upheld the enforceability of the very same arbitration agreements at issue in the present motion. (ECF Nos. 66, 82, 181.) Arbitration has already been compelled for the two named Plaintiffs, Sondra Beattie and Francis Houston, Jr., and for an additional sixty-three Opt-In Plaintiffs. (*Id.*) TTEC now moves to compel 2,487 additional Opt-In Plaintiffs to arbitration. These Opt-In Plaintiffs are bound by those same arbitration agreements and must similarly be compelled to arbitrate their claims.

Most of the Opt-In Plaintiffs are current and former employees of TTEC. *See* **Exhibit 1**, Declaration of Gretchen Pfeifer ("Pfeifer Decl."), ¶¶ 11-12, Exhibit E[1]; *see also* ECF Nos. 1 at ¶ 87, 5, 25, 32-33, 34, 38-50, 58, 61-63, 65, 67, 73-76, 78, 81, 93, 94, 99-100, 103, 107-180, 182-186. As part of the on-boarding process, each of these Opt-In Plaintiffs voluntarily entered into a valid and enforceable arbitration agreement ("Arbitration Agreement") and agreed to individually arbitrate the claims they asserted in this action. (Pfeifer Decl., ¶¶ 5-10.)  The Arbitration

---

[1] Due to the substantial number of Opt-In Plaintiffs and the large volume of documents, Certificates of Completion and Training Transcripts for these 2,487 individuals have not been attached to this Motion (e.g., the aforementioned documents are thousands of pages long). Defendants' counsel will provide Certificates of Completion and Training Transcripts upon the Court's request.

Agreement provides that "the Parties agree to arbitrate all disputes arising out of or relating to their employment relationship." (Pfeifer Decl., Exs. A-C, ¶ 1.2.) The Arbitration Agreement further states that the parties "agree to bring any dispute in arbitration on an individual basis only," and not on a "class" and/or "collective" basis. (*Id.*, Exs. A & B, ¶ 1.3; Ex. C, ¶ 1.4.) Of Opt-In Plaintiffs who have opted-in to this action and have not yet been compelled to arbitration, 2,487 electronically executed the Arbitration Agreement. A complete list of the 2,487 Opt-In Plaintiffs TTEC now moves to compel is attached as Exhibit E to the Declaration of Gretchen Pfeifer.

Despite being bound by valid Arbitration Agreements covering the claims arising out of their relationship with TTEC, 2,487 Opt-In Plaintiffs have joined the instant lawsuit alleging violations of the Fair Labor Standards Act ("FLSA"), breach of contract, and unjust enrichment. Because these claims are covered by the parties' valid Arbitration Agreement, these Opt-In Plaintiffs should be compelled to arbitrate their claims on an individual basis. Accordingly, the Complaint should be dismissed in its entirety.[2]

## II.  THE OPT-IN PLAINTIFFS' CLAIMS ARE SUBJECT TO ARBITRATION PURSUANT TO THE FAA.

### A.  The Federal Arbitration Act Governs the Opt-In Plaintiffs' Arbitration Agreements.

The FAA "was enacted . . . in response to widespread judicial hostility to arbitration agreements." *AT&T Mobile LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2010) (internal citations omitted). The "principal purpose" of the FAA is to "ensur[e] that private arbitration agreements

---

[2] TTEC is unable to identify or locate many of the remaining Opt-In Plaintiffs. Some of the names in the Opt-In Consents are illegible and cannot be discerned. (*See, e.g.*, ECF Nos. 111-4 at p. 3, 118-10 at p. 11, 118-11 at p. 8, 152-1 at p. 2, 172-22 at p. 3, 184-12 at p. 7.) Other Opt-Ins have common names that appear in TTEC's database multiple times. Still other Opt-Ins do not appear in TTEC's database at all.

are enforced according to their terms." *Id.* at 1748 (internal quotes and citations omitted). The FAA "reflect[s] both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *Id.* at 1945. Because arbitration is a highly favored means of settling disputes, the United States Supreme Court has held that arbitration agreements "must be rigorously enforced." *Perry v. Thomas*, 482 U.S. 483, 490 (1987).

The FAA governs the enforceability of written arbitration provisions in contracts involving interstate commerce. *See* 9 U.S.C. § 1, *et seq.*; *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24-26 (1991). Such contracts include employment contracts. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 113-14 (2001). TTEC provides customer service support by phone, chat, or social media. TTEC's call center employees perform these activities at customer care contact centers throughout the United States. (ECF No. 1, ¶ 3.) Accordingly, the Opt-In Plaintiffs' agreement to arbitrate involves interstate commerce and the FAA governs the agreement. 9 U.S.C. § 2. Furthermore, the Opt-In Plaintiffs expressly agreed in their arbitration agreement that "the enforceability, application and interpretation of this Agreement shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et seq.) to the maximum extent permitted." (Pfeifer Decl., Exs. A-C, ¶ A.) Under these circumstances, the FAA mandates that these 2,487 Opt-In Plaintiffs submit their claims to arbitration.

### B.   *The Opt-In Plaintiffs' Claims Are Subject To Arbitration Under the FAA.*

In deciding whether to compel arbitration, courts generally must determine two "gateway" issues: (1) whether there is a valid agreement to arbitrate between the parties and (2) whether the agreement covers the dispute in question. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). In making this decision, courts consider the "strong federal policy favoring arbitration"

and if there is any "uncertainty as to whether a claim is arbitrable, all doubts are to be resolved in favor of arbitrability." *Workalemahu v. Heritage Club*, 2014 U.S. Dist. LEXIS 180719, at *4-5 (D. Colo. Dec. 31, 2014) (internal citations omitted), magistrate report adopted by 2015 U.S. Dist. LEXIS 6685 (D. Colo. Jan. 21, 2015). Once a court has determined a claim is arbitrable, the case must be stayed or dismissed. *See, e.g.*, *Am. Family Mut. Ins. Co. v. TAMKO Bldg. Prods.*, 178 F. Supp. 3d 1121, 1129 (D. Colo. 2016) (finding dismissal is proper where "all claims are arbitrable and the movant specifically requests dismissal rather than a stay."). Here, both gateway issues are satisfied and the Court must dismiss the case and compel arbitration.

### 1. The Opt-In Plaintiffs entered into an enforceable agreement to arbitrate.

Federal courts apply state contract law in determining the existence of an agreement to arbitrate. *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 779 (10th Cir. 1998). In Colorado, "[a]rbitration is a matter of contract and is governed by contract principles." *Winter Park Real Estate & Invs., Inc. v. Anderson*, 160 P.3d 399, 403 (Colo. App. 2007). Under Colorado law, a contract is enforceable where "one party makes an offer and the other accepts it, and the agreement is supported by consideration." *Sumerel v. Goodyear Tire & Rubber Co.*, 232 P.3d 128, 122 (Colo. Ct. App. 2009). Relevant here, employment, compensation and benefits in sufficient consideration to support an arbitration agreement. *See, e.g.*, *Rietz v. Oracle Am., Inc.*, 2017 U.S. Dist. LEXIS 164202, at *8 (D. Colo. July 20, 2017) (explaining that "[u]nder Colorado law, every contractual obligation need not be mutual as long as each party has provided some consideration for the contract"); *see also Martinez v. TCF Nat'l Bank*, 2015 U.S. Dist. LEXIS 23326, at *8-9 (D. Colo. Feb. 25, 2015) ("In the employment context, an at-will employee who is offered a new condition of employment accepts that offer through continuing the employment relationship.").

5

Here, TTEC provided the Opt-In Plaintiffs an arbitration agreement, which they accepted through their electronic acknowledgement of the agreement. (Pfeifer Decl., ¶¶ 5-6, 8, 10.) Consideration existed through the mutual obligation to arbitrate as well as the Opt-In Plaintiffs' employment. Moreover, the Arbitration Agreement sufficiently specified all essential terms. Consequently, there can be no doubt that the parties entered into an enforceable arbitration agreement.

### 2. The Opt-In Plaintiffs' Claims Are Subject To Arbitration Under The FAA.

The scope of an arbitration agreement is controlled by the parties' intentions, "but those intentions are generously construed as to issues of arbitrability." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1985).

Here, the "Agreement covers *any and all* disputes between [TeleTech/Revana] and Employee. Such disputes include by way of example only and are not limited to, disputes arising out of or relating to Employee's employment with [TeleTech/Revana]…wages…overtime…" (Pfeifer Decl., Exs. A-C ¶ 4.1 (emphasis added).) All of the 2,487 Opt-In Plaintiffs' claims relate to alleged wage and hour violations that occurred during the Opt-In Plaintiffs' employment with TTEC and therefore arise out of or relate to their employment relationship with TTEC. Thus, all of these Opt-In Plaintiffs' claims are encompassed by the Arbitration Agreement and these Opt-In Plaintiffs are precluded from asserting them before this Court.

### C. *The Arbitration Agreement Is Not Unconscionable.*

If an arbitration agreement satisfies the minimum requirements for validity, it must be enforced unless the party opposing enforcement can prove that the agreement is both procedurally

and substantively unconscionable. *See, e.g.*, *Turner v. Chipotle Mexican Grill, Inc.*, 2018 U.S. Dist. LEXIS 15289, at *5-6 (D. Colo. Aug. 3, 2018).

Under Colorado law, courts consider the following seven factors known as the *Davis* factors:

> (1) a standardized agreement executed by parties of unequal bargaining power; (2) lack of opportunity to read or become familiar with the document before signing it; (3) use of fine print in the portion of the contract containing the provision; (4) absence of evidence that the provision was commercially reasonable; (5) the terms of the contract; (6) the relationship of the parties, including factors of assent, unfair surprise, and notice; and (7) all the circumstances surrounding the formation of the contract.

*Davis v. M.L.G. Group*, 712 P.2d 985, 991 (Colo. 1986). The Opt-In Plaintiffs cannot establish procedural or substantive unconscionability.

### 1.     The Arbitration Agreement is not procedurally unconscionable.

The Opt-In Plaintiffs cannot contend that their arbitration agreement is procedurally unconscionable. The first, second, third, sixth, and seventh *Davis* factors relate to procedural unconscionability. *Turner*, 2018 U.S. Dist. LEXIS 152589, at *7. In *Turner*, employees were provided a standardized form arbitration agreement on a "take-it-or-leave-it" basis during the on-boarding process for new hires. *Id.* at *8. The arbitration agreement was available to the employees electronically and was clearly labeled as an arbitration agreement. *Id.* at *9. The court determined that there was no procedural unconscionability because of the availability and readability of the agreement, and the lack of evidence that the plaintiffs' assent to the arbitration agreement was coerced through undue influence, duress, or pressure to sign without reviewing or considering the terms. *Id.* at *9-10.

In this case, TTEC provided the Opt-In Plaintiffs an electronic version of the Arbitration Agreement as part of the on-boarding process called TTEC University or Taleo. (Pfeifer Decl., ¶¶

7

5-6, 8, 10.) All the terms of the Arbitration Agreement are prominently displayed and the class-action waiver is on the first and second pages. (*Id.*, Exs. A & B, ¶ 1.3, Ex. C, ¶ 1.4.) The section heading "Class, Collective [and Representative Actions]" is bolded. (*Id.*) During TTEC University and Taleo, the Opt-In Plaintiffs had the opportunity to review the Arbitration Agreement, and accept or decline to sign it. (Pfeifer Decl., ¶¶ 5-6, 8, 10.) Moreover, through Taleo, employees are told that their eSignature means they have reviewed and agree to the Arbitration Agreement. (*Id.* at ¶ 8.) Hence, any argument that the Opt-In Plaintiffs may make regarding procedural unconscionability would fail.

**2.     The Arbitration Agreement is not substantively unconscionable.**

Likewise, the Opt-In Plaintiffs cannot show that the Arbitration Agreement is substantively unconscionable. The second and fourth *Davis* factors – whether the Agreement is commercially reasonable and its terms are substantively fair – relate to substantive unconscionability. *Turner*, 2018 U.S. Dist. LEXIS 152589, at *10. In *Turner*, the court rejected the plaintiffs' argument that requiring employees, even if they were low-paid or low-level workers, to execute an arbitration agreement was not commercially reasonable. *Id.* at *11-12. The *Turner* court also concluded that the FLSA "does not guarantee or require any particular procedural path for vindicating" rights under the FLSA and, accordingly, rejected any argument that requiring arbitration of FLSA claims was substantively unfair. Moreover, the U.S. Supreme Court has made clear that a class-action waiver is not unconscionable, even when execution of such a waiver is made a condition of employment. *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621-22 (2018). As such, the Opt-In Plaintiffs cannot argue that their Arbitration Agreement is substantively unconscionable merely because it precludes the possibility of dispute resolution on a class-wide basis.

### D.  *The Opt-In Plaintiffs' Class Claims Are Precluded By Their Agreement to Arbitrate.*

The U.S. Supreme Court recently upheld the validity of class-action waivers in arbitration agreements, explaining, "Congress has instructed federal courts to enforce arbitration agreements according to their terms – including terms providing for individualized proceedings." *Id.* at *8. Even prior to *Epic Systems*, courts in this District have enforced arbitration agreements containing class-action waivers. *See, e.g.*, *Pollard v. ETS Pc, Inc.*, 186 F. Supp. 3d 1166, 1188 (D. Colo. 2016) (granting defendant's motion to compel individual arbitration where arbitration agreements precluded the pursuit of claims on a class action or collective action basis).

Here, the Arbitration Agreement contains a clear waiver of class and collective action claims, which requires Plaintiffs "to bring any dispute in arbitration on an individual basis only." (Pfeifer Decl., Exs. A & B, ¶ 1.3, Ex. C, ¶ 1.4.) Because the Arbitration Agreement covers each of the fourteen Opt-In Plaintiffs' claims and no statute prohibits enforcement of the arbitration agreement, these Opt-In Plaintiffs are precluded from asserting these claims on a class-wide basis. As such, the Opt-In Plaintiffs must be compelled to arbitrate these claims on an individual basis.

### III.   CONCLUSION

Defendants respectfully request that the Court compel arbitration of these 2,487 Opt-In Plaintiffs' claims, dismiss their Complaints, and grant such other and further relief in their favor that this Court deems appropriate under the circumstances.

Dated:   March 16, 2020.                                    BAKER & McKENZIE LLP

/s/ Arthur J. Rooney
Arthur J. Rooney

Arthur J. Rooney
Goli Rahimi
Baker & McKenzie LLP
300 E Randolph Street
Suite 5000
Chicago, IL 60601
Tel.: (312) 861-8000
Fax: (312) 698-2960
arthur.rooney@bakermckenzie.com
goli.rahimi@bakermckenzie.com

Attorney for Defendants TTEC Healthcare
Solutions, Inc. and TTEC Holdings, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 16th day of March 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following counsel of record:

>Rod M. Johnson
>Kevin Jay Stoops
>Matthew L. Turner
>**Sommers Schwartz, PC**
>One Town Center, Suite 1700
>Southfield, MI 48076
>rjohnston@sommerspc.com
>kstoops@sommerspc.com
>mturner@sommerspc.com
>
>*Attorneys for Plaintiffs*

>*/s/ Arthur J. Rooney*