# EXHIBIT A

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release (the "Agreement") is entered into by and among TTEC Healthcare Solutions, Inc. and TTEC Holdings, Inc. ("TTEC") and Plaintiffs Carol E. Davis, Yvette Monica Davis, Ann Marie Cole, Javonte Duncan, Leon Patrick Cherry, Cedric Randle, Shanickqua B. Hudson, Mykiesha McFarland, and Melissa Zweyer ("Named Plaintiffs") and the FLSA Collective Members.[1]  Named Plaintiffs, FLSA Collective Members, FLSA Collective Counsel, and TTEC hereby stipulate and agree that, in consideration of the promises and covenants as set forth in this Agreement and upon entry by the Court of a Final Order and Judgment, all claims of the Named Plaintiffs and the FLSA Collective Members in the Action shall be settled, compromised, and released upon the terms and conditions contained herein.

## RECITALS

WHEREAS, Named Plaintiffs filed a class and collective action lawsuit under the Fair Labor Standards Act ("FLSA") and the state wage and common laws of Arkansas, Arizona, Colorado, Kentucky, Missouri, Nevada, North Carolina, and West Virginia in the United States District Court for the District of Colorado alleging that TTEC failed to properly compensate them and the FLSA Collective for all hours worked;

WHEREAS, Named Plaintiffs sought recovery of, among other things, overtime wages, minimum wage compensation, gap time compensation, liquidated damages, penalties, attorneys' fees, interest, and costs;

WHEREAS, TTEC denied and continues to deny all of the allegations made by Named Plaintiffs and FLSA Collective Members in the Action, and has denied and continues to deny that it is liable or owes damages to anyone with respect to the alleged facts or causes of action asserted in the Action, or that any claims asserted by Named Plaintiffs or FLSA Collective Members may proceed on a collective or class basis. Nonetheless, without admitting or conceding any arguments, issues, liability, or damages whatsoever, including that TTEC Holdings, Inc. is an employer or joint employer of Named Plaintiffs, FLSA Collective Members, or anyone on whose behalf Named Plaintiffs has attempted to bring claims, or that any claims alleged in the Action may proceed on a collective or class basis, TTEC has agreed to settle the Action on the terms and conditions set forth in this Agreement to avoid the burden and expense of continuing to defend against litigation;

WHEREAS, FLSA Collective Counsel has conducted extensive formal discovery including, but not limited to, taking and defending dozens of depositions (including the depositions of Named Plaintiffs), propounding and responding to written discovery, and reviewing and analyzing tens of thousands of documents produced by the Parties, and engaging in numerous discussions with TTEC's counsel regarding the claims;

---

[1] The capitalized terms herein are defined either in Section 1 (Definitions) or elsewhere in the body of this Agreement.

WHEREAS, FLSA Collective Counsel has analyzed and evaluated the merits of the claims made against TTEC in the Action, and the impact of this Settlement on Named Plaintiffs and the FLSA Collective;

WHEREAS, this Agreement resulted from and is the product of extensive, good faith, and arm's length negotiations. The Parties participated in private mediation on December 16, 2020 and on March 10, 2022, and engaged in extensive follow-up discussions with the help of a nationally recognized mediator and exchanged rounds of drafts of a settlement term sheet to memorialize the terms of the Settlement;

WHEREAS, based upon their analysis and their evaluation of a number of factors, and recognizing the substantial risks of litigation with respect to certain claims, including that the Action, if not settled now, might result in a recovery that is less favorable to Named Plaintiffs and the FLSA Collective, and that may not occur for years, or at all, FLSA Collective Counsel is satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Named Plaintiffs and FLSA Collective;

WHEREAS, as a result of these efforts, the Parties entered into this Agreement, subject to approval by the Court, to fully, finally, and forever resolve, discharge, and release all rights and claims described in Section 3.6 in exchange for TTEC's agreement to pay a maximum total amount of Five Million One Hundred Twenty-Five Thousand Dollars and Zero Cents ($5,125,000.00) inclusive of all attorneys' fees, litigation costs, settlement administration fees and expenses, interest, and service awards to Named Plaintiffs and certain FLSA Collective Members;

WHEREAS, the Parties understand, acknowledge, and agree that the execution of this Agreement constitutes the settlement and compromise of disputed claims. It is the Parties' desire and intention to affect a full, complete, and final settlement and resolution of all existing disputes and claims as set forth herein;

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Action on the following terms and conditions:

1.    **DEFINITIONS**

The defined terms set forth herein shall have the meanings ascribed to them below.

1.1    **Action.**  "Action" shall refer to the lawsuit filed by Named Plaintiffs bearing the caption *Davis et. al v. TTEC Healthcare Solutions et. al.*, Case No. 1:18-cv-03098-RM (D. Colo.).

1.2    **Agreement.**  "Agreement" shall mean this Settlement Agreement and Release, and all exhibits.

1.3     **Arbitration Claimants.**  "Arbitration Claimants" shall mean the roughly 811 individuals, as identified by FLSA Collective Counsel, who are pursuing claims against TTEC in individual arbitration proceedings.

1.4     **Settlement Administrator.**  "Settlement Administrator" shall mean Rust Consulting.

1.5     **Complaint.**  "Complaint" shall mean the operative Complaint filed in the Action.

1.6     **Court.**  "Court" shall mean the U.S. District Court for the District of Colorado.

1.7     **Covered Period.**  "Covered Period" shall mean December 3, 2015 through the earlier of (a) the date of the Order Granting Approval of this Agreement or (b) June 21, 2022.

1.8     **Effective Date; Effective.**  The "Effective Date," or the date upon which this Agreement is Effective, is thirty-one (31) calendar days after the Order Granting Approval of this Agreement, if no appeal is filed.  If an appeal is taken, the Effective Date shall be thirty (30) calendar days after the date the appeal is dismissed or denied and the Judgement is no longer subject to appeal or other appellate review.

1.9     **Escrow Account.**  "Escrow Account" shall mean the FDIC insured interest-bearing account(s) created and controlled by the Settlement Administrator.

1.10    **FLSA Collective; FLSA Collective Member.**  "FLSA Collective" shall refer to Named Plaintiffs and the individuals who (1) both timely opted-in to the Action, and who remain opt-in plaintiffs as of April 22, 2022; and (2) Arbitration Claimants represented who agree to dismiss their arbitration demand against TTEC and opt in to the Action.  A member of the FLSA Collective is a "FLSA Collective Member." There are approximately 1,422 individuals who have opted-in to the Action and who remain opt-in plaintiffs or Named Plaintiffs.

1.11    **FLSA Collective Counsel.**  "FLSA Collective Counsel" shall mean Sommers Schwartz, P.C.

1.12    **Individual Settlement Amount.**  "Individual Settlement Amount" shall mean the final gross amount (not including any Service Award amount) sent to any Named Plaintiffs or FLSA Collective Member under this Agreement.  The methodology for determining the Individual Settlement Amount is described in Section 3.4.

1.13    **Named Plaintiffs.**  "Named Plaintiffs" shall mean Carol E. Davis, Yvette Monica Davis, Ann Marie Cole, Javonte Duncan, Leon Patrick Cherry, Cedric Randle, Shanickqua B. Hudson, Mykiesha McFarland, and Melissa Zweyer, and shall also include any and all of their representatives, business entities, heirs, administrators,

executors, beneficiaries, agents, and assigns of such individuals, as applicable and without limitation.

1.14    **Net Settlement Fund.**  "Net Settlement Fund" shall mean the remainder of the Settlement Fund after deductions for: separate payments to certain arbitration claimants as set forth in Section 3.4(a); court-approved attorneys' fees and costs as described in Section 3.2; court-approved Service Awards as described in Section 3.3; Settlement Administration Expenses as described in Section 2.2; any fees associated with investing and liquidating the Settlement Payment as described in Section 3.1; and any taxes incurred directly or indirectly as a result of investing the Settlement Payment.  The Net Settlement Fund shall be used to pay all amounts due to Named Plaintiffs and FLSA Collective Members pursuant to Section 3.4.

1.15    **Order Granting Approval and Dismissing the Action with Prejudice.**  "Order Granting Approval and Dismissing the Action with Prejudice" or "Order Granting Approval" shall mean the Order entered by the Court approving, *inter alia*, the terms and conditions of this Agreement and dismissing the Action with prejudice (except that the Named Plaintiffs pending putative state law class claims will be dismissed without prejudice), while still retaining continuing jurisdiction over administration of the Settlement.  A proposed version of the Order Granting Approval shall be submitted to the Court in the form attached hereto as Exhibit 1.

1.16    **Parties.**  "Parties" shall refer to Named Plaintiffs, FLSA Collective Members, and TTEC.

1.17    **Service Award.**  "Service Award" means the amounts approved by the Court to be paid, pursuant to Section 3.3, to Named Plaintiffs and the FLSA Collective Members who sat for depositions.

1.18    **Settlement.**  The "Settlement" shall mean the settlement embodied by this Agreement, and all exhibits.

1.19    **Settlement Administration Expenses.**  "Settlement Administration Expenses" are those expenses incurred and charged by the Settlement Administrator in effectuating the Settlement.

1.20    **Settlement Checks.**  "Settlement Checks" means the checks issued to Named Plaintiffs and FLSA Collective Members for their proportionate share of the Net Settlement Fund calculated in accordance with this Agreement, and any Service Awards approved by the Court.

1.21    **Settlement Fund.**  The "Settlement Fund" shall mean the settlement fund created by the payment by TTEC of up to the Maximum Settlement Amount of Five Million One Hundred Twenty-Five Thousand Dollars ($5,125,000.00).

1.22    **TTEC.**  "TTEC" shall refer collectively to the defendants in the Action: TTEC Healthcare Solutions, Inc. and TTEC Holdings, Inc.

1.23    **TTEC's Counsel.**  "TTEC's Counsel" shall mean Perkins Coie LLP.

1.24    **TTEC Releasees.**  "TTEC Releasees" shall mean TTEC and their present, former and future affiliates, divisions, members, joint venture partners, subsidiaries, parents, predecessors, any merged entity or merged entities and/or its or their present and former officers, partners, directors, employees, agents, attorneys, shareholders and/or successors, insurers or reinsurers, employee benefit plans (and the trustees, administrators, fiduciaries, agents, representatives, insurers and reinsurers of such plans), assigns trustees, heirs, administrators, executors, representatives and/or principals thereof, and all persons or entities acting by, through, under, or in concert with any of them, and any individual or entity that could be jointly liable with them.

1.25    **Unclaimed Funds.**  "Unclaimed Funds" shall mean the aggregate amount of Individual Settlement Amounts not claimed by FLSA Collective Members as set forth in Section 3.4(g).

## 2.    APPROVAL AND COLLECTIVE NOTICE

2.1    **Stipulation to Final Certification.**  The Parties stipulate, for settlement purposes only, to final certification by the Court of a collective action as to all claims encompassed by the Settlement pursuant to the FLSA.  If for any reason the Court does not enter an Order Granting Approval, or if this Settlement is lawfully terminated for any other reason, TTEC reserves its right to seek decertification of the collective.  Under such circumstances, FLSA Collective Counsel shall not cite to or use this Agreement or the Order Granting Approval in any other judicial, administrative, or arbitral proceeding for any purpose or with respect to any issue, substantive, or procedural.

2.2    **Retention of Settlement Administrator.**  The Settlement Administrator shall be responsible for the settlement administration process and distributions to the FLSA Collective Members as provided herein, as well as for making any mailings and performing other services as required under this Agreement.  The Parties agree to cooperate with the Settlement Administrator and assist it in administering the Settlement.  Subject to court approval, approximately Twenty Thousand Dollars ($20,000.00) in Settlement Administration Expenses shall come out of the Settlement Fund. All funds paid to the Settlement Administrator shall come from the Settlement Fund.

2.3    **Final Order and Approval by the Court.**  As soon as practicable and in accordance with any deadlines imposed by the Court, Named Plaintiffs, on behalf of themselves and all FLSA Collective Members, will file a motion seeking the

Court's approval of (i) the terms of this Agreement and request dismissal of the Action with prejudice (except that the Named Plaintiffs pending putative state law class claims will be dismissed without prejudice), on the condition that the Court retain jurisdiction to administer and enforce the terms of this Agreement.

(a)    A condition precedent to this Agreement is the Court's entry of the Order Granting Approval. Named Plaintiffs and FLSA Collective Members agree to seek approval of the Settlement by filing with the Court a Motion for Approval of Settlement on or before July 1, 2022. TTEC will be provided an opportunity, at least five (5) days in advance of filing, to review and comment on Named Plaintiffs and FLSA Collective Members' Motion for Approval of Settlement, and subject to their proposed revisions and comments, will not oppose the Motion for Approval of Settlement.

(b)    Any Motion for Approval of Settlement shall provide to the Court for review and approval this Agreement, including (i) the proposed Order Granting Approval and Dismissing the Action with Prejudice attached hereto as Exhibit 1; (ii) the Notice of Settlement of Collective Action Lawsuit to all FLSA Collective Members attached hereto as Exhibit 2; and (iii) such other information (such as, for example, a memorandum of law) required by the Court.

**2.4    Collective Notice.**

(a)    Within ten (10) calendar days after the Effective Date, the Settlement Administrator shall mail, via First Class United States mail, using each FLSA Collective Member's last known address as provided by FLSA Collective Counsel and TTEC's Counsel: (i) the Notice of Settlement of Collective Action Lawsuit to all FLSA Collective Members; and (ii) a Settlement Check. The Settlement Administrator shall give TTEC's Counsel three (3) business days' notice before the Notices and Settlement Checks are mailed out. The Notices and Settlement Checks shall inform FLSA Collective Members of their rights under this Agreement, of the formula used to calculate their Individual Settlement Amounts, and of the amounts of their Individual Settlement Amounts. TTEC's Counsel and FLSA Collective Counsel have the right to make inquiries and receive any information from the Settlement Administrator as is necessary to the administration of this Settlement, except that the Parties specifically agree, for privacy purposes, that the Settlement Administrator shall not provide identifying information and social security numbers to any other entity.

**2.5    Entry of Judgment.** In their proposed Order Granting Approval, the Parties will request that the Court, among other things, (a) approve the Settlement as fair, adequate, reasonable, and binding on Named Plaintiffs and all FLSA Collective Members, (b) dismiss the Action with prejudice (except that the Named Plaintiffs

pending putative state law class claims will be dismissed without prejudice), (c) enter an order permanently enjoining Named Plaintiffs and all FLSA Collective Members from pursuing and/or seeking to reopen claims that have been released by this Agreement, and (d) incorporate the terms of this Agreement.

2.6     **Right to Revoke.**  TTEC has the right to withdraw from the Settlement at any time prior to the entry of the Order Granting Approval if: (a) Named Plaintiffs and/or FLSA Collective Counsel materially breach Section 3.12 of the Agreement.

2.7     **Effect of Revocation or Failure to Grant Final Approval.**  In the event the Court does not enter the Order Granting Approval or in the event TTEC revokes the settlement pursuant to Section 2.6, (i) this Agreement shall have no force or effect, other than the non-disclosure provisions in Section 3.12, and the non-admission provisions in Section 3.11; (ii) neither this Agreement, nor any other related papers or orders, nor the negotiations leading to the Settlement, shall be cited to, used, or admissible in any judicial, administrative, or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural; (iii) the stipulation described in Section 2.1 shall become null and void; (iv) none of the Parties will be deemed to have waived any claims, objections, defenses, or arguments with respect to the issue of collective action certification or the merits of Named Plaintiffs' claims or any other issue; and (v) the Action will continue as if the Agreement had never been entered.

3.     **SETTLEMENT TERMS**

3.1     **Settlement Payment.**

(a)     TTEC agrees to pay a maximum of Five Million One Hundred Twenty-Five Thousand Dollars and Zero Cents ($5,125,000.00) (the "Maximum Settlement Amount"), which shall resolve and satisfy all monetary obligations under this Agreement, including all attorneys' fees, litigation costs, Settlement Administration Expenses, payments to certain arbitration claimants as set forth in Section 3.4(a), payments to FLSA Collective Members, all applicable taxes (except employer payroll taxes as described in Section 3.1), interest, and the Service Awards.  TTEC shall not pay more than the Maximum Settlement Amount.

(b)     When and if the Court enters the Order Granting Approval, the Defendants shall deposit via wire transfer into the Escrow Account the Maximum Settlement Amount by the later of (i) fourteen (14) business days from the date the Court enters the Order Granting Approval; or (ii) the date that the deadline to appeal the Order Granting Approval has lapsed with no appeal having been filed.  Any interest accrued from the Escrow Account, net of taxes and any fees associated with investing such amount, shall immediately be added to and become part of the Settlement Fund.

(c)     The Settlement Administrator will calculate the final amounts due to each FLSA Collective Member as the Individual Settlement Amount and issue checks payable to the FLSA Collective Members.

(d)     Within seven (7) calendar days after the Effective Date, the Settlement Administrator will make the following distributions of money from the Escrow Account: (i) pay any Court-approved attorney's fees and costs/expenses to FLSA Collective Counsel; (ii) pay any Court-approved Service Awards to Named Plaintiffs and other eligible FLSA Collective Members; (iii) pay any Court-approved Settlement Administration Expenses up to Twenty Thousand Dollars ($20,000.00) to itself; and (iv) pay FLSA Collective Members their Individual Settlement Amounts.

(e)     TTEC shall pay any required employer-side payroll taxes associated with the payment of any wages to the Named Plaintiffs and FLSA Collective Members separate from and in addition to the Maximum Settlement Amount.

(f)     To the extent any allocations of the Maximum Settlement Amount are not approved by the Court and result in a reduction of the requested amounts for fees, costs, or Service Awards, the unapproved amounts shall be paid to the FLSA Collective Members.

(g)     The Parties agree that the Escrow Account is intended to be a "Qualified Settlement Fund" under Section 468B of the Internal Revenue Code of 1986, as amended (the "Code"), 26 U.S.C. Section 468B and Treas. Reg. §1.468B-1, 26 C.F.R § 1.468B-1, *et seq*., and will be administered by the Settlement Administrator as such. The Settlement Administrator shall apply for an employer identification number ("EIN") for the Escrow Account pursuant to Internal Revenue Service ("IRS") Form SS-4, and in accordance with Treas. Reg. §1.468B-2(k)(4), 26 C.F.R § 1.468B-2(k)(4). With respect to the Escrow Account, the Settlement Administrator shall: (1) satisfy all federal, state and local and income and other tax reporting, return and filing requirements with respect to the Escrow Account; and (2) satisfy out of the Escrow Account all (i) taxes (including any estimated taxes, interest or penalties) with respect to the interest or other income earned by the Escrow Account, and (ii) fees, expenses and costs incurred in connection with the opening and administration of the Escrow Account and the performance of its duties and functions as described in this Stipulation. The aforementioned taxes, fees, costs and expenses shall be treated as and included in the costs of administering the Escrow Account. The Parties and the Settlement Administrator shall elect to treat the Settlement Fund as coming into existence as a Qualified Settlement Fund on the earliest date set forth in Treas. Reg. §1.468B-1(j)(2)(i), 26 C.F.R §1.468B-1(j)(2)(i), and

that such election statement shall be attached to the appropriate returns as required by Treas. Reg. §1.468B-1(j)(2)(ii), 26 C.F.R §1.468B-1(j)(2)(ii). The Parties agree to cooperate with the Settlement Administrator and one another to the extent reasonably necessary to carry out the provisions of this Section 3.1(e). The Settlement Administrator will agree to indemnify and hold harmless the Parties for and against any claims or liabilities resulting from errors or omissions in its administration of the Escrow Account. TTEC (or some other person on behalf of TTEC) shall supply to the Settlement Administrator and to the IRS the statement described in Treas. Reg. §1.468B-3(e)(2), 26 C.F.R §1.468B-3(e)(2), no later than February 15th of the year following each calendar year in which TTEC (or some other person on behalf of TTEC) makes a transfer to the Escrow Account.

(h)     It is intended that all transfers by TTEC to the Escrow Account will satisfy the "all events test" and the "economic performance" requirement of Section 461(h)(1) of the Code, 26 U.S.C. Section 461(h)(1), and Treas. Reg. § 1.461-1(a)(2), 26 C.F.R. § 1.461-1(a)(2). As such, TTEC shall not be taxed on any income of the Escrow Account.

**3.2     Settlement Amounts Payable as Attorneys' Fees and Costs.**

(a)     FLSA Collective Counsel shall seek no more than Two Million Five Hundred Thousand Dollars and Zero Cents ($2,500,000.00) in attorneys' fees, plus actual and reasonable litigation costs and expenses in an amount not to exceed Four Hundred Fifty Thousand Dollars and Zero Cents ($450,000.00). TTEC will not oppose such applications. TTEC shall have no additional liability for attorneys' fees and costs relating to the Action, the Settlement, or any claims or theories released by this Settlement.

(b)     The outcome of any proceeding related to FLSA Collective Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Approval of Settlement. Should FLSA Collective Counsel request lesser amounts than those listed in this Section 3.2, or should the Court grant lesser amounts than requested, the difference shall be added to the Net Settlement Fund.

**3.3     Service Awards.** FLSA Collective Counsel will apply to the Court for service awards in the amount of Three Thousand Five Hundred Dollars and Zero Cents ($3,500.00) to each of the nine Named Plaintiffs in the amount of One Thousand Five Hundred Dollars and Zero Cents ($1,500.00) to each of the 29 FLSA Collective Members whose depositions were taken.[2] The cumulative amount of the

---

[2] Michelle Adams-Seland; Ebonee Adenusi; Karantha Blake; Jackie Bonilla; Nicole Breedlove; Shelondria Bryant; Hellen Butts; Phillip Ferguson; Karen Harrell-Willis; Leah Jones; Nora Jones; Teresa Laws; Diane McBride; Wanda McGill; Gary McPherson; Daniel Michaud; Kimberly

requested service awards will equal Seventy Five Thousand Dollars and Zero Cents
($75,000.00). TTEC will not oppose or object to such application. The outcome of
the Court's ruling on the application for Service Awards shall not void or nullify
this Agreement or otherwise affect the Court's ruling on the Motion for Approval
of Settlement.  The amount of a Service Award sought but not awarded shall return
to the Net Settlement Fund.

**3.4     Distribution to FLSA Collective Members.**

(a)     The following arbitration claimants shall be paid separately from the
Settlement Fund and shall not be required to opt-in to the Action. Upon
payment their arbitration demands shall be dismissed with prejudice upon
approval of at least one arbitrator:

| | |
|---|---|
| Sarah Chionye | $349.60 |
| Aneesah Johnson | $903.10 |
| Ella Adams | $1,772.70 |
| Verna Massey | $1,692.00 |
| Roberta Johnson | $2,690.15 |
| Rebecca Alaniz | $2,836.15 |
| Laquinta Edwards (Caldwell) | $3,250.00 |
| Tasha Ponnell | $5,665.05 |
| Tatia Hardy | $6,102.00 |

(b)     The Net Settlement Fund shall be the amount of money remaining from the
Five Million One Hundred Twenty-Five Thousand Dollars ($5,125,000.00)
Settlement Fund after deducting (a) payments to certain arbitration
claimants as set forth in Section 3.4(a); (b) attorneys' fees and
costs/expenses approved by the Court pursuant to Section 3.2; (c) any
Service Awards approved by the Court pursuant to Section 3.3; and (d) and
Settlement Administration Expenses pursuant to Section 2.2.

(c)     Subject to the allocations listed above, each FLSA Collective Member's
Individual Settlement Amount from the Net Settlement Fund will be
determined as follows:

i.     The Settlement Administrator will compute the number of
workweeks worked by each FLSA Collective Member and ascribe
points to each such workweek as follows:

---

Middleton; Britney Mingo; George Reyes; Jessica Scott; Josette Sims; Shawanda Thomas;
Chelsea Vaughn; Stephanie Viray; Melody Wade; Vanekia Webster; Mikayla McCraney; Brandi
Henson; Mashaya Jordan.

**Biometric Clock:** 12/3/2015 - 10/31/2018

For each workweek of 40 hours or more: 2 points
For each workweek of 39 hours or more: 1 points

**Kronos Web Based Platform:** 11/1/2018 - 11/27/2019

For each workweek of 40 hours or more: 3 points
For each workweek of 39 hours or more: 1.5 points

**KGA:** 11/28/2019 – 4/1/2020

For each workweek of 40 hours or more: 1 points
For each workweek of 39 hours or more: .5 points

**KGA at Home:** 4/2/2020 - 5/1/2022

For each workweek of 40 hours or more: 4 points
For each workweek of 39 hours or more: 2 points

ii.   The Settlement Administrator then will adjust the FLSA Collective Member's point total (up or down) by a factor that is equal to the ratio of the FLSA Collective Member's most recent hourly base rate of pay during the Covered Period compared to the average most recent hourly base rate of pay of all FLSA Collective Members during the Covered Period.

iii.  The Settlement Administrator then will divide the FLSA Collective Member's point total (adjusted as above where applicable) by the total points for all FLSA Collective Members (also adjusted as above where applicable).

iv.   The ratio yielded by the division done in Section 3(4)(c)(iii) above will be multiplied by the Net Settlement Fund to yield the FSLA Collective Member's Individual Settlement Amount.

v.    If an FLSA Collective Member's Individual Settlement Amount totals less than fifteen dollars ($15.00), the Settlement Administrator shall increase that FLSA Collective Member's Individual Settlement Amount to fifteen dollars ($15.00). In no event shall such adjustments result in an increase to the Net Settlement Fund.

11

(d)     Any funds in the Net Settlement Fund that are not claimed by FLSA Collective Members as set forth in Section 3.4(g) shall be considered Unclaimed Funds.

(e)     The allocation of amounts for FLSA Collective Members shall be kept strictly confidential by the Settlement Administrator and will not be disclosed to anyone beyond FLSA Collective Counsel and TTEC's Counsel except as is necessary to the administration of the Settlement. To the extent the allocation amount tendered to any FLSA Collective Member or for any Settlement Check must be filed with the Court, the information will be filed under seal.

(f)     TTEC and the Settlement Administrator shall exchange such information as is necessary and reasonably available for the Settlement Administrator to comply with tax reporting obligations as described in Section 3.1.

(g)     FLSA Collective Members will have one hundred twenty (120) calendar days after the date of the initial mailing to redeem their settlement payments. If FLSA Collective Members do not redeem their Settlement Checks within the one hundred twenty (120) day period, their settlement checks (the "Unclaimed Checks") will be void and a stop-payment will be placed. In such event, the amounts associated with the Unclaimed Checks will be considered Unclaimed Funds. After ninety (90) calendar days from initial mailing, the Settlement Administrator shall send a reminder notice to those FLSA Collective Members who failed to negotiate their check. The Settlement Administrator shall issue a report to TTEC's Counsel and FLSA Collective Counsel identifying said individuals and the amount(s) of unpaid funds. FLSA Collective Members who do not redeem their settlement checks shall remain bound by this Settlement and the Releases in Section 3.6. After the one hundred twenty (120) day period, all funds that have not been redeemed shall revert to TTEC.

**3.5     Taxability of Settlement Payments.**

(a)     Within thirty (30) calendar days following the Order Granting Approval, Named Plaintiffs shall provide the Settlement Administrator with a duly completed IRS Form W-9 or applicable IRS Form W-8 together with any other documentation and information requested by the Settlement Administrator in connection with the Settlement Administrator's tax reporting obligations under the IRS Code. Named Plaintiffs and FLSA Collective Members understand that in the event valid U.S. tax forms or other required supporting document are not provided to the Settlement Administrator, the Settlement Administrator may be required to withhold tax from payments made pursuant to this Agreement. The Settlement Administrator shall report payments to Named Plaintiffs and FLSA

Collective Members on the applicable IRS Forms W-2 and 1099 as required by the IRS Code.

(b)     For tax purposes, the payments to Named Plaintiffs and FLSA Collective Members pursuant to Sections 3.3 and 3.4 shall be allocated as follows: (i) wages (50% of each settlement payment); and (ii) non-wages, liquidated damages, penalties, and interest (50% of each settlement payment). Named Plaintiffs and FLSA Collective Members will be exclusively responsible for their own portion of any tax liability associated with their settlement payment. The Settlement Administrator shall be responsible for making all reporting, deposits, and withholdings (if any) with respect to all amounts payable to FLSA Collective Members required pursuant to any federal, state, or local tax law or regulation under the EIN of the Escrow Account or TTEC, as required by applicable law.

(c)     Within thirty (30) calendar days following the Order Granting Approval, FLSA Collective Counsel shall provide the Settlement Administrator with a duly completed IRS Form W-9. Payments of attorneys' fees and costs pursuant to Section 3.2 shall be reported by the Settlement Administrator on the applicable IRS Form 1099 as required by the IRS Code and shall be made without withholding, provided the Settlement Administrator has timely received a duly completed Form W-9 from FLSA Collective Counsel.

(d)     The Named Plaintiffs and FLSA Collective Members agree that TTEC and TTEC's Counsel have not made any representations regarding the taxability of any payments made pursuant to this Settlement Agreement. The Named Plaintiffs and FLSA Collective Members agree and warrant that they have been and remain solely responsible for the timely payment of all taxes owed by each of them, if any, which have been due, or which may become due to any governmental authority from receipt of any funds received from TTEC pursuant to this Settlement Agreement. The Named Plaintiffs and FLSA Collective Members hereby agree to indemnify, pay the costs of defense, and hold TTEC harmless from and against any and all claims, demands, obligations, and liabilities for such taxes, if any, for taxes owed by the Named Plaintiffs and FLSA Collective Members, including, but not limited to, taxes, levies, assessments, garnishments, fines, interest, attorneys' fees and costs owed by the Named Plaintiffs and FLSA Collective Members, if any, or incurred by TTEC.

(e)     The Settlement Administrator shall handle all tax reporting with respect to the payments being made pursuant to this Agreement, and shall report the payments in accordance with applicable law.

3.6 **Release.**

(a) **Release of Claims by Named Plaintiffs and Opt-In Plaintiffs Receiving Service Awards.** As of the Effective Date, the Named Plaintiffs and the FLSA Collective Members who receive Service Awards, on behalf of themselves and their respective marital communities (if any), heirs, executors, administrators, and assigns, expressly waive, release, discharge and acquit any and all claims against TTEC and the TTEC Releasees. Except as expressly stated below, this waiver and release is comprehensive, and includes any and all claims (including claims to attorneys' fees), damages, causes of action or disputes, whether known or unknown, based upon acts or omissions occurring or that could be alleged to have occurred from the beginning of time through the Effective Date. This waiver and release includes both the full scope of the claims released by all FLSA Collective Members, as set forth below in Section 3.6(b), and further includes, without limitation, all other claims for wages, compensation, employment benefits, and damages of any kind whatsoever arising out of any: defamation; discrimination; harassment; retaliation; wrongful termination; negligence; loss of consortium; or other torts; any federal, state, local or other governmental statute or ordinance; breach of contract; and any other claim arising out of the employment relationship. Notwithstanding the foregoing, this release does not include any claims for breach or enforcement of this Agreement, claims under the Age Discrimination in Employment Act or Older Workers Benefit Protection Act, unemployment compensation claims, workers' compensation claims, or any other claim that may not be lawfully released under this Agreement.

(b) **Release of Claims by All Other FLSA Collective Members.** Each FLSA Collective Member agrees to fully and forever discharge and release TTEC from any and all claims, actions, demands, causes of action, suits, debts, obligations, damages, rights or liabilities, of any nature and description whatsoever, that (i) accrued between December 3, 2015 and (earliest of date of approval order or June 21, 2022), and (ii) are based on or reasonably related to the claims asserted in the Action, and specifically for unpaid wages (including claims for minimum wages, regular wages, overtime, regular rate calculations, and gap time) under the FLSA and under laws of the state(s) in which they worked for TTEC (the "Released Claims"). For the avoidance of doubt, these releases include any and all claims for and rights to economic and non-economic damages, restitution, penalties, liquidated damages, and attorneys' fees or costs against TTEC, and, if applicable, all claims brought against TTEC in arbitration pursuant to Section 1.3.

(c)    Nothing in the Releases contained in this Agreement shall prohibit or restrict Named Plaintiffs, FLSA Collective Members, or TTEC Releasees from:  (i) providing information to or cooperating with Congress, the Securities and Exchange Commission ("SEC"), the Commodity Futures Trading Commission ("CFTC"), the Consumer Financial Protection Bureau ("CFPB"), the Equal Employment Opportunity Commission ("EEOC"), the Occupational Safety and Health Administration ("OSHA"), the National Labor Relations Board ("NLRB"), Department of Justice ("DOJ") or any other federal, state, or local government, regulatory, or law enforcement agency ("Government Agencies"), the Financial Industry Regulatory Authority ("FINRA") or the "New York Stock Exchange, Inc. ("NYSE"), or any other self-regulatory organization ("SRO"); (ii) reporting to any of the TTEC Releasees' management or directors regarding conduct the individual believes to be in violation of the law or prohibits or restricts the individual from providing information to or cooperating with any Government Agencies or any SROs; (iii) communicating with any Government Agencies or SRO or otherwise participating in any investigation or proceeding that may be conducted by any Government Agency or SRO, including providing documents or other information; or (iv) receiving an award for information provided to any Government Agencies other than for charges filed with the EEOC or corresponding state or local agency as set forth above.  Named Plaintiffs and FLSA Collective Members may also disclose confidential information, including trade secrets, to (a) any government, regulatory or self-regulatory agency, including under Section 21F of the Securities and Exchange Act of 1934, Section 23 of the Commodity Exchange Act of 1936, or Section 7 of the Defend Trade Secrets Act of 2016 ("Defend Trade Secrets Act") and the rules thereunder, or (b) an attorney in connection with the reporting or investigation of a suspected violation of law or to an attorney or in a court filing under seal in connection with a retaliation or other lawsuit or proceeding, as permitted under the Defend Trade Secrets Act.  Named Plaintiffs and FLSA Collective Members do not need the prior authorization of TTEC to make these disclosures or provide evidence or other information to any government, regulatory, or self-regulatory agency, and Named Plaintiffs and FLSA Collective Members are not required to notify TTEC that they have done so.

(d)    Named Plaintiffs and FLSA Collective Members further covenant that they will not participate in any other legal actions against TTEC for claims released by this Settlement, and will not opt-in, will withdraw any opt-in, and will dismiss the action or themselves from any such actions.

(e)    **Release of Fees and Costs for Settled Matters.**  FLSA Collective Counsel and Named Plaintiffs, on behalf of the FLSA Collective Members, hereby

irrevocably and unconditionally release, acquit, and forever discharge any claim that they may have against TTEC or TTEC Releasees for attorneys' fees or costs associated with FLSA Collective Counsel's representation of Named Plaintiffs and the FLSA Collective Members in the Action, the Settlement, or any claims being Released by this Agreement and related papers. FLSA Collective Counsel further understand and agree that any fee payments approved by the Court, or an appeals court, will be the full, final, and complete payment of all attorneys' fees and costs associated with FLSA Collective Counsel's representation of these individuals and/or their representation in the Litigation.

3.7    **Arbitration Claimants.**  FLSA Collective Counsel will make reasonable attempts to procure written authorizations from the Arbitration Claimants to dismiss their arbitrations without prejudice and opt into the Action.  The arbitration claimants who agree to join the collective action will have their arbitrations dismissed without prejudice upon their opt-ins being filed with the Court.  If an Arbitration Claimant does not respond to FLSA Collective Counsel, additional attempts shall be made to contact that Arbitration Claimant including at least two phone calls, two emails, and a letter sent via regular mail to the Arbitration Claimant's last known address. The last letter shall inform the Arbitration Claimant that if they do not contact Plaintiffs' Counsel within ten (10) days of the date of mailing, their Arbitration Demand shall be dismissed with prejudice via stipulation of the parties.  If any Arbitration Claimants affirmatively decline to dismiss their demand and opt-in to the Action, FLSA Collective Counsel shall withdraw as counsel with respect to any such Arbitration Claimant.  If more than twenty (20) Arbitration Claimants refuse to dismiss their arbitrations and affirmatively communicate to FLSA Collective Counsel that they want to continue litigating their claims in arbitration, TTEC shall have the sole and absolute discretion to terminate the Settlement.  If TTEC exercises its right to terminate the Settlement pursuant to this provision, TTEC shall be responsible for all costs of settlement administration incurred as of the termination date.

3.8    **Putative State Law Class Claims.**  The Parties will not seek certification of any settlement class under Federal Rule of Civil Procedure 23(e).  The Named Plaintiffs will each dismiss their pending putative state law class claims without prejudice, and their respective individual state law claims with prejudice, resulting in dismissal of each state law claim in its entirety.

3.9    **Future Inquiries.**  It is the Parties' desire that this Agreement the final resolution of any disputes that were or could have been included in this Action.  To the extent, consistent with FLSA Collective Counsel's legal and ethical obligations, anyone who is not a FLSA Collective Member or pursuing claims against TTEC or any TTEC Releasee in a different forum but later contacts FLSA Collective Counsel expressing interest in pursuing claims that were or could have been raised in this

Action, will be presented by FLSA Collective Counsel to TTEC Releasees for settlement consistent with the terms of this Agreement before filing any individual, class, or collective claims. FLSA Collective Counsel represents that other than Named Plaintiffs, the FLSA Collective Members, and the Arbitration Claimants, FLSA Collective Counsel does not have any other current clients who have actual or potential claims against any of the TTEC Releasees. Nothing in this Section 3.9 shall be construed to require TTEC or any TTEC Releasee to reach a settlement or engage in settlement negotiations with any individual or entity that is presented to TTEC's Counsel.

3.10    **No Assignment.** FLSA Collective Counsel and Named Plaintiffs, on behalf of the FLSA Collective, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Action, or any related action.

3.11    **Non-Admission.** Nothing relating to this Agreement, or any communications, papers, or orders related to the Settlement, shall be cited to as, construed to be, admissible as, or deemed an admission by TTEC or TTEC Releasees of any liability, culpability, negligence, or wrongdoing toward the Named Plaintiffs, the FLSA Collective Members, Arbitration Claimants or any other person, and TTEC and TTEC Releasees specifically disclaim (i) any liability, culpability, negligence, or wrongdoing toward the Named Plaintiffs, the FLSA Collective Members, Arbitration Claimants, or any other person; (ii) that class or collective action certification is appropriate in this or any other matter; or (iii) that TTEC Holdings, Inc. is an employer or joint employer of Named Plaintiffs, FLSA Collective Members, Arbitration Claimants, or anyone they seek or sought to represent in the Action or otherwise. Each of the Parties has entered into this Agreement with the intention to avoid further disputes and litigation with the attendant inconvenience, expenses, and uncertainty. This Agreement, and any communications, papers, or orders related to the Settlement, may not be cited to, used, or admitted as evidence (i) of liability; (ii) that class or collective action certification is appropriate; or (iii) that TTEC is an employer or joint employer of anyone. There has been no determination by any court or arbitrator as to (i) the merits of the claims asserted by Named Plaintiffs or Arbitration Claimants against TTEC, or (ii) whether TTEC Holdings, Inc. is an employer or joint employer of anyone, including Named Plaintiffs, FLSA Collective Members, or Arbitration Claimants.

3.12    **Non-Disclosure/Non-Disparagement.** Neither Named Plaintiffs, FLSA Collective Members who receive Service Awards, nor FLSA Collective Counsel, directly or indirectly, shall issue a press release, hold a press conference, advertise, or publicize any information regarding the Settlement or the settlement negotiations in any manner, whether in writing, orally, or electronically, including online, on any social media application or site (including but not limited to Facebook,

Instagram, GroupMe, WhatsApp, Clubhouse, Twitter, LinkedIn, SnapChat, and TikTok), email correspondence, website, or otherwise publicize the Settlement or settlement negotiations. This confidentiality agreement specifically includes, but is not limited to, an obligation, on the part of Named Plaintiffs, FLSA Collective Members who receive Service Awards, and FLSA Collective counsel, not to knowingly disclose, or cause to be disclosed, the terms of the settlement to any current or former employee of TTEC or of any TTEC Releasees, or to any individual associated with the press or the media.

Named Plaintiffs, FLSA Collective Members who receive Service Awards, and FLSA Collective Counsel agree not to respond to any press, media, or other third-party inquiries concerning the Settlement except to state "the matter has been resolved" or refer the inquirer to the papers filed with this Court. Named Plaintiffs, FLSA Collective Members who receive Service Awards, and FLSA Collective Counsel further agree not to make disparaging comments relating to TTEC or any TTEC Releasees. These obligations of Named Plaintiffs, FLSA Collective Members who receive Service Awards, and FLSA Collective Counsel apply regardless of whether the Court approves any motion by TTEC to file this Agreement under seal.

Notwithstanding the foregoing, Named Plaintiffs, FLSA Collective Members who receive Service Awards, and FLSA Collective Counsel may disclose the Settlement and negotiations (1) to family members, tax preparers, accountants, financial advisors, and attorneys; (2) in court filings; and (3) if required by legal proceeding or if protected by law. In addition, FLSA Collective Counsel may orally disclose the Settlement and negotiations to future clients and prospective clients on an individual, client-by-client basis. To the extent the Settlement or negotiations are disclosed to tax preparers, accountants, financial advisors, and attorneys, such individuals shall be required by the disclosing person to adhere to the terms of this Section 3.12.

All communications by Named Plaintiffs, FLSA Collective Members who receive Service Awards, and FLSA Collective Counsel shall be consistent with this Section 3.12. In the event that any Named Plaintiff, FLSA Collective Member who receive Service Awards, or FLSA Collective Counsel is required by law or court order to disclose, publicize, or to permit, authorize, or instigate the disclosure of this Agreement, in whole or in part, that individual must notify TTEC in writing at least fifteen (15) business days prior to the disclosure in order to provide TTEC an opportunity to object to such disclosure. Such written notification to TTEC shall be sent to: Arthur Rooney, Perkins Coie LLP, 110 N. Wacker Drive, Suite 3400, Chicago, IL 60606. Named Plaintiffs, FLSA Collective Members who receive Service Awards, and FLSA Collective Counsel agree to cooperate fully with TTEC if TTEC decides to object to any such disclosure. Nothing in this section shall be construed to prevent FLSA Collective Counsel from publishing a summary of the

case and the amount of the settlement anonymously on sources like the Sommers Schwartz, P.C., website, marketing materials and in legal publications like Lawyers Weekly, Law 360 or the like.  'Anonymously' means that Defendants will be referred to only as a "national call center," the Court in which the lawsuit is pending shall not be disclosed and the identity of Defendants' Counsel shall not be disclosed.

**3.13**   **Non-Interference With Settlement.**  Pending the Court's decision on approval of the Settlement and entry of the Court's Final Order and Judgment, Named Plaintiffs, FLSA Collective Members, and anyone acting on behalf of them or their business entities (if any) shall be barred and enjoined from:  (a) further prosecution of the litigation; (b) filing, or taking any action directly or indirectly, to commence, prosecute, pursue or participate in a class or collective action, or any other claim or proceeding against TTEC in any forum in which any of the claims subject to the Settlement are asserted, or which in any way would prevent any such claims from being extinguished; or (c) seeking, whether on a conditional basis or not, certification of a class or collective action that involves any such claims.

**3.14**   **Jurisdiction.**  The Parties will ask Court to retain jurisdiction with respect to implementation and enforcement of the terms of the Agreement so that all FLSA Collective Members must submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in the Agreement.

**3.15**   **Returns and/or Destruction of Confidential and Settlement Materials.**  Named Plaintiffs and FLSA Collective Counsel agree to return and/or destroy all documents and materials designated as "CONFIDENTIAL - SUBJECT TO PROTECTIVE ORDER" pursuant to the Parties' Protective Order in the Action (Dkt. 318) or produced to them in connection with settlement negotiations in the Action.

**3.16**   **Miscellaneous.**

(a)   **Cooperation Between the Parties; Further Acts.**  The Parties shall cooperate fully with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms, and to minimize an individual arbitrator or American Arbitration Association fees associated with effectuating the Settlement.  Each of the Parties, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.  The Parties and their counsel further agree not to take any action to encourage any Named Plaintiff, FLSA Collective Member, or Arbitration Claimant to exclude themselves from the Settlement.

(b)    **Entire Agreement.**  This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

(c)    **Binding Effect.**  This Agreement shall be binding upon the Parties and upon their respective heirs, administrators, representatives, executors, successors, and assigns, and shall inure to the benefit of the Releasees, and to the respective heirs, administrators, representatives, executors, successors, and assigns.

(d)    **Severability.**  Should any clause, sentence, provision, paragraph, or part of this Agreement be adjudged by any court of competent jurisdiction, or be held by any other competent governmental authority having jurisdiction, to be illegal, invalid, or unenforceable, such judgment or holding shall not affect, impair, or invalidate the remainder of this Agreement, but shall be confined in its operation to the clause, sentence, provision, paragraph, or part of the Agreement directly involved, and the remainder of the Agreement shall remain in full force and effect.

(e)    **Arm's Length Transaction; Materiality of Terms.**  The Parties have negotiated all the terms and conditions of this Agreement at arm's length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement.

(f)    **Captions.**  The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

(g)    **Construction.**  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

(h)    **Governing Law.**  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of Colorado, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

(i)    **Waivers, etc. to Be in Writing.**  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the

Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of Named Plaintiffs, TTEC, and FLSA Collective Counsel and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

(j)    **When Agreement Becomes Effective.**  Except for provisions of this Agreement requiring any party to act or seek Court action prior to Court approval, as well as those provisions set forth in Sections 2.6, 3.9, 3.10, 3.11, 3.12, 3.13, and 3.14, which are intended to be binding on the Parties upon mutual execution hereof, this Agreement shall become fully effective upon the Effective Date.

(k)    **Facsimile/Electronic Signatures.**  Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

(l)    **Extensions of Time.**  If any deadlines related to this Settlement cannot be met, FLSA Collective Counsel and TTEC's Counsel shall meet and confer to reach agreement on any necessary revisions of the deadlines and timetables set forth in this Agreement.  In the event that the Parties fail to reach such agreement, any of the Parties may apply to the Court via a noticed motion for modification of the dates and deadlines in this Agreement.

(m)    **Counterparts.**  The Agreement may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.

(n)    **Third Party Beneficiaries.**  The Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the Parties hereto; but this Agreement is not designed to and does not create any third-party beneficiaries other than third parties that are identified as TTEC Releasees as defined in Section 1.22.

*Remainder of page intentionally left blank*

**NAMED PLAINTIFFS:**

DATED: ___06/15/2022___, 2022          By: _Carol E Davis_____
                                       Carol E. Davis

DATED: ___06/15/2022___, 2022          By: _Yvette Davis_____
                                       Yvette Monica Davis

DATED: ___06/19/2022___, 2022          By: _Ann Cole_____
                                       Ann Marie Cole

DATED: ___06/16/2022___, 2022          By: _____
                                       Javonte Duncan

DATED: ___06/15/2022___, 2022          By: _Leon P Cherry_____
                                       Leon Patrick Cherry

DATED: ___06/15/2022___, 2022          By: _____
                                       Cedric Randle

DATED: ___06/15/2022___, 2022          By: _S. Huds_____
                                       Shanickqua B. Hudson

DATED: ___06/15/2022___, 2022          By: _____
                                       Mykiesha McFarland

DATED: ___06/15/2022___, 2022          By: _Melissa Zweyer_____
                                       Melissa Zweyer


**TTEC HEALTHCARE SOLUTIONS, INC. and TTEC HOLDINGS, INC.:**

DATED: _July 1, 2022_____, 2022        By: _Margaret McLean_____

                                       On Behalf of TTEC Healthcare Solutions,
                                       Inc. and TTEC Holdings, Inc.


**FLSA COLLECTIVE COUNSEL:**

                                       SOMMERS SCHWARTZ P.C.

DATED: _J~ｌ2 1_____, 2022              By: _____

                                       *Attorneys for Named Plaintiffs, Arbitration
                                       Claimants, and the FLSA Collective*

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| **CAROL E. DAVIS, YVETTE MONICA DAVIS, ANN MARIE COLE, JAVONTE DUNCAN, LEON PATRICK CHERRY, CEDRIC RANDLE, SHANICKQUA B. HUDSON, MYKIESHA MCFARLAND,** and **MELISSA ZWEYER**, individually and on behalf of all other similarly situated individuals, | Case No.: 1:18-cv-03098-RM-NRN |
| Plaintiffs, | |
| v. | |
| **TTEC HEALTHCARE SOLUTIONS, INC.** and **TTEC HOLDINGS, INC.,** | |
| Defendants. | |

## [PROPOSED] FINAL ORDER AND JUDGMENT APPROVING FLSA SETTLEMENT

Before the Court is Plaintiffs' Unopposed Motion for Approval of Settlement (Dkt. \_\_\_),

the accompanying Settlement Agreement and Release (Dkt. \_\_\_), and the accompanying

memorandum of law (Dkt. \_\_\_).  Based on the following, the Court hereby ORDERS and

ADJUDGES that the motion is GRANTED and the Settlement Agreement and Release is

APPROVED.

1.       Current and former employees may settle and release FLSA claims against an

employer if the parties present the court with a proposed settlement and the court enters a stipulated

judgment approving the fairness of the settlement.  *See Bracamontes v. Bimbo Bakeries USA, Inc.*,

No. 15-CV-02324-RBJ-NYW, 2018 WL 6790171, at *1 (D. Colo. Oct. 10, 2018) (citing *Lynn's

Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982)).  Where, as here, a

collective FLSA action is settled on behalf of opt-in plaintiffs who already have joined the action,

Federal Rule of Civil Procedure 23's class action notice protocols do not apply, and the settlement can be reviewed in a single step. *See Koehler v. Freightquote.com, Inc.*, No. 12-2505-DDC-GLR, 2016 U.S. Dist. LEXIS 48597, at *57 (D. Kan. Apr. 11, 2016) ("The FLSA does not require a fairness hearing like that required for settlements of class actions brought under Fed. R. Civ. P. 23."); *Jackson v. United States Bancorp*, No. 20-2310-EFM, 2022 U.S. Dist. LEXIS 43850, at *25 (D. Kan. Mar. 11, 2022) (same).

2.      Settlement approval is appropriate "upon demonstration that (1) the litigation involves a bona fide dispute, (2) the proposed settlement is fair and equitable to all parties concerned, and (3) the proposed settlement contains a reasonable award of attorneys' fees." *Baker v. Vail Resorts Management Co.*, No. 13-cv-01649- PAB-CBS, 2014 WL 700096, (D. Colo. Feb. 24, 2014) (citing *Lynn's Food Stores*, 679 F.2d at 1353). Here, all of these requirements are satisfied. The Settlement is therefore approved and the Settlement Administrator shall make all payments to the Named Plaintiffs, the FLSA Collective Members, and FLSA Collective Counsel in the full amounts described in the Settlement Agreement and Release.

3.      The Court approves service awards in a cumulative amount of $75,000 to be distributed as follows:

a.   $3,500 each to the nine Named Plaintiffs; and

b.   $1,500 each to the twenty-nine FLSA Collective Members who were deposed.

4.      The Court approves settlement administration costs in an amount not to exceed $20,000 to Rust Consulting.

5.      The Court approves attorneys' fees to Plaintiffs' Counsel in the amount of $2,500,000.

6.      The Court approves reimbursement of the reasonable and necessary litigation expenses incurred by Plaintiffs' Counsel in an amount not to exceed $450,000.

7.      For each Named Plaintiff and each FLSA Collective Member, his or her joining and continued participation in the litigation shall release the particular claims, whether known or unknown, under any federal, state, local or common law, as set forth in the releases in the Settlement Agreement (*see* Sections 3.6(a) and 3.6(b)).

8.      There has been no determination by any Court or arbitrator as to the merits of the claims asserted by Named Plaintiffs or the FLSA Collective Members against TTEC Healthcare Solutions, Inc., TTEC Holdings, Inc., or any of the Releasees (as defined in the Settlement Agreement).   Neither this Order, the Settlement Agreement, nor any other documents or information relating to the offered settlement of this action shall constitute, be construed to be, or be admissible in any other proceeding as evidence: (1) that any group of similarly situated or other employees exists to maintain a collective action under the FLSA, or a class action under Rule 23 of the Federal Rules of Civil Procedure, or comparable state laws or rules; or (2) of an adjudication of the merits of this case, including, *inter alia*, Plaintiffs' entitlement to minimum or overtime wages from TTEC Healthcare Solutions, Inc., TTEC Holdings, Inc., or any of the Releasees. Indeed, as emphasized in the Settlement Agreement, Defendants continue to vigorously deny any liability to Plaintiffs.

9.      Named Plaintiff, FLSA Collective Members, and anyone acting on their behalf, shall be barred and enjoined from:  filing, or taking any action directly or indirectly, to commence, prosecute, pursue or participate on an individual, class action, or collective action basis any action, claim, or proceeding against TTEC Healthcare Solutions, Inc., TTEC Holdings, Inc. or any of the Releasees in any forum in which any of the claims subject to the Settlement are asserted, or which

in any way would prevent any such claims from being extinguished; or seeking, whether on a conditional basis or not, certification of a class or collective action that involves any such claims.

10.    Without affecting the finality of this Final Order and Judgment, this Court retains exclusive jurisdiction over the consummation, performance, administration, effectuation, and enforcement of this Final Order and Judgment as may be necessary or appropriate for the construction and implementation of the terms of the Settlement Agreement.

11.    This action is hereby dismissed in its entirety as against Defendants with prejudice, and without attorneys' fees or costs to any party except as provided in this Final Order and Judgment and in the Settlement Agreement.  This Final Order and Judgment is "final" within the meaning of the Federal Rules of Civil Procedure and the Federal Rules of Appellate Procedure.

12.    The parties shall abide by all terms of the Settlement Agreement, which are incorporated herein, and this Order.


        SO ORDERED AND ADJUDGED.


_____                    _____
Date                                    Hon. Raymond P. Moore
                                        United States District Court Judge

# EXHIBIT 2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| **CAROL E. DAVIS, YVETTE MONICA DAVIS, ANN MARIE COLE, JAVONTE DUNCAN, LEON PATRICK CHERRY, CEDRIC RANDLE, SHANICKQUA B. HUDSON, MYKIESHA MCFARLAND,** and **MELISSA ZWEYER**, individually and on behalf of all other similarly situated individuals,<br><br>                    Plaintiffs,<br><br>v.<br><br>**TTEC HEALTHCARE SOLUTIONS, INC.** and **TTEC HOLDINGS, INC.,**<br><br>                    Defendants. | Case No.: 1:18-cv-03098-RM-NRN<br><br><br>**NOTICE OF SETTLEMENT OF FAIR LABOR STANDARDS ACT LAWSUIT** |

**TO:**

[Name]
[Address]
[City, State Zip]

**RE:**    **Fair Labor Standards Act Suit Against TTEC Healthcare Solutions, Inc. and TTEC Holdings, Inc.**

## 1.  INTRODUCTION

        This Notice is directed to you because you previously joined, and remain a party to, the above-captioned lawsuit.  You and the other individuals who joined, and remain a party to, the lawsuit are called "Plaintiffs."

        The lawsuit has been settled, and the presiding judge of the U.S. District Court for the District of Colorado has approved the settlement.  As a result, the lawsuit is now concluded.  You are entitled to a settlement payment.  A check with your share of the total settlement is enclosed.

        Defendants TTEC Healthcare Solutions, Inc. and TTEC Holdings, Inc. (together "TTEC") continue to deny all of Plaintiffs' allegations.  TTEC maintains that they have always complied with the Fair Labor Standards Act ("FLSA") and all other federal, state, and local laws regarding the payment of wages.  TTEC further asserts that all employees were paid for all hours worked and were paid at the proper rates.

## 2.  SUMMARY OF THE SETTLEMENT

The Court has not ruled on the merits of Plaintiffs' claims or TTEC's defenses, and the parties continue to disagree as to the probable outcome of the litigation with respect to liability and potential damages.  However, all parties agree that, in light of the risks and expenses associated with continued litigation, this settlement is appropriate under the circumstances.

On [month/date], 2022, the Court approved the settlement.  The settlement became effective on [month/date], 2022 (the "Effective Date") and fully resolves the lawsuit.

## 3.  WHAT THE SETTLEMENT PROVIDES

Under the settlement, you are entitled to the enclosed settlement check in the amount of $XXX.  One-half of your settlement payment is considered wages for which ordinary payroll and income taxes have been withheld.  The other one-half of your settlement is payment for alleged liquidated damages from which no payroll or income taxes have been withheld.

You will **not** pay any additional attorney's fees or expenses out of your individual settlement payment.

Your settlement amount was calculated based on TTEC's records of your earnings and weeks worked in an eligible position from December 3, 2015 to [INSERT EARLY DATE OF APPROVAL DATE OR JUNE 21, 2022], 2022.

Based on these records, your total amount is based on the total number of workweeks you worked, the dates you worked, and your most recent rate of pay. After computation of the workweeks you worked, the workweeks was divided by the total amount of all workweeks worked by the Plaintiff to arrive at your at your *pro rata* percentage of the net settlement payment. These calculations determined your individual share of the settlement amount included in the enclosed check.

In addition, Named Plaintiffs and Plaintiffs who were required to be deposed during the litigation received individual "Service Awards" ranging from $1,500 to $3,500.

## 5.  RECEIPT OF SETTLEMENT FUNDS

As stated above, your settlement check is enclosed.  Settlement checks that are not cashed on or before [120 DAYS AFTER MAILING OF THE NOTICE] will be null and void.

## 6.  TAX CONSEQUENCES OF AMOUNT RECEIVED

Half of all settlement awards to each Plaintiff shall be reported on an IRS Form 1099 and shall not be subject to FICA and FUTA withholding taxes, and half on an IRS Form W-2 and shall be subject to applicable federal, state, and local taxes and withholdings.  TTEC shall pay the employers' side of taxes separate from the settlement amount.

156852285.1

Depending on your total taxable income this year, it is possible that some of the withheld taxes will be refunded to you after you file your tax return. You should consult with your tax advisor about any effect that your settlement award may have on your tax liability.

## 7.  WAIVER, RELEASE, AND DISCHARGE

By filing a consent form to join this Lawsuit, you authorized Named Plaintiffs and their counsel to act on your behalf and make all decisions regarding the litigation, including the terms of this settlement.

As a result of this settlement, all Plaintiffs will waive, release and forever discharge TTEC and its past, present and/or future, direct and/or indirect, officers, directors, members, managers, employees, agents, representatives, attorneys, insurers, partners, investors, shareholders, administrators, parent companies, subsidiaries, affiliates, divisions, predecessors, successors, assigns, and joint venturers from any and all claims for wages, minimum wage, and overtime pay they have or may have had under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and under the theories of *quantum meruit*, unjust enrichment, conversion, breach of contract, theft of labor, and any other state, federal, or local law related to the payment of wages, overtime, minimum wage, along with all claims for costs, attorneys' fees, expenses, liquidated damages, interest, or any other claims or benefits at any time from December 3, 2015 to [INSERT EARLY DATE OF APPROVAL DATE OR JUNE 21, 2022], 2022. In addition, Named Plaintiffs and other Plaintiffs who receive a Service Award for having had their deposition taken in this lawsuit will also release all known and unknown claims that may legally be released against these entities and individuals.

**It is important to note that you are automatically covered by the settlement even if you do not cash or deposit your settlement check and will release your claims as described herein**.

## 8.  NO RETALIATION

TTEC will not take any adverse action against any Plaintiff on the grounds that they are eligible to receive a settlement award and will not discourage any person from cashing a settlement check.

## 9.  FLSA COLLECTIVE COUNSEL

Sommers Schwartz P.C. (248-355-0300) [email] continues to serve as your lawyers. As always, you should not hesitate to contact this firm if you have any questions or require any additional information. Additionally, you may contact the settlement administrator at:

**[INSERT SETTLEMENT ADMINISTRATOR CONTACT INFO]**

**DO NOT CONTACT THE COURT OR THE JUDGE.**

**THE COURT AND JUDGE MUST REMAIN NEUTRAL IN THIS MATTER AND CANNOT OFFER YOU ADVICE OR RESPOND TO QUESTIONS.**

156852285.1